**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| DR. ALAN SACERDOTE, et al., | : | Case No.: 1:16-cv-06284 |
|  | : |  |
| Plaintiffs, | : |  |
|  | : | ECF Case |
| v. | : |  |
|  | : |  |
| NEW YORK UNIVERSITY, | : |  |
|  | : |  |
| Defendant. | : |  |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT

Mark Muedeking (*pro hac vice*)
Ian C. Taylor (*pro hac vice*)
Juliya Ben-Zev (*pro hac vice*)
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4000

Brian Kaplan (BK4922)
Evan D. Parness (EP6680)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant*

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1

BACKGROUND AND RELEVANT FACTS ................................................................... 2

    A.    The Plans ................................................................................................... 2

    B.    Internal Revenue Code Section 403(b). ................................................... 3

    C.    ERISA Section 404(c) .............................................................................. 4

    D.    Third Party Recordkeepers ....................................................................... 4

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT ................................................................................................................... 8

    I.    The Complaint Fails to Allege Any Facts Supporting Plaintiffs' Disloyalty Claim ......................................................................................... 8

    II.    Count I Does Not State a Plausible Claim For Breach of the Duty of Prudence With Respect to Administrative Fees ....................................... 9

        A.    Plaintiffs' Allegation that NYU Failed to Solicit Bids Does Not Support an Inference of Imprudence ........................................... 10

        B.    Plaintiffs Do Not Adequately Allege that the Plans Paid Excessive Revenue Sharing .................................................................... 10

        C.    Plaintiffs' Allegations Regarding the Faculty Plan's Two Recordkeepers Do Not Support an Inference of Imprudence. ................ 11

        D.    ERISA Does Not Mandate Flat Per-Participant Fees, Nor Does It Prohibit Asset-Based Revenue Sharing. .................................. 12

    III.    Count II Fails to State a Plausible Claim for Breach of the Duty of Prudence With Respect to Management Fees and Fund Performance ................. 13

        A.    Actively Managed Funds May Be Included in the Investment Menu. .............................................................................. 13

        B.    Different Share Classes May Be Included in the Investment Menu ........ 15

        C.    ERISA Does Not Limit The Number or Types of Options Included in the Investment Menu. ........................................................ 17

        D.    Allegations Regarding Performance of Two Investment Options Do Not State a Plausible Claim ................................................ 19

    IV.    Count III Fails to State A Monitoring Claim ........................................... 21

    V.    Plaintiffs Lack Constitutional Standing. .................................................. 22

    VI.    Any Alleged Breaches Before August 9, 2013, Are Time-Barred ............ 23

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.,*
   821 F.3d 352 (2d Cir. 2016) .................................................................. 22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................. 6, 8, 19

*Braden v. Wal-Mart Stores, Inc.,*
   588 F.3d 585 (8th Cir. 2009) .................................................................. 6, 7, 18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................. 6

*Bowers v. BB&T Corp.,*
   No. 1:15-cv-732-CCD-JEP (M.D.N.C.) .................................................................. 5

*Caputo v. Pfizer,*
   267 F.3d 181 (2d Cir. 2001) .................................................................. 23

*Cassell v. Vanderbilt Univ.,*
   No. 3:16-cv-02086 (M.D. Tenn.) .................................................................. 1

*Cates v. Trs. Of Columbia Univ.,*
   No. 1:16-cv-06524-UA (S.D.N.Y.) .................................................................. 1

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merc-Medco Managed Care, LLC,*
   433 F. 3d 181 (2d Cir. 2005) .................................................................. 23

*Chrzanowski v. Lichtman,*
   884 F. Supp. 751 (W.D.N.Y. 1995) .................................................................. 7

*Clark v. Duke Univ.,*
   No. 1:16-cv-01044 (M.D. N.C.) .................................................................. 1

*Cunningham v. Cornell Univ.,*
   No. 1:16-cv-06525 (S.D.N.Y.) .................................................................. 1

*DeBruyne v. Equitable Life Assurance Soc'y of U.S.,*
   920 F.2d 457 (7th Cir. 1990) .................................................................. 19-20

*Divane v. Nw. Univ.,*
   No. 1:16-cv-08157 (N.D. Ill.) .................................................................. 1

*Donovan v. Bierwirth,*
   680 F. 2d 263 (2d Cir. 1982) .................................................................. 8

## TABLE OF AUTHORITIES
(continued)

**Page**

*Forte v. U.S. Pension Committee,*
  Civ. Case No. 15-cv-4936 (PKC) (S.D.N.Y.) .................................................................... 23

*George v. Kraft Foods Global, Inc.,*
  641 F.3d 786 (7th Cir. 2011) ......................................................................................... 10

*Hecker v. Deere & Co.,*
  556 F. 3d 575 (7th Cir. 2009) ...................................................................................*passim*

*Hecker v. Deere & Co.,*
  569 F.3d 708 (7th Cir. 2009) ......................................................................................... 15

*Henderson v. Emory Univ.,*
  No. 1:16-cv-02920-MHC (N.D. Ga.) ............................................................................... 1

*In re Am Int'l Grp., Inc. ERISA litig. II,*
  No. 08 CIV 5722 LTS 2011 WL 1226459
  (S.D.N.Y.) ........................................................................................................................ 9

*In re Citigroup ERISA Litig.,*
  662 F.3d 128 (2d Cir. 2011) ......................................................................................... 6-7

*In re McKesson HBOC Inc. ERISA Litig.,*
  391 F. Supp. 2d 812 (N.D. Cal. 2005) ............................................................................. 9

*Judd Burstein, P.C. v. Long,*
  No. 15 CIV.5295 (KPF), 2016 WL 1562947 (S.D.N.Y.) .................................................... 8

*Kelly v. The Johns Hopkins University,*
  No. 1:16-cv-02835 GLR (D.Md.) ..................................................................................... 1

*Knight v. C.I.R.,*
  552 U.S. 181 (2008) ........................................................................................................ 6

*Laboy v. Bd. Of Trs. Of Bldg. Serv.,*
  *32 BJ SRSP*, 2012 WL 3191961 (S.D.N.Y. 2012) ............................................................ 11

*Loomis v. Exelon,*
  658 F.3d 667 (7th Cir. 2011) .....................................................................................*passim*

*Lopez v. City of New York,*
  No. 14-cv-1660 PKC, 2014 WL 5090041 (S.D.N.Y.) ........................................................ 7

*Lujan v. Defs. Of Wildlife,*
  504 U.S. 555 (1992) ................................................................................................. 22, 23

# TABLE OF AUTHORITIES
(continued)

Page

*McCullough v. World Wrestling Entm't, Inc.,*
No. 3:15-cv-001074 (VLB) ................................................................ 8

*Munro v. U.S.C.,*
No. 2:16-cv-06191 (C.D. Cal.) ........................................................... 1

*Pledger v. Reliance Trust Co.,*
No. 1:15-cv-4444-MHC (N.D. Ga.)..................................................... 5

*Ramos v. Bnaner Health,*
No. 1:15-cv-02556-WJM-MJW (D. Colo.) .......................................... 5

*Renfro v. Unisys Corporation,*
671 F.3d 314 (3d. Cir. 2011).................................................12, 15-16, 18

*Rinehart v. Lehman Bros. Holdings, Inc.,*
817 F.3d 56 (2d Cir. 2016).................................................................. 20

*Romero v. Nokia, Inc.,*
No. C 12-6260 PJH, 2013 WL 5692324 (N.D. Cal. Oct. 15, 2013) ....... 9

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2015)........................................................................ 22

*St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,*
712 F.3d 705 (2d Cir. 2013)...........................................................*passim*

*Sweda v. Univ. of Pa.,*
No. 2:16-cv-04329-GEKP (E.D. Pa.) .................................................. 1

*Taveras v. UBS AG,*
612 F. App'x 27 (2d Cir. 2015) .......................................................... 22

*Tibble v. Edison Int'l,*
729 F.3d 1110 (9th Cir. 2013) ....................................................15-17, 22

*Tracey v. Mass. Inst. Of Tech.,*
No. 16-cv-11620 (D. Mass.) ............................................................... 1

*Tussey v. ABB, Inc.,*
746 F.3d 327 (8th Cir. 2014) ........................................................ 10, 13

*Vellali v. Yale Univ.,*
No. 3:16-cv-01345 (D. Conn.)............................................................ 1

*White v. Chevron Corp.,*
No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016)............*passim*

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Young v. Gen. Motors Inv. Mgmt. Corp.,*
  325 F. App'x 31 (2d Cir. 2009) ............................................................................. 11

STATUTES

26 U.S.C. § 403(b) ....................................................................................................... *passim*

ERISA § 404(a), 29 U.S.C. § 1104(a) ........................................................... 12, 18-19

ERISA § 404(c), 29 U.S.C. § 1104(c) ............................................................ 3,4, 17

ERISA § 413, 29 U.S.C. § 1113 ......................................................................... 24

29 C.F.R. § 2550.404(a)-1(b) ......................................................................... 11, 14, 15

29 C.F.R. § 2550.404(c)-1(b)(1) ......................................................................... 12

29 C.F.R. § 2550.404(c)-1(b)(3) ................................................................... 4, 17

Defendant New York University ("NYU") submits this Memorandum in Support of its Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

## INTRODUCTION

This case is one of a dozen nearly identical lawsuits filed by the same plaintiffs' counsel against leading private universities.[1]  Plaintiffs allege that NYU violated ERISA's fiduciary rules by causing its retirement plans to pay excessive administrative and management fees and by offering the TIAA Real Estate Account and the CREF Stock Account as investment choices.  All of these claims fail as a matter of law.

The duty of prudence under ERISA focuses on the *process* by which decisions are made and the circumstances prevailing at the time the decision is made, not on the actual decision in isolation.  In this case, the Complaint fails to make any allegations relating directly to the process or circumstances under which any fiduciary decisions were made and does not plausibly assert any circumstantial factual allegations from which this Court may reasonably infer that the process was flawed.  *See St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc. ("St. Vincent")*, 712 F.3d 705, 718 (2d Cir. 2013).

Rather, Plaintiffs' claims are based primarily on conclusory opinions and assertions of their counsel, which should not be treated as facts for purposes of this Motion.  Moreover, these conclusory opinions and assertions fail to take into account the relevant circumstances, including

---

[1] *See Cates v. Trs. of Columbia Univ.*, No. 1:16-cv-06524-UA (S.D.N.Y.); *Cunningham v. Cornell Univ.,* No. 1:16-cv-06525 (S.D.N.Y.); *Divane v. Nw. Univ.*, No. 1:16-cv-08157 (N.D. Ill.); *Munro v. U.S.C.*, No. 2:16-cv-06191 (C.D. Cal.); *Henderson v. Emory Univ.*, No. 1:16-cv-02920-MHC (N.D. Ga.); *Cassell v. Vanderbilt Univ.*, No. 3:16-cv-02086 (M.D. Tenn.); *Clark v. Duke Univ.*, No. 1:16-cv-01044 (M.D.N.C.); *Kelly v. The Johns Hopkins University,* No. 1:16-cv-02835 GLR (D. Md.); *Sweda v. Univ. of Pa.*, No. 2:16-cv-04329-GEKP (E.D. Pa.); *Tracey v. Mass. Inst. of Tech.*, No. 16-cv-11620 (D. Mass.); *Vellali v. Yale Univ.*, No. 3:16-cv-01345 (D. Conn.).

the significant historical, practical and legal differences between 401(k) plans maintained by private employers and 403(b) plans maintained by universities such as NYU.

With respect to Plaintiffs' substantive claims, courts have repeatedly rejected similar claims that cost should be the primary basis for choosing vendors and investment alternatives, and similar claims of imprudence based on alleged poor performance of a limited number of investment alternatives using 20/20 hindsight. Moreover, as a factual matter, Plaintiffs' claims regarding the performance of the TIAA Real Estate and CREF Stock Accounts are wholly misleading, defective, and based solely on a blatantly faulty analysis.

Finally, Plaintiffs lack constitutional standing to bring these claims because they do not allege that they individually suffered any loss or harm.

For all of these reasons, the Complaint fails to state any plausible and judiciable claims and should be dismissed in its entirety.

## BACKGROUND AND RELEVANT FACTS[2]

### A.    The Plans.

NYU is the sponsor of the New York University Retirement Plan for Members of the Faculty, Professional Research Staff and Administration (the "Faculty Plan") and the New York University School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration (the "Medical Plan") (collectively, the "Plans"). [3] The Plans were established in 1952 and provide retirement benefits to participants that are funded through

---

[2] The facts described in this section are taken from the allegations of the Complaint and the documents referred to in and relied upon by the Complaint. On a motion to dismiss, a court may consider documents referenced in or relied upon in the complaint. *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 387 (S.D.N.Y.). Certain plan documents and related plan information have been attached hereto. Courts routinely consider plan documents that are relied upon by the complaint and courts have routinely taken notice of such documents in evaluating specific challenges to fees offered by ERISA plans. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (considering on a Rule 12 motion summary plan descriptions and fund prospectuses); *White v. Chevron Corp.*, No. 16-cv-0793-PHJ, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016 (considering on a Rule 12 motion plan documents and Form 5500s).

[3] Attached as Exhibit 1 is a copy of the Faculty Plan, and attached as Exhibit 2 is a copy of the Medical Plan.

voluntary participant contributions and generous NYU contributions.[4]  NYU matches participant

contributions in the Faculty Plan up to 5% of a participant's base salary, and also makes a

contribution of 5% of a participant's base salary regardless of whether the participant contributes

to the plan.[5]  NYU contributes 10% of a participant's salary to the Medical Plan, regardless of

whether the participant contributes to the plan.[6]

### B.      Internal Revenue Code Section 403(b).

Both Plans are intended to provide tax deferral of contributions for participants by

satisfying the requirements of Section 403(b) of the Internal Revenue Code (the "Code"), which

governs the taxation of annuity contracts purchased by a tax exempt or public school employer

for the benefit of its employees.[7]  Two aspects of Code Section 403(b) are important for purposes

of this case.  First, when Section 403(b) was added to the Code in 1958, it required that all assets

of the Plans be invested only in insurance company annuity contracts.[8]  Annuities remained the

only investments allowable under the Plans until 1974, when the Code was amended to provide

that mutual funds held in custodial accounts would be treated as annuity contracts for purposes

of Section 403(b).  Second, prior to 2009 when new IRS regulations became effective, Section

403(b) plans gave participants significant individual autonomy in selecting investments and

---

[4] Ex. 1; Ex. 2.

[5] Ex. 1 at Art. 4, §§ 4.1, 4.2 and 4.3; *see also* Ex. 3, Summary Plan Description for Faculty Plan, at 6.

[6] Ex. 2 at Art. 4, § 4.4; *see also* Ex. 4, Summary Plan Description for Medical Plan, at 3.

[7] Ex. 1 at Art. I; Ex. 2 at Art. I.

[8] *See* Internal Revenue Manual, Chapter 72, 4.72.13.1.1 (07-18-2016) (providing historical background of IRC 403(b) plans.  An annuity is an insurance contract that provides a stream of monthly payments in retirement and is typically for life, or a fixed term of years, depending upon the contract.  *See generally* U.S. Securities and Exchange Commission, *Fast Answers:  Annuities,* htttps://www/sec/gov/answers/annuity.htm (last modified Apr. 7, 2011).

operated much like individual retirement accounts.[9]  The new IRS regulations implemented a sea

change, requiring employers to exercise more control over the administration of these plans.[10]

    **C.**    **ERISA Section 404(c).**

The Plans are also "404(c) plans," which means that they give participants the right to

direct the investment of their accounts, as described in Section 404(c) of ERISA and Title 29 of

the Code of Federal Regulations Section 2550.404.c-1.[11]  As required by Section 404(c), the

Plans offer an investment menu that includes a "broad range of investment alternatives,"[12] which

allow a participant to materially affect the potential return on amounts in his or her individual

account by exercising control and affecting the "degree of risk to which such amounts are

subject."[13]  Currently, the Faculty Plan offers 27 investment alternatives offered by Teachers

Insurance and Annuity Association of America ("TIAA") and 78 mutual funds offered by

Vanguard Group, Inc. ("Vanguard"). [14]  The Medical Plan offers 13 TIAA investment

alternatives and 71 Vanguard mutual funds.[15]

    **D.**    **Third-Party Recordkeepers.**

The Faculty Plan has two recordkeepers:  Vanguard is the recordkeeper for the Vanguard

mutual fund investment options and TIAA is the recordkeeper for the TIAA investment

options.[16]  The Medical Plan had a similar arrangement until November 1, 2012, when TIAA

became the sole recordkeeper for both the Vanguard and TIAA investment options.  The cost of

---

[9] Employee Benefits Sec. Admin., U.S. Dep't of Labor, *Field Assistance Bulletin No. 2009-02* (July 20, 2009).

[10] *Id.*

[11] Ex. 1 at p. 10, § 4.11(c); Ex. 2 at p. 15, § 4.10(c).

[12] Ex. 1 at p. 10, § 4.11(c); Ex. 2 at p. 15, § 4.10(c); *see also* 29 C.F.R. § 2550.404(c)-1(b)(3).

[13] 29 C.F.R. § 2550.404(c)-1(b)(3)(i)(A).

[14] *See* 2016 Plan and Investment Notice for the Faculty Plan, attached hereto as Exhibit 5.

[15] *See* 2016 Plan and Investment Notice for the Medical Plan, attached hereto as Exhibit 6.

[16] *See* Ex. 5; Ex. 6.

recordkeeping services and plan administration for the Plans is covered by a portion of each investment alternatives' expense ratio; *i.e.*, the fees charged for managing each of the investments offered by Vanguard and TIAA.[17]  This is a typical arrangement, and there is no direct fee charged by either Vanguard or TIAA for recordkeeping or plan administration.[18]

Vanguard is one of the world's largest investment companies, with more than $3.5 trillion in global assets under management as of June 30, 2016.[19]  It is recognized as a leader in providing low-cost mutual funds, and has been consistently touted by Plaintiffs' counsel as a standard by which other mutual fund providers should be measured.[20]  TIAA was established in 1918 "to provide guaranteed retirement income to educators," and continues with that mission to this day.[21]  It is a not-for-profit corporation that, by charter, exists to help meet the financial needs of the individuals and institutions it serves on the best terms practicable and without profit.[22]  TIAA has been rated as the "Best Overall Large Fund Company" in 2012, 2013, 2014, and 2015,[23] and TIAA annuities have been rated as having among the lowest costs in the industry.[24]

---

[17] *See id.*; Compl. ¶¶ 60, 61.

[18] *See id.*

[19] Vanguard, *Fast facts about Vanguard*, https://about.vanguard/com/who-we-are/fast-facts/(visited Oct. 13, 2016).

[20] *See, e.g., Bowers v. BB&T Corp.*, No. 1:15-cv-732-CCE-JEP (M.D.N.C. filed Sept. 4, 2015), Ex. 7 (*Bowers* Am. Compl.) at ¶¶ 69--70 (comparing fees charged for plan investments to Vanguard alternatives); *Pledger v. Reliance Trust Co.*, No. 1:15-CV-4444-MHC (N.D. Ga. filed Dec. 22, 2015) Ex. 8 (*Pledger* Am. Compl.) at ¶¶ 89--91 (same); *Ramos v. Banner Health*, No. 1:15-cv-02556-WJM-MJW (D. Colo. filed Nov. 20, 2015) Ex. 9 (*Ramos* Compl.) at ¶ 65 (same).

[21] *See* TIAA, *Who We Are*, https://www.tiaa.org/public/why-tiaa/who-we-are (last visited Oct. 13, 2016).

[22] *See* TIIA, *Is TIAA-CREF a Nonprofit Organization?*, http://www1.tiaa-cref.org/public/support/help/ask_ct/is_tiaa_ cref_a_nonprofit.html (last visited Oct. 13, 2016).

[23] *See* TIAA, *Who We Are*, https://www.tiaa.org/public/why-tiaa/who-we-are (last visited Oct. 13, 2016).This rating is based on three-year risk-adjusted returns.  *See* TIAA, *Lipper Has Awarded TIAA the Best Overall Large Fund Company for the Third Consecutive Year*, https://www.tiaa.org/public/plansponsor/land/ps/ Lipper2015?tc_ac=bn_lipper0415hc (last visited Oct. 13, 2016).

[24] *See* TIIA, *Annuities*, https://www.tiaa.org/public/offer/products/annuities/retirement-plan-annuities (last visited Oct. 13, 2016) ("CREF Variable Annuities[] have total net expense ratios ranging from 0.255% to 0.715% as of

5

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. A claim is plausible only if the facts alleged "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and permit a court "to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S at 557).

For purposes of a motion to dismiss, "whether an ERISA fiduciary's investment decision is improvident depends on what a prudent man in like circumstances would do." *St. Vincent,* 712 F.3d at 718 (citing *Knight v. C.I.R.,* 552 U.S. 181, 193 (2008)). If the alleged facts do not "'directly address the process by which the plan was managed,'" a claim alleging a breach of an ERISA fiduciary duty can only survive a motion to dismiss if the complaint sets forth circumstantial factual allegations from which the court may reasonably infer that the process was flawed. *Id.* at 718 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)). Such a claim must "allege facts that, if proved, would show that an adequate investigation would

---

May 1, 2016 versus the industry average variable annuity sub-account total net expense ratio average of 2.14%.") (citing Morningstar, Inc.)).

have revealed to a reasonable fiduciary that the investment at issue was improvident." *Id.* (quoting *In re Citigroup ERISA Litig.*, 662 F.3d 128, 141 (2d Cir. 2011)). A plaintiff "cannot rely, after the fact, on the magnitude of the decrease in the [relevant investment's] price." *Id.* (citing *In re Citigroup ERISA Litig.*, 662 F.3d at 140). "Nor is it necessarily sufficient to show that better investment opportunities were available at the time of the relevant decisions" or that there were cheaper funds available. *Id.* (citing *Braden*, 588 F.3d at 596 n. 7; *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)).

The court need not accept as true legal opinions, deductions or conclusions which are merely dressed as factual allegations. *Lopez v. City of New York*, No. 14-CV-1660 PKC, 2014 WL 5090041, at *3 (S.D.N.Y. Oct. 10, 2014) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") (quoting *Iqbal,* 556 U.S. at 662); *Chrzanowski v. Lichtman,* 884 F. Supp. 751, 754 (W.D.N.Y. 1995) ("[L]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness."). Plaintiffs' Complaint is riddled with legal conclusions masquerading as facts, none of which should benefit from the presumption of truth. Examples include Plaintiffs' assertion that prudent fiduciaries must:

- "put the plan's recordkeeping and administrative services out for competitive bidding at regular intervals of approximately three years" (Compl. ¶ 42)

- "use a single recordkeeper" (Compl. ¶ 46)

- "not select higher-cost actively managed funds without a documented process to realistically conclude that the fund is likely to be that extremely rare exception, if one exists, that will outperform its benchmark index over time, net of investment expenses" (Compl. ¶ 68)

- "conduct an analysis to determine whether actively managed funds, particularly large cap, will outperform their benchmark net of fees" (Compl. ¶ 101)

7

Likewise, a court need not accept conclusory allegations as true. *St. Vincent,* 712 F.3d at 718 (citing *Iqbal*, 557 U.S at 678).[25] Plaintiffs set forth a number of conclusions in the Complaint which they attempt to dress as facts, including:

- "[R]ecordkeepers primarily differentiate themselves based on price and vigorously compete for business by offering the best price." (Compl. ¶ 41)

- "The cost of recordkeeping services depends on the number of participants, not on the amount of assets in the participant's account." (Compl. ¶ 43)

- "It is well known in the defined contribution industry that plans with dozens of choice and multiple recordkeepers "fail" based on two primary flaws: 1. The choices are overwhelming. . . 2. The multi-recordkeeper platform is inefficient. . ." (Compl. ¶ 48) (emphasis removed))

- "Use of a single recordkeeper is also less confusing to participants and results in their avoiding paying excessive recordkeeping fees." (Compl. ¶ 53)

- "[A] reasonable recordkeeping fee for the Plans would be approximately $840,000 in the aggregate for both Plans combined (or a flat fee based on $35 per participant)." (Compl. ¶ 59)

- The investments offered to participants caused "decision paralysis." (Compl. ¶ 79)

## <u>ARGUMENT</u>

## I.    The Complaint Fails to Allege Any Facts Supporting Plaintiffs' Disloyalty Claim.

Counts I and II of the Complaint are captioned as "Breach of Duties of Loyalty and Prudence." *See* Compl. at pp. 60, 62. ERISA Section 404(a)(1)(A) imposes on plan fiduciaries a duty to act "solely in the interest of the participants and beneficiaries,"[26] but Plaintiffs have not alleged a single fact supporting a claim that the Plans' fiduciaries breached that duty. Other than citing *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982), the Complaint mentions loyalty

---

[25] *See also Judd Burstein, P.C. v. Long,* No. 15 CIV. 5295 (KPF), 2016 WL 1562947, at *2 (S.D.N.Y. Apr. 18, 2016) ("The Court is not, however, bound to accept 'conclusory allegations and legal conclusions  masquerading as factual conclusions.'"); *McCullough v. World Wrestling Entm't, Inc.,* No. 3:15-CV-001074 (VLB), 2016 WL 1122016, at *9 (D. Conn. Mar. 21, 2016), *appeal dismissed sub nom. McCullough v. World Wrestling Entm't, Inc.,* No. 16-1231 (L), 2016 WL 5377858 (2d Cir. Sept. 27, 2016) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.") (internal quotation omitted)).

[26] ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

in conclusory fashion in only five of the Complaint's 154 numbered paragraphs.  *See* Compl. ¶¶ 54, 132, 133, 140, 145.

Plaintiffs fail to identify any "actual and specific conflict" or any facts "that would support an inference of disloyalty, as opposed to imprudence, in this regard."  *In re Am Int'l Grp., Inc. ERISA Litig. II*, No. 08 CIV 5722 LTS 2011 WL 1226459, at *10 (S.D.N.Y. Mar. 31, 2011) (dismissing loyalty claims).  Plaintiffs have failed to give any "reason to think" that NYU chose any particular investment option "to enrich itself at participants' expense."  *Loomis v. Exelon,* 658 F.3d 667, 671 (7th Cir. 2011).  Nor have they alleged any facts that give rise to an inference that any Plan fiduciary acted in the fiduciary's interest or committed some other disloyal conduct.  *See White v. Chevron Corp.,* No. 16-cv-0793-PJH,  2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) (dismissing loyalty claims); *Romero v. Nokia, Inc.*, No. C 12-6260 PJH , 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013) (same); *In re McKesson HBOC Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 834-35 (N.D. Cal. 2005) (same).  Therefore, the disloyalty claims must be dismissed.

## II. Count I Does Not State A Plausible Claim For Breach of the Duty of Prudence With Respect to Administrative Fees.

In Count I, Plaintiffs ask the Court to infer that NYU failed to engage in a prudent process with respect to the Plans' administrative fees because it: (1) failed to solicit bids from other recordkeepers; (2) allowed the Plans to pay excessive revenue sharing; (3) retained two vendors for recordkeeping and other services instead of consolidating with a single vendor; and (4) compensated vendors based on a percentage of Plan assets instead of on a "flat per-participant" basis.  Compl. ¶¶ 131-133.  Plaintiffs' allegations are not sufficient to support a plausible claim for breach of the duty of prudence.

9

A.     **Plaintiffs' Allegation that NYU Failed to Solicit Bids Does Not Support an Inference of Imprudence.**

Although Plaintiffs claim that a "failure to solicit bids" is a breach of fiduciary duty, nothing in ERISA requires plan fiduciaries to solicit competitive bids and the Complaint fails to allege any facts to support this allegation.  Plaintiffs reference *George v. Kraft Foods Global, Inc.* (Compl. ¶ 131), but that case does not support an inference that the failure to solicit bids is a breach of the duty of prudence.  641 F.3d 786 (7th Cir. 2011).  The court in *George* held only that the failure to solicit competitive bids *might* be imprudent where (1) a plaintiff presented concrete evidence about the objective level of fees and why they were unreasonable; and (2) the recordkeeping arrangement had not been renegotiated for more than *fifteen years*.  *George*, 641 F.3d at 798-99.

Plaintiffs' allegation regarding a requirement to solicit bids was flatly rejected recently by the court in *White,* 2016 WL 4502808, at *13-14.  In *White*, just as here, the plaintiffs cited *George* and *Tussey* for the proposition that ERISA's duty of prudence requires fiduciaries to put a plan's recordkeeping services out for competitive bidding on a regular basis.  *Id.*  The court in *White* held that "nothing in ERISA compels periodic competitive bidding" and that the complaint was deficient because it alleged "no facts suggesting that the Plan fiduciaries could have obtained less-expensive recordkeeping services."  *Id*. at *15.  The same is true in this case.

B.     **Plaintiffs Do Not Adequately Allege that the Plans Paid Excessive Revenue Sharing.**

Plaintiffs likewise fail to allege facts sufficient to support the inference that NYU allowed the Plans to pay excess revenue sharing.  Plaintiffs cite *Tussey v. ABB, Inc.* (Compl. ¶ 131), but that case does not support an inference that NYU allowed the Plans to pay excessive revenue sharing.  746 F.3d 327 (8th Cir. 2014).  The plaintiffs in *Tussey* alleged and offered evidence at trial that the excessive recordkeeping fees were subsidizing costs that would otherwise have been

10

the sponsor's own responsibility, which raised plausible claims of disloyalty that are completely absent here.  746 F.3d at 336.

Moreover, the Complaint here fails to explain *why* Plaintiffs believe the recordkeeping fees were excessive.  The Second Circuit requires plaintiffs to provide context for any excessive fee claim, however.  A plaintiff must explain why the fees in question were excessive relative to the services rendered.  *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (Sotomayor, J.).  Plaintiffs have failed to do so in this case.

### C.  Plaintiffs' Allegations Regarding the Faculty Plan's Two Recordkeepers Do Not Support an Inference of Imprudence.

Although Plaintiffs allege NYU should have consolidated the Faculty Plan's recordkeeping services with a single vendor, Plaintiffs do not allege that any vendor *other than TIAA* would in fact agree to provide these services for the Plans' TIAA fixed and variable annuity contracts *and* the Plans' various mutual fund options.  This is a fundamental and fatal flaw in the Complaint.  Unless Plaintiffs can plausibly allege that there are other vendors that could and would provide these services for both the TIAA annuity contracts and the various mutual funds, their allegations regarding "competitive bidding" (Compl. ¶ 42), "economies of scale" (Compl. ¶ 44), and "leverage" (Compl. ¶ 46), have no factual support.

Plaintiffs attempt to fault NYU for having two recordkeepers for the Faculty Plan and not consolidating recordkeeping services for the Medical Plan prior to 2012.  Compl. ¶ 54. Allegations regarding prudent conduct are not evidence of imprudent conduct, however.  *Laboy v. Bd. Of Trs. Of Bldg. Serv. 32 BJ SRSP*, 2012 WL 3191961, at *3 (S.D.N.Y. 2012) ("It would turn the law on its head were we to embrace a concept where a plaintiff could use allegations of prudent measures to provide a defendant's imprudence. . . .").  Moreover, because Plaintiffs do not even allege that a single vendor other than TIAA would or could provide all necessary

11

recordkeeping and other administrative services for the Plans, they fail to make any plausible

allegation that NYU did not prudently give "appropriate consideration" to relevant facts and "act

accordingly."  29 C.F.R. § 2550.404a-1(b)(1)(i) & (ii).

ERISA's duty of prudence judges fiduciaries "under the circumstances then prevailing"

and compared to a "prudent man acting in a like capacity and familiar with such matters."

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).  In this regard, a recent survey by the Plan

Sponsor Council of America found that higher education 403(b) plans, on average, offer 47

investment fund options and 50% of higher education 403(b) plans have 6 or more

recordkeepers.[27]  This survey is consistent with the prevailing historical context of Section

403(b) plans, which historically and currently offer participants investment choices from

multiple vendors, characteristics that have been the fundamental cornerstones of these plans.[28]

> **D.     ERISA Does Not Mandate Flat Per-Participant Fees, Nor Does It Prohibit Asset-Based Revenue Sharing.**

There is no legal support for Plaintiffs' allegation that failing to solicit fees on a per-

participant fee and allowing recordkeepers to receive asset-based revenue sharing violates the

duty of prudence.  In *Renfro v. Unisys Corporation*, the Third Circuit rejected the notion that

because "services required to administer mutual funds do not vary based on the aggregate

amount of assets in the funds" the "fees should be calculated on a per-participant basis."  671

F.3d 314, 326-28 (3d. Cir. 2011).  The Third Circuit found that the allegation that the plan

"should have paid per-participant fees rather than fees based on a percentage of assets in the

plan" was "nothing more than [a] conclusory assertion[]."  *Id.* at 327-28; *see also White*, 2016

WL 4502808 at *15 (rejecting the same "per-participant" argument).

---

[27] See Ex. 10, PSCA 2016 Benchmarking Survey of 403(b) Plans, at 45, 68.

[28] Employee Benefits Sec. Admin., U.S. Dep't of Labor, *Field Assistance Bulletin No. 2009-02* (July 20, 2009).

Plaintiffs make the bald and unsupported allegation that a reasonable recordkeeping fee is "$35 per participant." Compl. ¶ 59. As discussed above, this allegation is not entitled to the presumption of truth at the motion to dismiss stage.[29] As the Seventh Circuit observed in rejecting a similar claim in *Loomis*, "it isn't clear why participants would view a [flat] fee as a gain. A flat-fee structure might be beneficial for participants with the largest balances, but, for younger employees and others with small investment balances, a [flat] fee could work out to be more, per dollar under management, than a fee between 0.03% and 0.96% of the account balance." *Loomis*, 658 F.3d at 672.

Nor is there anything improper about using "asset-based revenue sharing." Compl. ¶ 133. Although Plaintiffs attempt to characterize these fees as a nefarious "kick back," (Compl. ¶56), revenue sharing is a typical and permissible source for the payment of administrative expenses under ERISA. In *Tussey*, the court concluded that revenue sharing is a "common" and "acceptable" investment industry practice that "frequently inure[s] to the benefit of an ERISA plan." *Tussey*, 746 F.3d at 336. Similarly, the Eighth Circuit in *Hecker* found that revenue sharing under similar circumstances "violate[d] no statute or regulation." *Hecker*, 556 F.3d at 585; *see also White*, 2016 WL 4502808 at *14 (same).

## III. Count II Fails to State a Plausible Claim for Breach of the Duty of Prudence With Respect to Management Fees and Fund Performance.

### A. Actively Managed Funds May Be Included in the Investment Menu.

Count II of the Complaint alleges that offering "actively managed" funds cannot be prudent unless a plan's fiduciary "realistically conclude[s] that the fund is likely to be that extremely rare exception, if one even exists, that will outperform its benchmark index over time,

---

[29] *See supra*, Standard of Review.

net of investment expenses."  Compl. ¶ 68.[30]  But this is not the standard by which prudence is judged.

A similar allegation was made in *Taylor v. United Techs. Corp.*, No. 3:06cv1494, 2009 WL 535779 (D. Conn. Mar. 3, 2009), where plaintiffs argued that a prudent fiduciary must "engage in extensive investigation prior to selecting an actively-managed mutual fund given the 'near certainty' that an actively-managed mutual fund will not outperform lower-fee index funds."  *Id.* at *10.  The district court rejected this argument as "unpersuasive," even though it was supported by an "expert opinion."  *Id.*  The Second Circuit affirmed the district court's "well-reasoned memorandum," and denied plaintiffs' petition for rehearing.  *Taylor v. United Techs. Corp.*, 354 Fed. Appx. 525, 526 (2d Cir. 2009).

A fiduciary will satisfy the ERISA prudence requirement if the fiduciary gives "appropriate consideration" to "the role the investment or investment course of action plays . . . in the plan's investment portfolio" and then acts accordingly.  29 C.F.R. §§ 2550.404a-1(b)(i)-(ii).  For this purpose, "appropriate consideration" includes consideration of how a particular investment or investment course of action is "reasonably designed . . . as part of the portfolio."  29 C.F.R. §§ 2550.404a-1(b)(2)(i).

Here, the Plans offered an investment menu that included both actively managed funds and passively managed index funds.  The Seventh Circuit, in *Loomis v. Exelon*, rejected the theory that it is a breach of the duty of prudence to offer actively managed mutual funds.  In doing so, it concluded that "Exelon offered participants a menu that includes high-expense, high-risk, and potentially high-return funds, together with low-expense index funds that track the market, and low-expense, low-risk, modest-return bond funds.  It has left choice to the people

---

[30] *See also* Compl. ¶ 101 (alleging that it is a breach of the duty of prudence to offer an actively managed large cap mutual fund unless a fiduciary determines that the fund will outperform its benchmark net of fees).

who have the most interest in the outcome, and it cannot be faulted for doing this." *Loomis,* 658

F.3d at 673-74.

###    B.    Different Share Classes May Be Included in the Investment Menu.

Plaintiffs' allegation that the Plans' investment menus may not include retail class mutual

funds is contrary to the clear weight of the case law.  This theory was rejected by the Seventh

Circuit more than seven years ago in *Hecker v. Deere & Company*, 556 F.3d 575, 586 (7th Cir.

2009).[31]  Two years later, it was rejected by the Third Circuit in *Renfro*.  671 F.3d at 327-28.  In

2011, the Seventh Circuit again rejected this theory in *Loomis*.  658 F.3d at 670.  And two years

later, the Ninth Circuit explicitly rejected the argument that "a fiduciary should have offered only

wholesale or institutional funds." *Tibble v. Edison Int'l,* 729 F.3d 1110, 1135 (9th Cir. 2013)

(quotations omitted), *vacated on other grounds,* 135 S. Ct. 1823 (2015).  As the Ninth Circuit

concluded, "there are simply too many relevant considerations for a fiduciary, for that type of

bright-line approach to prudence to be tenable." *Id.*

As one district court recently explained in granting a Rule 12(b)(6) motion to dismiss

claims similar to those asserted here:

> Fiduciaries have latitude to value investment features other than price (and
> indeed, are required to do so), as recognized by the courts.  In particular, where,
> as here, a plan offers a diversified array of investment options, the fact that some
> other funds might offer lower expense ratios is not relevant, as ERISA does not
> require fiduciaries to scour the market to find and offer the cheapest possible
> funds (which might, of course, be plagued by other problems).

> *White*, 2016 WL 4502808, at *10 (collecting cases) (citations and quotations omitted).

Plaintiffs also allege in paragraphs 74 and 75 of the Complaint that NYU breached

ERISA's duty of prudence by offering mutual funds with expense ratios of 0.04% to 0.77%.

Compl. ¶¶ 74-75.  But these expense ratios are well within (and below) the ranges that the Third,

---

[31] The Seventh Circuit also rejected the argument again later that year in denying a rehearing in *Hecker*.  *Hecker v. Deere & Co.*, 569 F.3d 708 (7th Cir. 2009).

Seventh and Ninth Circuits have held are reasonable as a matter of law. *Hecker*, 556 F.3d at 586 ("At the low end, the expense ratio was .07%; at the high end, it was just over 1%."); *Loomis*, 658 F.3d at 669-70 ("[E]xpense ratios rang[ed] from 0.03% to 0.96%."); *Renfro*, 671 F.3d at 319 (fees "ranged from 0.1% to 1.21%"); *Tibble*, 729 F.3d at 1135 ("[E]xpense ratio varied from .03[%] to 2%.").

Finally, although Plaintiffs generally allege in paragraph 35 of the Complaint that there are "multiple layers of expense charges" associated with the CREF variable annuity accounts, and generally allege in paragraph 139 that the Plans offered "variable annuities with high expenses," the Complaint critically fails to allege that the fees charged on the annuities were excessive for the services offered.[32] Annuities are different than mutual funds and provide substantial benefits not provided by mutual funds, including flexibility to select among a variety of payment options and retirement income security. Annuities allow a participant the ability to pass the risk of having sufficient funds for retirement from herself to an insurance company.[33] The fact that providing those additional benefits results in additional administrative fees and expenses should not be surprising; it certainly does not support any reasonable inference of imprudence.

---

[32] Plaintiffs do not even allege that the fees charged in relation to the annuities offered under the Plans were above average, let alone excessive. The Aon Hewitt study cited in the Complaint states that the average fees for variable annuities held in 403(b) plans is 2.25%. Aon Hewitt, *How 403(b) Plans Are Wasting Nearly $10 Billion Annually, and What Can Be Done to Fix It* (Jan. 2016), http://www.aon.com/attachments/human-capital-consulting/how-403b-plans-are-wasting-nearly-10billion-annually-whitepaper.pdf, at 6 (last visited Oct. 13, 2016).

[33] As the DOL recently recognized, annuities "are increasingly critical for retirement savers due to the shift away from defined benefit plans." Amendment to and Partial Revocation of Prohibited Transaction Exemption (PTE) 84-24 for Certain Transactions Involving Insurance Agents and Brokers, Pension Consultants, Insurance Companies, and Investment Company Principal Underwriters, 81 Fed. Reg. 21147, 21152 (April 8, 2016).

16

C.     **ERISA Does Not Limit The Number or Types of Options Included in the Investment Menu.**

Plaintiffs complain that the Plans offered a "dizzying array" of investments, causing "decision paralysis" (Compl. ¶ 79), although they do not actually allege that any of them (or any other participant for that matter) was actually confused or unable to make an investment election as a result of the number of investment options offered by either of the Plans.  They also allege that it is a "well-known principle for fiduciaries that . . . a high number of investment options causes participant confusion" (Compl. ¶ 140), although they have not provided any support for this legal conclusion masquerading as a factual allegation.

ERISA Section 404(c) requires that the Plans offer participants the "opportunity to exercise control" by directing their accounts into a "broad range of investment alternatives."  29 C.F.R. § 2550.404c-1(b)(3).  Although these regulations require a minimum of three investment alternatives, they do not place any maximum limit on the number that can be offered.  29 C.F.R. § 2550.404c-1(b)(3)(i)(B).

Participant choice "is the centerpiece of what ERISA envisions for defined-contribution plans."  *Tibble I,* 729 F.3d at 1134-35.  No court has held that a plan's fiduciaries violated ERISA's duty of prudence because they offered participants too many alternatives.  To the contrary, in *Hecker*, the Seventh Circuit endorsed a plan fiduciary's inclusion of a brokerage link through which participants could select among 2,500 funds.  *Hecker*, 556 F.3d at 586.  The court in *Hecker* found the inclusion of the brokerage link and the additional level of choice it offered participants to be evidence of prudence, not imprudence.  *Id.* at 590 (explaining that any allegation that the 2,500 options available through the brokerage link "did not provide the participants with a reasonable opportunity" to accomplish the goals of the DOL's regulations regarding a broad range of investment alternatives "is implausible, to use the terminology of

17

*Twombly*").  Similarly, the plan at issue in *Renfro* offered 73 investment alternatives, and the Third Circuit found that, "[i]n light of the reasonable mix and range of investment options in the Unisys plan, plaintiffs' factual allegations about Unisys's conduct do not plausibly support their claims."  *Renfro*, 671 F.3d at 327.

Although no court has held it is a breach of the duty of prudence to offer too many investment alternatives, some courts have faulted fiduciaries for offering too few.  *See Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 596 (8th Cir. 2009) (noting that the plan at issue included "a relatively limited menu of funds"); *id.* at 596 n. 6 ("The far narrower range of investment options available in this case makes more plausible the claim that this Plan was imprudently managed.").  That is because in addition to satisfying the duty to act "with the care, skill, prudence and diligence under the circumstances then prevailing," a prudent fiduciary also has the concomitant duty to diversify the investments of the plan so as to minimize the risk of large losses.  ERISA §§ 404(a)(1)(B), (C); 29 U.S.C. §§ 1104(a)(1)(B), (C).

Plaintiffs also complain that it was improper to offer more than one fund in the same "investment style" and they specifically mention index funds, which they allege "pick the same stocks in the same proportions as the index."  Compl. ¶¶ 79, 92.  But the Complaint does not allege that either of the Plans offered identical funds in any so-called "investment style," or that either of the Plans offered different index funds that tracked the same index or had the same returns.  While the list of funds included at paragraph 74 of the Complaint seems to suggest such an overlap, that list reflects funds the Plans now offer or have in the past offered, thus creating only the illusion of such an overlap.

Finally, these allegations do not support an inference that the investment selection and monitoring process was deficient or inconsistent with the process followed by other prudent

18

fiduciaries "under the circumstances then prevailing."  ERISA § 404(a)(1)(B), 29 U.S.C. §
1104(a)(1)(B).  These prevailing circumstances include the history and context of the 403(b)
plans, including decades of relative autonomy and participant-driven selection of investments
from multiple providers, and the specific types of investment options that may be offered in a
Section 403(b) plan.  These prevailing circumstances are reflected in the recent survey by the
Plan Sponsor Council of America, which found that higher education 403(b) plans, on average,
offer 47 investment fund options.[34]

### D.    Allegations Regarding Performance of Two Investment Options Do Not State a Plausible Claim.

Plaintiffs' allegations that two of the numerous funds offered to participants did not
perform well does not support a plausible inference of imprudence.  Compl. ¶¶ 95-118, 143-44.
First, there is no inference of imprudence because, in 20/20 hindsight, an investment did not
perform well or because some other investment would have performed better.  Second,
Plaintiffs' allegations regarding the performance of the CREF Stock Account and TIAA Real
Estate Account are based on a specious analysis.

Under ERISA, "the ultimate outcome of an investment is not proof of imprudence."
*DeBruyne v. Equitable Life Assurance Soc'y of U.S.*, 920 F.2d 457, 465 (7th Cir. 1990); *Jenkins
v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) ("[I]nvestment losses are not proof that an investor
violated his duty of care.").  A plaintiff "cannot rely, after the fact, on the magnitude of the
decrease in the relevant investment's price."  *St. Vincent*, 712 F.3d at 718 (citation omitted).
Similarly, it is not enough to allege "that better investment opportunities were available."  *Id.*  As
a result, Plaintiffs' allegations of allegedly poor performance, alone, do not create a reasonable
inference that NYU failed to conduct an adequate investigation or failed to adequately monitor

---

[34] *See* Ex. 10 at 45, 68.

19

the performance of the CREF Stock Account or the TIAA Real Estate Account.  Rather,

Plaintiffs must allege some other indication that NYU failed to prudently investigate the funds.

*Id.* at 718-19; *see also Rinehart v. Lehman Bros. Holdings, Inc.*, 817 F.3d 56 (2d Cir. 2016)

(upholding dismissal of complaint that failed to explain how an investigation would have showed

that the investment was imprudent).

Critically, Plaintiffs' criticisms of the CREF Stock Account and the TIAA Real Estate

Account are predicated on a specious analysis.  Rather than compare the performance of these

funds to their accepted benchmarks over standard periods, Plaintiffs use patently inappropriate

benchmarks over jury-rigged performance periods ending December 31, 2014 (¶¶ 103, 106) and

December 31, 2009 (¶¶107, 115, 116).  With the benefit of these inappropriate mechanics and

20/20 hindsight, Plaintiffs create only the illusion of poor performance.

The Complaint compares the CREF Stock Account to the Russell 3000® Index, even

though that is only part of the fund's benchmark.  The CREF Stock Account's benchmark is a

"composite index of 70% Russell 3000® Index (which includes only domestic equities) and 30%

MSCI ACWI ex-USA IMI (foreign equities) because that mix is appropriate to the CREF Stock

Account's actual  investment mix of domestic and foreign equities."[35]  When compared to the

appropriate benchmark, the CREF Stock Account's performance closely tracked its benchmark

over the one, five and ten-year periods.

| Fund[36] | One Year | Five Years | Ten Years |
|---|---|---|---|
| CREF Stock Account | -0.84 | 8.50 | 5.78 |
| Composite Index | -1.02 | 8.88 | 5.96 |

---

[35] As of December 31, 2015.  *See* TIAA, *College Retirement Equities Fund Prospectus* (May 1, 2016), https://www.tiaa.org/public/pdf/cref_prospectus.pdf, at 62.

[36] *See* TIAA, *College Retirement Equities Fund Prospectus* (May 1, 2016), https://www.tiaa.org/public/pdf/cref_prospectus.pdf, at 61 (providing average annual total returns for CREF Stock Account Class R3).

Plaintiffs compare the performance of the TIAA Real Estate Account, which is an annuity, to the Vanguard REIT Index Fund, which is a mutual fund, in an apples-to-oranges comparison. *See Tibble I*, 729 F.3d at 1134 (rejecting comparison between mutual funds and separate accounts or commingled pools because mutual funds "have a variety of unique regulatory and transparency features that make it an apples-to-oranges comparison to judge them against AARP and beneficiaries' suggested options"). Moreover, Plaintiffs ignore the fact that the TIAA Real Estate Account outperformed the Vanguard REIT Index Fund three of the last six years, including in 2015 (8.16% v. 2.45% ) and in 2013 (9.65% v. 2.48%):

| Fund | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|------|------|------|------|------|------|------|
| TIAA Real Estate Account[37] | 13.29 | 12.99 | 10.06 | 9.65 | 12.22 | 8.16 |
| Vanguard REIT Index[38] | 28.56 | 8.70 | 17.65 | 2.48 | 30.28 | 2.45 |
| Difference | -15.27 | 4.29 | -7.59 | 7.17 | -18.06 | 5.71 |

## IV. Count III Fails to State A Monitoring Claim.

Plaintiffs' claim that NYU failed to adequately monitor appointees is a derivative claim and should be dismissed because Plaintiffs have not plausibly alleged any underlying breach. *Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013) ("Plaintiffs cannot maintain a claim for breach of the duty to monitor by the Director Defendants absent an underlying breach of the duties imposed under ERISA by the Benefit Committee Defendants."), *vac'd on other grounds*, 134 S. Ct. 2900 (2014), *and reaffirmed by Rinehart,* 817 F.3d 56.

---

[37] *See* TIAA, *TIAA Real Estate Account Prospectus* (May 1, 2016), https://www.tiaa/org/public/pdf/realestate_prosp.pdf, at 11.

[38] Vanguard, *Vanguard REIT Index Fund Prospectus* (May 25, 2016), https://www.vanguard.com/pub/PDF/i3123/pdf , at 3.

Plaintiffs' monitoring claim also fails because the Complaint does not set forth any facts directly addressing how the Plans were monitored, nor does it set forth any circumstantial factual allegations sufficient to support a reasonable inference that there was a failure to monitor. *St. Vincent*, 712 F.3d at 718; *Tibble II*, 135 S. Ct. at 1828.

**V.     Plaintiffs Lack Constitutional Standing.**

Plaintiffs' Complaint does not allege a "case or controversy" within the meaning of Article III of the United States Constitution and should be dismissed for that reason. *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016). To establish a case or controversy, the Complaint must allege an injury-in-fact, *i.e.*, "an invasion of a judicially cognizable interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1552 (2015) ("Injury in fact is the first of three 'irreducible' requirements for Article III standing.") (Thomas, J., concurring) (internal quotations omitted).

The Complaint does not allege that any of the Plaintiffs personally suffered any losses or harm caused by any of the allegedly imprudent actions taken in the administration of the Plans. A plaintiff cannot simply allege harm to the plan without also alleging that they suffered an individual harm. *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) (affirming dismissal of ERISA fiduciary breach claims where plaintiff did not allege that she personally suffered losses and explaining that "participants, such as [plaintiff], directed their own investment choices from a menu of options selected by the [plan's] fiduciaries. It was possible that the [plan] lost value while [plaintiff's] individual account did not.").

There is no allegation regarding the investments actually selected by any Plaintiff or any loss sustained by any Plaintiff with respect to those investments; no allegation of any Plaintiff being confused or unable to direct his or her investments due the number or type of investment

22

alternatives offered by the Plans; and no allegation that any excessive management or
administrative fee was charged to any of the Plaintiff's account or investments.  As another judge
of this Court has recently ruled, where plaintiffs seek restitution under ERISA (Comp. at p. 68-
69), they must satisfy the "strictures of standing by demonstrating individual loss."  *Forte v. U.S.
Pension Committee,* Civ. Case No. 15-cv-4936 (PKC) (S.D.N.Y. Sep. 30, 2016) (citing *Cent.
States Se. & Sw. Areas Health & Welfare Fund v. Merc-Medco Managed Care, L.L.C.*, 433 F.3d
181, 200 (2d Cir. 2005)).  None of the hypothetical injuries alleged in the Complaint are
connected to a Plaintiff.  Accordingly, Plaintiffs have failed to establish Constitutional standing.
*Lujan*, 504 U.S. at 560.

**VI.     Any Alleged Breaches Before August 9, 2013, Are Time-Barred.**

ERISA's statute of limitations requires that a plaintiff bring suit within the earlier of six
years after "the date of the last action which constituted a part of the breach," or "three years
after the earliest date on which the plaintiff had actual knowledge of the breach or violation."
ERISA § 413(2), 29 U.S.C. § 1113(2).  Plaintiffs allege fiduciary breaches going back to "before
2009" (Compl. ¶ 54) and seek to represent a putative class of all of the Plans' participants and
beneficiaries from "August 9, 2010, through the date of judgment" (Compl. ¶ 125).  Plaintiffs in
this case had "actual knowledge" of the facts that form the basis of their claims, and their claims
are time-barred to the extent that they occurred prior to August 9, 2013.

"A plaintiff has 'actual knowledge' of a breach 'when he has knowledge of all material
facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise
violated the Act.'"  *Young*, 550 F. Supp. 2d at 419 (citing *Caputo v. Pfizer*, 267 F.3d 181, 193
(2d Cir. 2001)).  In *Young*, the court found that plaintiffs' claims that there was a breach of
fiduciary duty because the plan offered funds with "fees in excess of similar investment products
available to large, institutional investors like the Plans and that permitting investments in these

funds caused the plans to pay 'millions of dollars' that could have been avoided by selecting

cheaper, alternative investments," were subject to ERISA's three-year statute of limitations

because the "allegedly excessive fees" that were the "central basis" of plaintiffs' claim "were

readily apparent from the information provided to all Plan participants more than three years

before Plaintiffs filed this suit." *Id.* at 418, 420.

Prior to August 9, 2013, Plaintiffs were provided detailed disclosures required by ERISA

that included a list of the investment alternatives available under the Plans, the expense ratio for

each of the investments, each investment's benchmark and summaries of each investment's

performance for one-year, five-year and ten-year periods.[39]  Plaintiffs, therefore, had all of the

information they needed to raise claims challenging the Plans' investment options, fees and the

performance of the CREF Stock Account and the TIAA Real Estate Account before August 9,

2013.  Accordingly, to the extent Plaintiffs' claims are based on alleged breaches prior to that

date, they are barred by ERISA's statute of limitations and should be dismissed.  ERISA §

413(2), 29 U.S.C. § 1113(2).

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant its

Motion to Dismiss and dismiss the Complaint in its entirety.

Respectfully submitted,

/s/ Mark Muedeking
Mark Muedeking
Ian C. Taylor
Juliya Ben-Zev
DLA PIPER LLP (US)
500 8th Street, NW

---

[39] See Ex. 11 (2012 Investment Options Comparative Chart for the Faculty Plan); Ex. 12 (2012 Investment Options Comparative Chart for the Medical Plan).

Washington, DC 20004
(202) 799-4000

Brian Kaplan (BK4922)
Evan D. Parness (EP6680)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant*