**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DR. ALAN SACERDOTE, et al., | : Case No.: 1:16-cv-06284 |
| | : |
| Plaintiffs, | : |
| | : ECF Case |
| v. | : |
| | : |
| NEW YORK UNIVERSITY, | : |
| | : |
| Defendant. | : |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Mark Muedeking (*pro hac vice*)
Ian C. Taylor (*pro hac vice*)
Juliya Ben-Zev (*pro hac vice*)
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4000

Brian Kaplan (BK4922)
Evan D. Parness (EP6680)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant*

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................ 1

BACKGROUND AND RELEVANT FACTS ......................................................... 2

    I.     The NYU Plans ........................................................................................ 2

    II.    Significant Differences Between 403(b) Plans and 401(k) Plans. ......................... 2

    III.   ERISA Section 404(c) Requirements .................................................. 3

    IV.   Third Party Recordkeepers ..................................................................... 4

LEGAL STANDARD ..................................................................................................... 4

ARGUMENT ..................................................................................................................... 6

    I.     Plaintiffs Fail to Allege Any Facts Supporting Their Disloyalty Claims ............. 6

    II.    Count I Fails to State A Plausible Claim for Breach of the Duty of Prudence Regarding the Selection of TIAA. ......................................... 6

    III.   Count III Fails to State A Plausible Claim for Breach of the Duty of Prudence Regarding Administrative Fees. ........................................... 9

          A.    Plaintiffs Do Not Adequately Allege that the Plans Paid Excessive Revenue Sharing. ........................................................... 9

          B.    The Alleged Failure to Solicit Bids Does Not Support an Inference of Imprudence. ........................................................... 9

          C.    Use of Two Recordkeepers Does Not Support an Inference of Imprudence. ........................................................................... 10

          D.    ERISA Does Not Mandate Flat Per-Participant Fees or Prohibit Asset-Based Revenue Sharing. ................................................ 11

    IV.   Count V Fails to State A Plausible Claim of Imprudence Based on Investment Management Fees and Fund Performance. ................................... 12

          A.    Actively Managed Funds Are Not Imprudent. ................................. 12

          B.    Different Share Classes May be Included in the Investment Menu. ......... 13

          C.    ERISA Does Not Limit The Number or Types of Options Included in the Investment Menu. .......................................................... 15

          D.    Allegations Regarding Performance of Two Investment Options Do Not State a Plausible Claim For Breach of the Duty of Prudence ................................................................................ 17

    V.    Plaintiffs' Prohibited Transaction Claims Must Be Dismissed .......................... 19

          A.    ERISA's Statutory Mutual Fund Exemption. .......................... 20

          B.    ERISA's Necessary Services Exemption. ................................ 22

    VI.   Count VII Fails to State A Monitoring Claim. ....................................... 23

    VII.  Any Alleged Breaches Before August 9, 2013, Are Time-Barred. ................... 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................4, 5, 22

*Assoc. in Adolescent Psychiatry v. Home Life Ins. Co. of N.Y.*,
    729 F. Supp. 1162 (N.D. Ill. 1989) ......................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................4

*Boeckman v. A.G. Edwards, Inc.*,
    Civ. No. 05-658-GPM, 2007 WL 4225740 (S.D. Ill. Aug. 31, 2007) ..................21

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ..........................................................................5, 16

*Caputo v. Pfizer*,
    267 F.3d 181 (2d Cir. 2001) .................................................................................24

*Danza v. Fidelity Mgmt. Trust Co.*,
    533 Fed. App'x 120 (3d Cir. 2013) ......................................................................23

*DeBruyne v. Equitable Life Assurance Soc'y of U.S.*,
    920 F.2d 457 (7th Cir. 1990) ...............................................................................17

*George v. Kraft Foods Global, Inc.*,
    641 F.3d 786 (7th Cir. 2011) .................................................................................9

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) .......................................................................*passim*

*Hecker v. Deere & Co.*,
    569 F.3d 708 (7th Cir. 2009) ...............................................................................13

*IATSE Local 33 Section 401(K) Plan Bd. of Trs. v. Bullock*,
    No. CV 08-3949 AHM (SSx), 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008) ...............20, 21

*In re Am. Int'l Grp., Inc. ERISA Litig. II*,
    No. 08 CIV 5722 LTS 2011 WL 1226459 (S.D.N.Y. Mar. 31, 2011) ...................6

*In re Beacon Assoc. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010).............................................................20, 23

*In re Citigroup ERISA Litig.*,
    662 F.3d 128 (2d Cir. 2011).....................................................................................5

*In re Unisys Savs. Plan Litig.*,
173 F.3d 145 (3d Cir. 1999) ............................................................................ 10

*Jenkins v. Yager*,
444 F.3d 916 (7th Cir. 2006) ........................................................................... 17

*Judd Burstein, P.C. v. Long*,
180 F. Supp. 3d 308 (S.D.N.Y. 2016) ................................................................ 5

*Knight v. C.I.R.*,
552 U.S. 181 (2008) ........................................................................................... 5

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-cv-02781 (SRN/JSM), 2014 WL 1117018 (Mar. 20, 2014) .................... 24

*Laboy v. Bd. Of Trs. Of Bldg. Serv. 32 BJ SRSP*,
No. 11 Civ. 5127 (HB) 2012 WL 3191961 (S.D.N.Y. Aug. 7, 2012) ................. 10

*Leber v. Citigroup, Inc.*,
No. 07 Civ. 9329 (SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ........... 8, 22

*Leimkuehler v. Am. United Life Ins. Co.*,
752 F. Supp. 2d 974 (S. D. Ind. 2010) ............................................................. 21

*Loomis v. Exelon*,
658 F.3d 667 (7th Cir. 2011) ..................................................................*passim*

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley
Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ....................................................................*passim*

*Reich v. Compton*,
57 F.3d 270 (3d Cir. 1995) ............................................................................... 20

*Renfro v. Unisys Corporation*,
671 F.3d 314 (3d. Cir. 2011) ...................................................................*passim*

*Rinehart v. Akers*,
722 F.3d 137 (2d Cir. 2013) ............................................................................. 23

*Rinehart v. Lehman Bros. Holdings, Inc.*,
817 F.3d 56 (2d Cir. 2016) ............................................................................... 17

*Romero v. Nokia, Inc.*,
No. C 12-6260 PJH, 2013 WL 5692324 (N.D. Cal. Oct. 15, 2013) ..................... 6

*Skin Pathology Assocs. Inc. v. Morgan Stanley & Co.*,
    27 F. Supp. 3d 371 (S.D.N.Y. 2014)...........................................................22, 23

*Taylor v. United Techs. Corp.*,
    No. 3:06cv1494 (WWE), 2009 WL 535779 (D. Conn. Mar. 3, 2009) ................................. 12

*Taylor v. United Techs. Corp.*,
    354 Fed. App'x 525 (2d Cir. 2009)...................................................................... 12

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013) ........................................................................*passim*

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ........................................................................8, 9, 12

*Wharton v. Duke Realty, LLP*,
    467 F. Supp. 2d 381, 387 (S.D.N.Y. 2006)............................................................2

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016)...........................*passim*

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008)................................................................. 24

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    325 F. App'x 31 (2d Cir. 2009) ...........................................................................9

### STATUTES

26 U.S.C. § 403(b) ...................................................................................*passim*

ERISA § 401(b), 29 U.S.C. § 1101(b) ................................................................. 21

ERISA § 404(a), 29 U.S.C. § 1104(a) ...........................................................6, 10, 16

ERISA § 404(c), 29 U.S.C. § 1104(c) ..............................................................3, 15

ERISA § 406(a), 29 U.S.C. § 1106(a) ................................................................. 20

ERISA § 413, 29 U.S.C. § 1113 ....................................................................... 24

26 C.F.R. § 53.4958-6(c) .................................................................................. 7

29 C.F.R. § 2550.404(a)-1(b)....................................................................... 11, 12

29 C.F.R. § 2550.404(a)-5(c)............................................................................. 4

29 C.F.R. § 2550.404(c)-1(b)......................................................................3, 12, 15

# INTRODUCTION

This case is one of a dozen nearly identical lawsuits filed by the same plaintiffs' counsel against leading private universities alleging breaches of fiduciary duties and prohibited transactions in operation of 403(b) plans.[1]  Plaintiffs allege that NYU violated ERISA by paying excessive fees and by offering the TIAA Real Estate Account and the CREF Stock Account as investment choices.  All of Plaintiffs' claims fail as a matter of law.

Plaintiffs' prudence claims misconstrue or misinterpret the ERISA duty of prudence, which focuses on the *process* by which decisions are made and considers all of the relevant circumstances, including the significant differences between 403(b) plans and 401(k) plans.  *St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc. ("St. Vincent")*, 712 F.3d 705, 718 (2d Cir. 2013).  Courts have regularly dismissed similar imprudence claims, even in the context of 401(k) plans, where, as here, the claims are based on 20/20 hindsight and the erroneous assertion that only the lowest-cost and best-performing options are permissible.

Plaintiffs' Amended Complaint also asserts that the retention of service providers such as TIAA and Vanguard to provide investments and recordkeeping services is a *per se* prohibited transaction under ERISA.  These claims fail to state any cognizable claim, however, because ERISA provides specific exemptions that allow plans to engage service providers such as TIAA and Vanguard to offer investments and provide plan administration services.

---

[1] *See Cates v. Trs. of Columbia Univ.*, No. 1:16-cv-06524-UA (S.D.N.Y.); *Cunningham v. Cornell Univ.*, No. 1:16-cv-06525 (S.D.N.Y.); *Divane v. Nw. Univ.*, No. 1:16-cv-08157 (N.D. Ill.); *Munro v. U.S.C.*, No. 2:16-cv-06191 (C.D. Cal.); *Henderson v. Emory Univ.*, No. 1:16-cv-02920-MHC (N.D. Ga.); *Cassell v. Vanderbilt Univ.*, No. 3:16-cv-02086 (M.D. Tenn.); *Clark v. Duke Univ.*, No. 1:16-cv-01044 (M.D.N.C.); *Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-02835 GLR (D. Md.); *Sweda v. Univ. of Pa.*, No. 2:16-cv-04329-GEKP (E.D. Pa.); *Tracey v. Mass. Inst. of Tech.*, No. 16-cv-11620 (D. Mass.); *Vellali v. Yale Univ.*, No. 3:16-cv-01345 (D. Conn.).

<u>**BACKGROUND AND RELEVANT FACTS**</u>[2]

**I.     The NYU Plans.**

The New York University Retirement Plan for Members of the Faculty, Professional Research Staff and Administration (the "Faculty Plan") and the New York University School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration (the "Medical Plan") (collectively, the "Plans") are defined contribution, individual account plans that provide retirement benefits through a combination of participant contributions and NYU contributions.[3]  NYU matches participant contributions in the Faculty Plan up to 5% of a participant's base salary and also makes a contribution of 5% of each eligible participant's base salary.[4]  NYU contributes 10% of a participant's salary to the Medical Plan, regardless of whether the participant contributes to the plan.[5]

**II.    Significant Differences Between 403(b) Plans and 401(k) Plans.**

Both Plans meet the requirements for tax deferral under Section 403(b) of the Internal Revenue Code (the "Code").  While 403(b) plans have some similarities to employer-sponsored 401(k) plans, in a report to the US Secretary of Labor, the ERISA Advisory Council concluded that "the differences far exceed the similarities."[6]  Examples of significant differences include:

<u>**Participants**</u>:  Only employees of certain educational institutions, churches and charities can participate in a 403(b) plan.

---

[2] The facts are taken from the allegations of the Amended Complaint and the documents referred to in and relied upon by the Amended Complaint.  *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 387 (S.D.N.Y. 2006).

[3] Attached as Ex. 1 is a copy of the Faculty Plan, and attached as Ex. 2 is a copy of the Medical Plan.

[4] Ex. 1 at Art. 4, §§ 4.1, 4.2 and 4.3; *see also* Ex. 3, Summary Plan Description for Faculty Plan, at 6.

[5] Ex. 2 at Art. 4, § 4.4; *see also* Ex. 4, Summary Plan Description for Medical Plan, at 3.

[6] Advisory Council on Employee Welfare and Pension Benefit Plans, Report to the Honorable Hilda L. Solis, United States Secretary of Labor, *Current Challenges and Best Practices for ERISA Compliance for 403(b) Plan Sponsors* (Nov. 2011), https://www.dol.gov/sites/default/files/ebsa/about-ebsa/about-us/erisa-advisorycouncil /2011ACReport1.pdf., at 6.

**Investments**:  The Code limits investments to annuity contracts and mutual funds; prior to 1974, only annuity contracts were permissible investments in 403(b) plans.

**Portability and Choice**:  403(b) plans have operated like individual retirement accounts, where the participants were free to select and interact directly with multiple vendors, choose their own investments, and enter into contracts directly with the vendors.

**Participant Control and Administrative Complexity**:  A majority of 403(b) participant accounts are funded with individual annuity contracts, with individual rather than plan-level rights, resulting in more complex plan administration.  Also, the Code mandates different 403(b) distribution rules for employee and employer contributions and for annuity contract and mutual fund investments, requiring additional recordkeeping and administration not required for 401(k) plans.[7]

## III.    ERISA Section 404(c) Requirements.

As required by Section 404(c), the Plans allow participants to select their own investments from a "broad range of investment alternatives,"[8] which allow a participant to affect materially the potential return on amounts in his or her individual account by exercising control and affecting the "degree of risk to which such amounts are subject."[9]  Currently, the Faculty Plan offers 27 investment alternatives offered by Teachers Insurance and Annuity Association of America ("TIAA") and College Retirement Equities Fund ("CREF"), and 78 mutual funds offered by Vanguard Group, Inc. ("Vanguard").[10]  The Medical Plan offers 13 TIAA and CREF investment alternatives and 71 Vanguard mutual funds.[11]

---

[7] *Id.* at 10-13; *see also* Am. Compl. ¶ 75; Department of Labor Field Assistance Bulletin 2009-02.

[8] Ex. 1 at p. 10, § 4.11(c); Ex. 2 at p. 15, § 4.10(c); *see also* 29 C.F.R. § 2550.404(c)-1(b)(3).

[9] 29 C.F.R. § 2550.404(c)-1(b)(3)(i)(A).

[10] *See* 2016 Plan and Investment Notice for the Faculty Plan, attached hereto as Exhibit 5.

[11] *See* 2016 Plan and Investment Notice for the Medical Plan, attached hereto as Exhibit 6.

## IV. Third-Party Recordkeepers.

The Faculty Plan has two third-party recordkeepers: Vanguard is the recordkeeper for the Vanguard mutual fund investment options, and TIAA is the recordkeeper for the TIAA and CREF investment options.[12] The Medical Plan had a similar arrangement until November 1, 2012, when TIAA became the sole recordkeeper for both the Vanguard and TIAA investment options. The cost of recordkeeping and plan administration is covered by a portion of each investment alternative's expense ratio; *i.e.*, the fees charged by each mutual fund investment alternative.[13] This is a typical arrangement, and there is no direct fee charged by either Vanguard or TIAA for recordkeeping or plan administration.[14]

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A claim is plausible only if the facts alleged "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 545, and permit a court "to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679.

---

[12] *See* Ex. 5; Ex. 6.

[13] *See id.*

[14] *See id; see also* 29 C.F.R. §2550.404a-5(c)(2)(ii)(C) (requiring an explanation in fee disclosures when "some of the plan's administrative expenses . . . were paid from the total annual operating expenses of one or more of the plan's designated investment alternatives (*e.g*, through revenue sharing arrangements . . . )").

In the context of this case, "whether an ERISA fiduciary's investment decision is improvident depends on what a prudent man in like circumstances would do." *St. Vincent*, 712 F.3d at 718 (citing *Knight v. C.I.R.*, 552 U.S. 181, 193 (2008)). If the alleged facts do not "directly address the process by which the Plan was managed," a claim alleging a breach of an ERISA fiduciary duty can only survive if the complaint sets forth circumstantial factual allegations from which the court may reasonably infer that the process was flawed. *Id.* at 718 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)). Such a claim must "allege facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *Id.* (quoting *In re Citigroup ERISA Litig.*, 662 F.3d 128, 141 (2d Cir. 2011)). For this purpose, neither the fact that a plan investment did not perform as expected nor the existence of investments that performed better or had lower fees are sufficient. *Id.* (citing *In re Citigroup ERISA Litig.*, 662 F.3d at 140; *Braden*, 588 F.3d at 596 n.7; *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)).

Finally, the Court need not accept as facts the 32 pages of legal, economic and commercial opinions, theories and conclusions set out in the so-called "Background Facts" section of the Amended Complaint. *St. Vincent*, 712 F.3d at 718 (citing *Iqbal*, 557 U.S at 678).[15] While a complete analysis of all of these so-called facts is beyond the scope of this Memorandum, one is worth mentioning by way of example. In an attempt to avoid the material differences between 403(b) plans and 401(k) plans, Plaintiffs assert that there are "more similarities than differences."[16] But this self-serving claim that Plaintiffs assert as a fact is

---

[15] *See also Judd Burstein, P.C. v. Long*, 180 F. Supp. 3d 308, 311 (S.D.N.Y. 2016) (A court need not "accept 'conclusory allegations and legal conclusions masquerading as factual conclusions.'").

[16] Am. Compl. at p. 31.

directly contrary to the ERISA Advisory Council's report to the Secretary of Labor, which concluded that "the differences far exceed the similarities."[17]

**ARGUMENT**

### I. Plaintiffs Fail to Allege Any Facts Supporting Their Disloyalty Claims.

Although Counts I, III and V of the Amended Complaint purport to state claims under ERISA's duty of prudence *and* loyalty, Plaintiffs have not alleged any facts to support a plausible claim that NYU failed to act "solely in the interest of the participants and beneficiaries."[18] Plaintiffs offer no facts to support their bald allegation (nor have they even articulated reasons to infer) that NYU "favored the financial interests of TIAA" (Am. Compl. ¶ 198), failed to act "in the exclusive interest of participants" by offering TIAA and Vanguard investments (Am Compl. ¶ 209), or somehow failed to consider the fact that TIAA and Vanguard offered affiliated funds (Am. Compl. ¶ 223). Plaintiffs' disloyalty claims must be dismissed for failure to identify any "actual and specific conflict" or any facts "that would support an inference of disloyalty." *In re Am. Int'l Grp., Inc. ERISA Litig. II*, No. 08 Civ. 5722 (LTS) (KNF) 2011 WL 1226459, at *10 (S.D.N.Y. Mar. 31, 2011).[19]

### II. Count I Fails to State A Plausible Claim for Breach of the Duty of Prudence Regarding the Selection of TIAA.

ERISA's prudence standard compares the process employed by NYU to that of an objectively reasonable fiduciary. *St. Vincent*, 712 F.3d at 716. In Count I, Plaintiffs ask this Court to believe that NYU could not have engaged in a prudent process to select TIAA because NYU allegedly "abdicated its duty" to assess independently TIAA's services by "allowing

---

[17] *See supra* note 6.

[18] ERISA § 404(a)(1)(A).

[19] *See also, Loomis v. Exelon*, 658 F.3d 667, 671 (7th Cir. 2011) (dismissing loyalty claims); *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) (same); *Romero v. Nokia, Inc.*, No. C 12-6260 PJH, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013) (same).

TIAA-CREF to mandate" that Plans offer the CREF Stock Fund and the Money Market Fund as investments despite the fact that they were allegedly not prudent investments; by "allowing TIAA-CREF . . . to require" that Plans use TIAA recordkeeping services; and by "allowing TIAA-CREF to dictate" the terms of TIAA's services to the Plans. Am. Compl. ¶ 198. Plaintiffs do not, however, provide any plausible factual basis for these "TIAA-made-them-do-it" allegations.

Rather, Plaintiffs devote substantial portions of their Amended Complaint to maligning TIAA and CREF. Am. Compl. ¶¶ 77-84. For example, Plaintiffs seek to minimize the significance of TIAA's non-profit status by pointing out that it pays federal income taxation.[20] Plaintiffs also criticize TIAA's executive compensation policies because they are comparable to those of for-profit entities, even though it is well-recognized as a matter of law that compensation levels paid by similarly situated organizations, *both taxable and tax exempt*, are relevant to determining whether the compensation paid to an executive of a tax exempt organization is fair market value. 26 C.F.R. § 53.4958-6(c)(2)(i).

Plaintiffs also fail to mention that TIAA was the first United States insurance company to voluntarily implement a policyholder advisory vote on its executive compensation policies,[21] that it is one of only three insurance groups in the United States to hold the highest ratings currently awarded from all four leading independent insurance industry ratings agencies, and that TIAA has been awarded numerous best-in-class awards for retirement plan participant and plan sponsor

---

[20] Am. Compl. ¶ 78; TIAA, *Plan Reporting and Statement of Financial Accounting Standards No. 157: "Fair Value Measurements"* (2010), http://www1.tiaa-cref.org/public/emsg/plan_admin/pdf/C45147.pdf; *see* United States Securities and Exchange Commission, Inv. Co. Act Release No. IC-31092; 812-14305, at 2.

[21] *See* Press Release, available at http://www.prnewswire.com/news-releases/tiaa-cref-introduces-policyholder-advisory-vote-on-executive-compensation-policy-58120337.html.

services.[22]  As of 2014, TIAA provided services to more than 20,000 403(b) plans, 3,800 of which are "higher education" plans.[23]  In fact, one of the five university plans that Plaintiffs' Amended Complaint references as an example of best practices (CalTech) recently consolidated recordkeeping services with TIAA.[24]

There is nothing imprudent or even unusual about service providers such as TIAA offering proprietary funds in plans for which they provide services.  *Hecker* 556 F.3d at 578 (no breach of fiduciary duty regarding plan service provider offering proprietary funds); *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329 (SHS), 2010 WL 935442 at *9 (S.D.N.Y. Mar. 16, 2010) (same).[25]  Nor is there anything imprudent or unusual about retaining so-called "bundled services."  *See Renfro v. Unisys Corp.*, 671 F.3d 314, 318 (3d Cir. 2011) (no breach of fiduciary duty related to the retention of bundled services or the offering of proprietary funds).  To the contrary, securing bundled services can "frequently inure to the benefit of ERISA plans."  *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014).

Finally, Plaintiffs' "TIAA made-them-do-it" allegation fails for two reasons.  First, Plaintiffs do not allege any facts to indicate that TIAA "mandated" or required that the Plans offer the CREF Stock Fund or the Money Market Account.  In fact, such a claim is directly contrary to the terms of the Plans, which provide that NYU can "change the investment options offered under the Plan at any time, including with respect to amounts already invested."[26]  Second, Plaintiffs' allegations regarding the CREF Stock Account are based on a misleading and

---

[22] *See* TIAA, *Ratings and Rankings*, http://www1.tiaa-cref.org/public/about/identity/ratings-rankings/index.html. (last accessed Dec. 8, 2016).

[23] Plan Sponsor, *2015 403(b)/457 Buyer's Guide*, http://www.plansponsor.com/2015-403(b)-457-Buyer-s-Guide/?pid=21 (last visited Dec. 9, 2016).

[24] Am. Compl. ¶¶ 88-94.

[25] *See also infra* Argument IV. B.

[26] Ex. 1 at § 4.11(c); Ex. 2 at § 4.10(c).

faulty analysis—*see infra* Argument IV.  With respect to the Money Market Account, Plaintiffs

fail to allege any facts regarding that investment alternative.

## III.  Count III Fails to State A Plausible Claim for Breach of the Duty of Prudence Regarding Administrative Fees.

### A.  Plaintiffs Do Not Adequately Allege that the Plans Paid Excessive Revenue Sharing.

The Second Circuit requires plaintiffs to provide context for any excessive fee claim.  A

plaintiff must explain why the fees in question were excessive relative to the services rendered.

*Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (Sotomayor, J.).

Plaintiffs failed to do so here.[27]

### B.  The Alleged Failure to Solicit Bids Does Not Support an Inference of Imprudence.

Although Plaintiffs claim that a "failure to solicit bids" is a breach of fiduciary duty,

nothing in ERISA requires plan fiduciaries to solicit competitive bids and the Amended

Complaint fails to allege any facts to support this allegation.[28]  A similar allegation was flatly

rejected recently by the court in *White*, 2016 WL 4502808, at *13-14.  In *White*, the court held

that "nothing in ERISA compels periodic competitive bidding" and that the complaint was

deficient because it alleged "no facts suggesting that the Plan fiduciaries could have obtained

less-expensive recordkeeping services."  *Id*. at *14-15.  The same is true here.

---

[27] Although Plaintiffs cite *Tussey v. ABB, Inc.* to support their bald allegation (Am. Compl. ¶ 207), that case is inapposite because the revenue sharing went to pay expenses of the plan sponsor rather than plan expenses.  746 F.3d at 336.

[28] Plaintiffs reference *George v. Kraft Foods Global, Inc.* (Am. Compl. ¶ 207), but that case does not support an inference that the failure to solicit bids is a breach of the duty of prudence.  641 F.3d 786 (7th Cir. 2011).  The court in *George* held only that the failure to solicit competitive bids *might* be imprudent where (1) a plaintiff presented concrete evidence about the objective level of fees and why they were unreasonable; and (2) the recordkeeping arrangement had not been renegotiated for more than *fifteen years*.  *Id.* at 798-99.

## C. Use of Two Recordkeepers Does Not Support Any Inference of Imprudence.

ERISA's duty of prudence judges fiduciaries "under the circumstances then prevailing" and compared to a "prudent man acting in a like capacity and familiar with such matters." ERISA § 404(a)(1)(B). It is an objective standard, and, thus, a fiduciary will not be found to have breached the duty of prudence where the process employed and the decision made is consistent with a "hypothetical prudent fiduciary." *In re Unisys Savs. Plan Litig.*, 173 F.3d 145, 153-54 (3d Cir. 1999). Plaintiffs complain of Defendant's use of "multiple" recordkeepers despite the fact that the Medical Plan has only one recordkeeper and the Faculty Plan has only two. In this regard, a recent survey by the Plan Sponsor Council of America found that higher education 403(b) plans, on average, offer 47 investment fund options and 50% of higher education 403(b) plans have 6 or more recordkeepers.[29] This survey is consistent with the prevailing historical context of Section 403(b) plans, which historically and currently offer participants investment choices from multiple vendors, characteristics that have been the fundamental cornerstones of these plans.[30]

The fact that the Medical Plan has a single recordkeeper while the Faculty Plan has two does not support an inference of imprudence because allegations of prudent conduct are not evidence of imprudent conduct. *Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, No. 11 Civ 5127 (HB), 2012 WL 3191961, at *3 (S.D.N.Y. Aug. 7, 2012) ("It would turn the law on its head were we to embrace a concept where a plaintiff could use allegations of prudent measures to prove a defendant's imprudence. . . .").

---

[29] See Ex. 7, PSCA 2016 Benchmarking Survey of 403(b) Plans, at 45, 68. Plaintiffs cite a 2013 survey for the proposition that "90% of plans use a single recordkeeper to provide administrative and recordkeeping services to participants." Am. Compl. ¶ 97. The "study" referenced consisted of phone interviews with 139 health organizations and 71 higher education organizations. When compared to the more than 20,000 403(b) plans that TIAA provides services for, the sample of 71 higher education organizations (17% of which reported having multiple recordkeeping providers) is meaningless.

[30] Employee Benefits Sec. Admin., U.S. Dep't of Labor, *Field Assistance Bulletin No. 2009-02* (July 20, 2009).

Finally, because Plaintiffs do not plausibly allege that there are other vendors that could and would provide these services for both the TIAA and CREF annuity contracts, their allegations regarding "competitive bidding" (Am. Compl. ¶ 89), "economies of scale" (Am. Compl. ¶ 137), and "leverage" (Am. Compl. ¶ 207), have no factual support and do not plausibly support a claim that NYU failed to prudently give "appropriate consideration" to relevant facts and "act[] accordingly."  29 C.F.R. § 2550.404a-1(b)(1)(i) & (ii).

### D.  ERISA Does Not Mandate Flat Per-Participant Fees or Prohibit Asset-Based Revenue Sharing.

In *Renfro v. Unisys Corporation*, the Third Circuit rejected the notion that because "services required to administer mutual funds do not vary based on the aggregate amount of assets in the funds" the "fees should be calculated on a per-participant basis."  671 F.3d 314, 326-28 (3d. Cir. 2011).  The Third Circuit found that the allegation that the plan "should have paid per-participant fees rather than fees based on a percentage of assets in the plan" was "nothing more than [a] conclusory assertion[]."  *Id.* at 327-28; *see also White*, 2016 WL 4502808, at *15 (rejecting the same "per-participant" argument).

Plaintiffs make the bald and unsupported allegation that a reasonable recordkeeping fee is "$35 for each participant," an allegation that is not entitled to the presumption of truth.[31]  As the Seventh Circuit observed in rejecting a similar claim in *Loomis*, "it isn't clear . . .  why participants would view a [flat] fee as a gain.  A flat-fee structure might be beneficial for participants with the largest balances, but, for younger employees and others with small investment balances, a [flat] fee could work out to be more, per dollar under management, than a fee between 0.03% and 0.96% of the account balance."  *Loomis*, 658 F.3d at 672.

---

[31] Am. Compl. ¶ 132; *see supra*, Standard of Review.

Nor is there anything imprudent about using "asset-based revenue sharing." Am. Compl. ¶ 138. Although Plaintiffs attempt to characterize these fees as nefarious amounts that TIAA "kicks back to itself" (Am. Compl. ¶ 68), this type of revenue sharing is a "common" and "acceptable" investment industry practice that "frequently inure[s] to the benefit of ERISA plans." *Tussey*, 746 F.3d at 336. The Eighth Circuit in *Hecker* found that revenue sharing under similar circumstances "violate[d] no statute or regulation." *Hecker*, 556 F.3d at 585; *see also White*, 2016 WL 4502808, at *14 (same).

## IV. Count V Fails to State A Plausible Claim of Imprudence Based on Investment Management Fees and Fund Performance.

### A. Actively Managed Funds Are Not Imprudent.

Count V of the Amended Complaint alleges that offering "actively managed" funds cannot be prudent unless a plan's fiduciary concludes that the fund has a "realistic expectation of higher returns." Am. Compl. ¶ 220. An almost identical allegation was made in *Taylor v. United Techs. Corp.*, No. 3:06cv1494 (WWE), 2009 WL 535779, at *10 (D. Conn. Mar. 3, 2009). The district court rejected this argument as "unpersuasive," even though it was supported by an "expert opinion." *Id.* The Second Circuit affirmed the district court's "well-reasoned memorandum," and denied plaintiffs' petition for rehearing. *Taylor v. United Techs. Corp.*, 354 Fed. App'x 525, 527 (2d Cir. 2009).

A fiduciary will satisfy the ERISA prudence requirement if the fiduciary gives "appropriate consideration" to "the role the investment or investment course of action plays . . . in the plan's investment portfolio" and then acts accordingly. 29 C.F.R. §§ 2550.404a-1(b)(i)-(ii). For this purpose, "appropriate consideration" includes consideration of how a particular investment or investment course of action is "reasonably designed . . . as part of the portfolio." 29 C.F.R. §§ 2550.404a-1(b)(2)(i).

The Plans offered an investment menu that included both actively managed funds and passively managed index funds. The Seventh Circuit, in *Loomis v. Exelon*, rejected the theory that it is imprudent to offer actively managed funds. In doing so, the court concluded that "Exelon offered participants a menu that includes high-expense, high-risk, and potentially high-return funds, together with low-expense index funds that track the market, and low-expense, low-risk, modest-return bond funds. It has left choice to the people who have the most interest in the outcome, and it cannot be faulted for doing this." *Loomis*, 658 F.3d at 673-74.

### B.    Different Share Classes May Be Included in the Investment Menu.

Plaintiffs' allegation that the Plans' investment menus may not include retail class mutual funds is contrary to the clear weight of the case law. This allegation was rejected by the Seventh Circuit more than seven years ago in *Hecker*. 556 F.3d at 586.[32] Two years later, it was rejected by the Third Circuit in *Renfro*. 671 F.3d at 327-28. In 2011, the Seventh Circuit again rejected this theory in *Loomis*. 658 F.3d at 670. And two years after that, the Ninth Circuit explicitly rejected the argument that "a fiduciary should have offered only wholesale or institutional funds." *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013) (quotations omitted), *vacated on other grounds*, 135 S. Ct. 1823 (2015). As the Ninth Circuit concluded, "[t]here are simply too many relevant considerations for a fiduciary, for that type of bright-line approach to prudence to be tenable." *Id.*

As one district court recently explained in granting a Rule 12(b)(6) motion to dismiss claims similar to those asserted here:

> Fiduciaries have latitude to value investment features other than price (and
> indeed, are required to do so), as recognized by the courts. In particular, where,
> as here, a plan offers a diversified array of investment options, the fact that some

---

[32] The Seventh Circuit also rejected the argument again later that year in denying a rehearing in *Hecker*. *Hecker v. Deere & Co.*, 569 F.3d 708 (7th Cir. 2009).

other funds might offer lower expense ratios is not relevant, as ERISA does not require fiduciaries to scour the market to find and offer the cheapest possible funds (which might, of course, be plagued by other problems).

*White*, 2016 WL 4502808, at \*10 (collecting cases) (citations and quotations omitted).

Plaintiffs also allege in paragraphs 144 and 145 of the Amended Complaint that NYU breached ERISA's duty of prudence by offering mutual funds with expense ratios of 0.04% to 0.77%. Am. Compl. ¶¶ 144, 145. But these expense ratios are well within (and below) the ranges that the Third, Seventh and Ninth Circuits have held are reasonable as a matter of law. *Hecker*, 556 F.3d at 586 ("At the low end, the expense ratio was .07%; at the high end, it was just over 1%."); *Loomis*, 658 F.3d at 669-70 ("[E]xpense ratios rang[ed] from 0.03% to 0.96%."); *Renfro*, 671 F.3d at 319 (fees "ranged from 0.1% to 1.21%"); *Tibble*, 729 F.3d at 1135 ("[E]xpense ratio varied from .03[%] to 2%.").

Finally, although Plaintiffs generally allege in paragraph 115 of the Amended Complaint that there are "multiple layers of expense charges" associated with the CREF variable annuity accounts, and generally allege in paragraph 221 that the Plans offered "variable annuities with high expenses," the Amended Complaint critically fails to allege that the fees charged on the annuities were excessive for the services offered.[33] Annuities are different than mutual funds and provide substantial benefits not provided by mutual funds, including the flexibility to select among a variety of payment options and retirement income security. Annuities allow a participant the ability to pass the risk of having sufficient funds for retirement from herself to an

---

[33] Plaintiffs do not even allege that the fees charged in relation to the annuities offered under the Plans were above average, let alone excessive. The Aon Hewitt study cited in the Amended Complaint states that the average fees for variable annuities held in 403(b) plans is 2.25%. Aon Hewitt, *How 403(b) Plans Are Wasting Nearly $10 Billion Annually, and What Can Be Done to Fix It* (Jan. 2016), http://www.aon.com/attachments/human-capital-consulting/how-403b-plans-are-wasting-nearly-10billion-annually-whitepaper.pdf, at 6 (last visited Oct. 13, 2016).

insurance company.[34]  The fact that providing those additional benefits results in additional administrative fees and expenses should not be surprising; it certainly does not support any reasonable inference of imprudence.

### C.     ERISA Does Not Limit the Number of Options Included in the Investment Menu.

Plaintiffs complain that the Plans offered a "dizzying array" of investments, causing "decision paralysis" (Am. Compl. ¶ 149), although they do not actually allege that any of them (or any other participant, for that matter) was actually confused or unable to make an investment election as a result of the number of investment options offered by either of the Plans.  They also allege that it is a "well-known principle for fiduciaries that . . . a high number of investment options causes participant confusion" (Am. Compl. ¶ 223), although they have not provided any support for this bit of amateur psychology masquerading as a factual allegation.

ERISA Section 404(c) requires that the Plans offer participants the "opportunity to exercise control" by directing their accounts into a "broad range of investment alternatives."  29 C.F.R. § 2550.404c-1(b)(3).  Although these regulations require a minimum of three investment alternatives, they do not place any maximum limit on the number that can be offered.  29 C.F.R. § 2550.404c-1(b)(3)(i)(B).

Participant choice "is the centerpiece of what ERISA envisions for defined-contribution plans." *Tibble,* 729 F.3d at 1134-35.  No court has held that a plan's fiduciaries violated ERISA's duty of prudence because they offered participants too many alternatives.  To the contrary, in *Hecker*, the Seventh Circuit endorsed a plan fiduciary's inclusion of a brokerage link through which participants could select among 2,500 funds.  *Hecker*, 556 F.3d at 586.  The court

---

[34] As the DOL recently recognized, annuities "are increasingly critical for retirement savers due to the shift away from defined benefit plans."  Amendment to and Partial Revocation of Prohibited Transaction Exemption (PTE) 84-24 for Certain Transactions Involving Insurance Agents and Brokers, Pension Consultants, Insurance Companies, and Investment Company Principal Underwriters, 81 Fed. Reg. 21147, 21152 (April 8, 2016).

in *Hecker* found that the inclusion of the brokerage link and the additional level of choice it offered participants was evidence of prudence, not imprudence. *Id.* at 590. Similarly, the plan at issue in *Renfro* offered 73 investment alternatives, and the Third Circuit found that, "[i]n light of the reasonable mix and range of investment options in the Unisys plan, plaintiffs' factual allegations about Unisys's conduct do not plausibly support their claims." *Renfro*, 671 F.3d at 327.

Although no court has held it is a breach of the duty of prudence to offer too many investment alternatives, some courts have faulted fiduciaries for offering too few. *See Braden*, 588 F.3d at 596 n.6 ("The far narrower range of investment options available in this case makes more plausible the claim that this Plan was imprudently managed."). That is because in addition to satisfying the duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing," a prudent fiduciary also has the concomitant duty to diversify the investments of the plan so as to minimize the risk of large losses. ERISA §§ 404(a)(1)(B)-(C).

Plaintiffs also complain generally that it is improper to offer more than one fund in the same "investment style," and they specifically mention index funds, which they allege "pick the same stocks in the same proportions as the index." Am. Compl. ¶¶ 160, 223. But the Amended Complaint does not allege that either of the Plans offered identical funds in any so-called "investment style" or that either of the Plans offered different index funds that tracked the same index or had the same returns.

Finally, these allegations do not support an inference that the investment selection and monitoring process was deficient or inconsistent with the process followed by prudent fiduciaries "under the circumstances then prevailing." ERISA § 404(a)(1)(B). These prevailing circumstances include the significant and recognized differences between 403(b) and 401(k)

plans, including decades of relative participant autonomy over the selection of investments from multiple providers and the specific types of investment options that may be offered in a Section 403(b) plan. These prevailing circumstances are reflected in the recent survey by the Plan Sponsor Council of America, which found that higher education 403(b) plans, on average, offer 47 investment fund options.[35]

### D. Allegations Regarding Performance of Two Investment Options Do Not State A Plausible Claim for Breach of the Duty of Prudence.

Plaintiffs' allegations that two of the funds offered to participants did not perform well do not support a plausible inference of imprudence. Am. Compl. ¶¶ 164-189. Of course, hindsight is always 20/20. But under ERISA, "the ultimate outcome of an investment is not proof of imprudence." *DeBruyne v. Equitable Life Assurance Soc'y of the United States*, 920 F.2d 457, 465 (7th Cir. 1990); *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) ("[I]nvestment losses are not proof that an investor violated his duty of care."). A plaintiff "cannot rely, after the fact, on the magnitude of the decrease in the relevant investment's price." *St. Vincent*, 712 F.3d at 718 (citation omitted). Similarly, it is not enough to allege "that better investment opportunities were available." *Id.* As a result, Plaintiffs' allegations of allegedly poor performance, alone, do not create a reasonable inference that NYU failed to conduct an adequate investigation or failed to monitor adequately the performance of the CREF Stock Account or the TIAA Real Estate Account. Rather, Plaintiffs must allege some other indication that NYU failed to investigate the funds prudently. *Id.* at 718-19; *see also Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56 (2d Cir. 2016) (upholding dismissal of complaint that failed to explain how an investigation would have showed that the investment was imprudent).

---

[35] *See* Ex. 7 at 45, 68.

Moreover, Plaintiffs' allegations regarding the performance of the CREF Stock Account and TIAA Real Estate Account are based on a specious analysis. Rather than compare the performance of these funds to their accepted benchmarks over standard periods, Plaintiffs use patently inappropriate benchmarks over jury-rigged performance periods ending December 31, 2014[36] and December 31, 2009.[37] With the benefit of these inappropriate mechanics and 20/20 hindsight, Plaintiffs create only the illusion of poor performance.

The Amended Complaint compares the CREF Stock Account to the Russell 3000® Index, even though that is only part of the fund's benchmark. The CREF Stock Account's benchmark is a "composite index" of "70% Russell 3000® Index (domestic equities) and 30% MSCI ACWI ex-USA IMI (foreign equities)" because that mix is appropriate to the CREF Stock Account's actual investment mix of domestic and foreign equities.[38] When compared to the appropriate benchmark, the CREF Stock Account's performance closely tracked its benchmark over the one, five and ten-year periods.

| Fund[39] | One Year | Five Years | Ten Years |
|---|---|---|---|
| CREF Stock Account | -0.84 | 8.50 | 5.78 |
| Composite Index | -1.02 | 8.88 | 5.96 |

Plaintiffs compare the performance of the TIAA Real Estate Account, which is an annuity, to the Vanguard REIT Index Fund, which is a mutual fund, in an apples-to-oranges comparison. *See Tibble*, 729 F.3d at 1134 (rejecting comparison between mutual funds and separate accounts or commingled pools because mutual funds "have a variety of unique

---

[36] Am. Compl. ¶¶ 175, 177, 185, 187.

[37] Am. Compl. ¶¶ 178, 186.

[38] As of December 31, 2015. *See* TIAA, *College Retirement Equities Fund Prospectus* (May 1, 2016), https://www.tiaa.org/public/pdf/cref_prospectus.pdf, at 62.

[39] *See id.* at 61 (providing average annual total returns for CREF Stock Account Class R3).

regulatory and transparency features that make it an apples-to-oranges comparison to judge them against AARP and beneficiaries' suggested options").  Moreover, the TIAA Real Estate Account outperformed the Vanguard REIT Index Fund three of the last six years, including in 2015 (8.16% v. 2.45% ) and in 2013 (9.65% v. 2.48%):

| Fund | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|
| TIAA Real Estate Account[40] | 13.29 | 12.99 | 10.06 | 9.65 | 12.22 | 8.16 |
| Vanguard REIT Index[41] | 28.56 | 8.70 | 17.65 | 2.48 | 30.28 | 2.45 |
| Difference | -15.27 | 4.29 | -7.59 | 7.17 | -18.06 | 5.71 |

## V.    Plaintiffs' Prohibited Transaction Claims Must Be Dismissed.

Counts II, IV and VI allege that the ERISA prohibited transaction rules *per se* prohibit TIAA and Vanguard from providing administrative services and offering TIAA, CREF and Vanguard mutual funds as plan investments.  These allegations defy common sense to the extent Plaintiffs would have the Court conclude that ERISA *per se* prohibits the normal and established business practices whereby retirement plans engage financial service firms to provide necessary services and investments.  Not surprisingly, therefore, Plaintiffs' allegations in these Counts fail to state a plausible claim for relief under ERISA.

Counts II and IV allege that the payment of revenue sharing by various mutual funds to TIAA or Vanguard to pay for Plan recordkeeping services is a prohibited (1) sale or exchange of property, (2) provision of services, and (3) transfer of "plan assets."  Am. Compl. ¶¶ 203, 215.  Count VI makes similar allegations regarding investment management and marketing fees paid

---

[40] *See* TIAA, *TIAA Real Estate Account Prospectus* (May 1, 2016), https://www.tiaa.org/public/pdf/realestate_prosp.pdf, at 11.

[41] *See* Vanguard, *Vanguard REIT Index Fund Prospectus* (May 25, 2016), http://www.vanguard.com/pub/Pdf/i3123.pdf, at 3.

by the Plans' mutual fund investment options and mortality and risk fees charges applicable to TIAA and CREF annuity contracts. Am. Compl. ¶ 232.

To state a plausible claim for violation of ERISA § 406(a)(1), Plaintiffs must at a minimum allege: (1) the defendant is a fiduciary; (2) the fiduciary caused the plan to engage in one of certain enumerated transactions; (3) the transaction uses "plan assets"; (4) the transaction is with a "party in interest"[42]; and (5) the fiduciary knows or should know that the transaction was a prohibited transaction. *Reich v. Compton*, 57 F.3d 270, 278 (3d Cir. 1995); *In re Beacon Assoc. Litig.*, 745 F. Supp. 2d 386, 420 (S.D.N.Y. 2010) (citing *Reich*).

### A.     ERISA's Statutory Mutual Fund Exemption.

Although TIAA and Vanguard meet ERISA's definition of a "party in interest" with respect to the Plans, the mutual fund investment options available under the Plans are investment companies registered under the Investment Company Act of 1940 ("mutual funds").[43]  These mutual fund companies are *not* parties in interest with respect to the Plans.  ERISA specifically excludes mutual funds from its definition of a party in interest:  "such investment shall not by itself cause such investment company . . . to be deemed to be a fiduciary or a party in interest." ERISA § 3(21)(B); *see also,* 29 C.F.R. § 2509.75-3 (explaining that mutual funds are not parties in interest "with respect to the plan solely because of such investment"); *IATSE Local 33 Section 401(k) Plan v. Bullock*, No. CV 08-3949 AHM (SSx), 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008) (same).

---

[42] Section 3(14) of ERISA defines a "party in interest" to include specifically delineated entities, including, among others, a fiduciary of a plan, a person providing services to a plan, and an employer.  29 U.S.C. § 1102(14).

[43] In fact, the original Complaint in this matter specifically alleged that the "TIAA-CREF funds are registered investment companies under the Investment Company Act of 1940, known as mutual funds."  Compl. ¶ 37 (Doc. No. 1).  The various CREF funds offered in the CREF annuity contract are also mutual funds.  *See* United States Securities and Exchange Commission, Inv. Co. Act Release No. IC-31092; 812-14305 ("CREF is a diversified open-end management investment company registered under the Act [*i.e.*, a mutual fund] that offers various types of variable annuity contracts.").

Similarly, the definition of "plan assets" specifically excludes the underlying assets of a mutual fund. ERISA § 401(b)(1).[44] For this reason, when a plan acquires a mutual fund share, there is no transfer of "plan assets" to the mutual funds. *Assoc. in Adolescent Psychiatry v. Home Life Ins. Co of N.Y.*, 729 F. Supp. 1162, 1183-85 (N.D. Ill. 1989), *aff'd*, 941 F.2d 561 (7th Cir. 1991); *Boeckman v. A.G. Edwards, Inc.*, Civ. No. 05-658-GPM, 2007 WL 4225740 at *3 (S.D. Ill. Aug. 31, 2007) (dismissing prohibited transaction claims because "the mutual funds were not trafficking in Plan assets"). Consequently, to the extent that Plaintiffs' prohibited transaction claims relate to the acquisition of TIAA, CREF or Vanguard mutual fund shares, they must be dismissed.

Plaintiffs claim that prohibited transactions occurred each time the Plans paid fees to TIAA, CREF or Vanguard. Am. Compl. ¶¶ 203, 215, 232. As there were no fees paid directly by the plans to these entities, Plaintiffs' prohibited transaction claims apparently are based on "revenue sharing" payments by the mutual funds to TIAA and Vanguard. Those claims fail to state claims under ERISA § 406 because revenue sharing is not a plan asset. *Hecker,* 556 F.3d at 584; *Leimkuehler v. Am. United Life Ins. Co.*, 752 F. Supp. 2d 974, 985 (S.D. Ind. 2010).

Plaintiffs' allegations that investment management or distribution fees were unreasonable or unnecessary likewise fail to raise the specter of a prohibited transaction. These fees are paid by a mutual fund to its advisor or distributor, not by the Plans or their participants.[45] These fees are also exempt from the prohibited transaction rules by virtue of the statutory exemption for mutual funds. *Boeckman*, 2007 WL 4225740 at *3; *IATSE Local 33 Section 401(K) Plan Bd. of*

---

[44] *See also* 29 C.F.R. § 2509.75-2 ("an investment by a plan in securities of [a mutual fund] may be made without causing, solely by reason of such investment, any of the assets of the investment company to be considered to be assets of the plan").

[45] Department of Labor, *Understanding Retirement Plan Fees and Expenses*, available at https://www.dol.gov/ sites/default/files/ebsa/about-ebsa/our-activities/resource center/publications/undrstndgrtrmnt.pdf.

*Trs. v. Bullock*, 2008 WL 4838490 at * 6 (because payment of "Rule 12b-1 fees [and] administrative fees" are "normal incidents of investment in mutual fund shares" . . . "to adopt Plaintiff's argument would effectively eviscerate the statutory exemption of mutual funds from the prohibited transaction rules").

### B.    ERISA's Necessary Services Exemption.

Although Plaintiffs fail to mention it, ERISA provides a specific statutory exemption from the prohibited transaction rules for recordkeeping, administrative and other services provided to plans.  Were it not so, the Plans (and, indeed, all similar plans) would be unable to purchase services that are essential for plan operations.  Section 408(b)(2) of ERISA therefore exempts all transactions involving the contracting and making of reasonable arrangements with a party in interest for services necessary for the operation of a plan and payment of reasonable compensation for those services.

To state a prohibited transaction claim, Plaintiffs "must allege conduct that is plausibly actionable under the relevant statute and must go beyond creating a 'sheer possibility that a defendant has acted unlawfully.'"  *Leber*, 2010 WL 935442, at *10 (quoting *Iqbal*, 556 U.S. at 678)).  Thus, "where the complaint does not allege any basis for presuming that a defendant's conduct fell outside a statutory exemption—and therefore that a defendant's conduct might plausibly entitle plaintiff to relief—it is deficient."  *Id.*[46]  If this were not the rule, any plaintiff could bring a prohibited transaction claim and survive a motion to dismiss merely by alleging that a plan engaged a service provider to provide administrative services to a plan.

To the extent that Plaintiffs allege that the necessary services exemption would not apply based on their allegation that the revenue sharing fees paid to TIAA and Vanguard are

---

[46] *See also Hecker*, 556 F.3d at 581 (analyzing exemptions on a motion to dismiss); *Skin Pathology Assocs. Inc. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371, 374-78 (S.D.N.Y. 2014) (dismissing complaint based on ERISA § 408(b)(2) and DOL regulations).

"unreasonable" (Am. Compl. ¶¶ 203, 215 and 232), they have failed to allege any plausible facts to support that allegation. Moreover, that allegation, even if it were supported by plausible facts, would be insufficient to state a cognizable prohibited transaction claim because Plaintiffs make no allegation that any fees or revenue sharing amounts were not disclosed as required by the applicable regulations under ERISA Section 408(b)(2). *Skin Pathology Assocs. Inc.*, 27 F. Supp. 3d at 378 ("Fee-sharing arrangements or kickbacks do not in-and-of themselves create a violation [of the prohibited transaction rules], but their non-disclosure does. . . . Because the complaint attacks the [consideration received by the service provider from an affiliated third party] itself and not its nondisclosure, Plaintiff has failed to state a cognizable claim.").

Finally, to the extent that Plaintiffs are deemed to have alleged that the provision of recordkeeping or administrative services by TIAA or Vanguard did not comply with the necessary services exemption and was prohibited, those allegations fail to state a claim under ERISA § 406 because they do not allege that either TIAA or Vanguard was a party in interest when it was engaged to provide those services. *See Danza v. Fidelity Mgmt. Trust Co.*, 533 Fed. App'x 120, 125-26 (3d Cir. 2013). Plaintiffs also fail to allege that NYU knew or reasonably should have known that the transactions constituted prohibited transactions. *See In Re Beacon Assocs. Litig.*, 745 F. Supp. 2d at 420-21 (dismissing prohibited transaction claim where plaintiffs failed to allege that the fiduciary defendant knew or should have known that compensation for services rendered was unreasonable).

## VI.    Count VII Fails to State A Monitoring Claim.

Plaintiffs' claim that NYU failed to monitor appointees adequately is a derivative claim and should be dismissed because Plaintiffs have not plausibly alleged any underlying breach. *Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013), *vac'd on other grounds*, 134 S. Ct. 2900 (2014), *and reaffirmed by Rinehart*, 817 F.3d 56. Plaintiffs' monitoring claim also fails because

the Amended Complaint does not set forth any facts directly addressing how the Plans were monitored, nor does it set forth any circumstantial factual allegations sufficient to support a reasonable inference that there was a failure to monitor. *St. Vincent*, 712 F.3d at 718.

## VII. Any Alleged Breaches Before August 9, 2013, are Time-Barred.

ERISA's statute of limitations requires that a plaintiff bring suit within the earlier of six years after "the date of the last action which constituted a part of the breach," or "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." ERISA § 413(2). "A plaintiff has 'actual knowledge' of a breach 'when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act.'" *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 418 (S.D.N.Y. 2008) (citing *Caputo v. Pfizer*, 267 F.3d 181, 193 (2d Cir. 2001)). Likewise, a plaintiff has "actual knowledge" of an alleged prohibited transaction when he has "knowledge of the facts of the underlying transaction – without more." *Krueger v. Ameriprise Fin., Inc.,* No. 11-cv-02781 (SRN/JSM), 2014 WL 1117018, at *10 (D. Minn. Mar. 20, 2014).

A plaintiff has "actual knowledge" of the facts necessary to bring an excessive fee claim when fees are "readily apparent from the information provided to all Plan participants more than three years before Plaintiffs filed this suit." *Young*, 550 F.Supp. 2d at 418, 420. Similarly, a plaintiff has "actual knowledge" of the facts necessary to bring a prohibited transaction claim when he is provided with "the affiliation between [the various parties] and the fact that the funds paid trustee, recordkeeping, and management fees." *Krueger*, 2014 WL 1117018, at *14.

Prior to three years before they filed suit (August 9, 2013), Plaintiffs were provided detailed disclosures required by ERISA that included the investment alternatives available under the Plans, the expense ratio for each of the investments, each investment's benchmark, summaries of each investment's performance, and a description of the various funds and related

fees.[47]  Plaintiffs, therefore, had all of the information they needed to raise claims challenging the Plans' investment options, fees, performance of the CREF Stock Account and the TIAA Real Estate Account, and alleged prohibited transactions, before August 9, 2013.  Accordingly, Plaintiffs' claims based on allegations prior to August 9, 2013 are barred by ERISA's statute of limitations.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant its Motion to Dismiss and dismiss the Amended Complaint in its entirety.

Respectfully submitted,

/s/ Mark Muedeking
Mark Muedeking
Ian C. Taylor
Juliya Ben-Zev
DLA PIPER LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4000

Brian Kaplan (BK4922)
Evan D. Parness (EP6680)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant*

---

[47] See Ex. 8 (2012 Investment Options Comparative Chart for the Faculty Plan); Ex. 9 (2012 Investment Options Comparative Chart for the Medical Plan).