UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. ALAN SACERDOTE, et al., | Case No.: 1:16-cv-06284 |
| Plaintiffs, | |
| | ECF Case |
| v. | |
| NEW YORK UNIVERSITY, | |
| Defendant. | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Mark Muedeking (*pro hac vice*)
Ian C. Taylor (*pro hac vice*)
Juliya Ben-Zev (*pro hac vice*)
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4000

Brian Kaplan (BK4922)
Evan D. Parness (EP6680)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant*

## TABLE OF CONTENTS

                                                                           Page

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

    I.      Plaintiffs Fail to State a Claim for Disloyalty (Counts I, III and V) ...................... 1

    II.     Plaintiffs' "Bundling" Allegations Do Not Support a Plausible Claim (Count I). .............................................................................................................. 2

    III.    Plaintiffs' Allegations Regarding "Recordkeeping" Fees Do Not Support a Plausible Claim for Breach of the Duty of Prudence (Count III). ........................ 3

    IV.    Count V Fails to State a Plausible Claim of Imprudence. ..................................... 5

        A.     "Retail" Class Shares Are Not Presumptively Imprudent. ........................ 5

        B.     Plaintiffs' Investment Fee Allegations Are Inadequate. ............................ 5

        C.     Plaintiffs' "Too Many Options" Claims Are Insufficient to State a Claim. ........................................................................................................ 6

        D.     Plaintiffs' "Performance" Allegations Are Inherently Flawed and Insufficient to State a Claim of Imprudence. .............................................. 7

    V.     Plaintiffs' Opposition Fails to Save the Prohibited Transaction Claims (Counts II, IV and VI) ............................................................................................ 7

    VI.    Plaintiffs' Claims Are Limited by ERISA's Three-Year Statute of Limitations. ............................................................................................................. 9

# TABLE OF AUTHORITIES

Page

**CASES**

*Braden v. Wal-Mart Stores, Inc.*,
 588 F.3d 585 (8th Cir. 2009) .................................................................................................. 8

*Caputo v. Pfizer*,
 267 F.3d 181 (2d Cir. 2001) .................................................................................................... 9

*Fish v. GreatBank Tr. Co.*,
 749 F.3d 671 (7th Cir. 2014) ................................................................................................ 10

*Haddock v. Nationwide Fin. Servs., Inc.*,
 419 F. Supp. 2d 156 (D. Conn. 2006) ..................................................................................... 8

*Hecker v. Deere & Co.*,
 556 F.3d 575 (7th Cir. 2009) .............................................................................................. 5, 8

*In re Citigroup ERISA Litig.*,
 662 F.3d 128 (2d Cir. 2001) .................................................................................................... 2

*Krueger v. Ameriprise Fin., Inc.*,
 No. 11-cv-02781 (SRN/JSM), 2014 WL 1117018 (Mar. 20, 2014) ..................................... 10

*Leber v. Citigroup, Inc.*,
 No. 07 Civ. 9329 (SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) .................................. 9

*Loomis v. Exelon*,
 658 F.3d 667 (7th Cir. 2011) .................................................................................................. 5

*Lowen v. Tower Asset Mgmt., Inc.*,
 829 F.2d 1209 (2d Cir. 1987) .................................................................................................. 2

*Maher v. Strachan Shipping Co.*,
 68 F.3d 951 (5th Cir. 1995) .................................................................................................. 10

*Mehling v. N.Y. Life Ins. Co.*,
 163 F. Supp. 2d 502 (E.D. Pa. 2001) ...................................................................................... 9

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
 712 F.3d 705 (2d Cir. 2013) ................................................................................................ 1, 7

*Renfro v. Unisys Corporation*,
 671 F.3d 314 (3d. Cir. 2011) ................................................................................................... 5

*Severstal Wheeling, Inc. v. WPN Corp.*,
 809 F. Supp. 2d 345 (S.D.N.Y. 2011) ..................................................................................... 2

*Skin Pathology Assocs. Inc. v. Morgan Stanley & Co.*,
　27 F. Supp. 3d 371 (S.D.N.Y. 2014) .................................................................................. 9

*Taylor v. United Techs. Corp.*,
　No. 3:06cv1494 (WWE), 2009 WL 535779 (D. Conn. Mar. 3, 2009) ................................ 6

*Tibble v. Edison Int'l*,
　729 F.3d 1110 (9th Cir. 2013) ....................................................................................... 5, 9

*White v. Chevron Corp.*,
　No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .................................. 5

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
　325 F. App'x 31 (2d Cir. 2009) .................................................................................... 3, 4

**STATUTES**

ERISA § 404(a), 29 U.S.C. § 1104(a) .......................................................................................... 1

ERISA § 406(a), 29 U.S.C. § 1106(a) .......................................................................................... 8

ERISA § 406(b), 29 U.S.C. § 1106(b) .......................................................................................... 8

**INTRODUCTION**

ERISA's duty of prudence is "measured according to the objective prudent person standard." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc. ("St. Vincent")*, 712 F.3d 705, 716 (2d Cir. 2013). This standard judges a fiduciary's *process* in light of the circumstances then prevailing and in comparison to those of a prudent person "acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B).

The standard is rooted in ERISA's core principles, which afford fiduciaries discretion to administer their plans in light of the material differences that exist among plans and participants. In this case, Plaintiffs ignore the unique history and structure of 403(b) plans and the resulting differences between those plans and simpler 401(k) plans that invest exclusively in publicly traded, open-ended mutual funds that can be held in street name by a single trustee. The standard also focuses on process. Plaintiffs' Amended Complaint and Opposition say nothing of the process employed by NYU. Instead, Plaintiffs propose a series of bright-line standards, but all of them have been rejected by other courts.

Plaintiffs' Opposition also fails to provide any adequate justification for their prohibited transactions claims, which are precluded by various exemptions that Plaintiffs' Opposition also fails to address. Finally, Plaintiffs' claims are limited by ERISA's three-year statute of limitations, as Plaintiffs had actual knowledge of the facts necessary to bring the claims asserted in this case prior to that time.

**ARGUMENT**

**I.    Plaintiffs Fail to State a Claim for Disloyalty (Counts I, III and V).**

Plaintiffs allege no facts that plausibly support the conclusion that NYU "acted in [its] own interests" or "against the interests of the Plan," or that an "improper relationship or conflict

1

caused the fiduciary to act disloyally." *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 366 (S.D.N.Y. 2009), *Severstal Wheeling, Inc. v. WPN Corp.*, 809 F. Supp. 2d 245, 254 (S.D.N.Y. 2011). Plaintiffs' Opposition merely asserts that whether there was a breach of the duty of loyalty is "a matter for discovery." (Doc. 47 at 13). This is insufficient to survive a motion to dismiss.[1]

## II. Plaintiffs' "Bundling" Allegations Do Not Support a Plausible Claim (Count I).

Plaintiffs concede that there is nothing presumptively imprudent about "bundled services" arrangements. (Doc. 47 at 16). Plaintiffs seek to repackage this illegitimate presumption, however, by asserting that NYU acted imprudently by allegedly agreeing to offer the CREF Stock Account "regardless of whether it remained prudent." (Doc. 47 at 16).

Plaintiffs allege no facts that indicate that NYU agreed or was required to offer the CREF Stock Account "regardless of whether it remained prudent." In fact, the so-called "independent source" referenced by Plaintiffs merely indicates that while certain "legacy" annuity contracts may have required the CREF Stock Account, it does not state that the funds could not be transferred from those contracts or that those contracts could not be terminated at any time. Further, the Amended Complaint does not allege that NYU was *required* to offer TIAA or CREF annuity contracts or was *required* to retain TIAA for recordkeeping services. Indeed, NYU selects the Plans' vendors and could remove TIAA as a vendor.[2]

Plaintiffs ask the Court to infer that NYU did not follow a prudent process in evaluating investment alternatives because a single source, with no familiarity with or information regarding the Plans or their investment menu, put out a "sell" recommendation for the CREF Stock Account in 2012. Several details regarding that recommendation are important. First, it

---

[1] *See Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987); *In re Citigroup ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011).

[2] *See* Faculty Plan, Doc. 46-1 at §§ 4.11, 4.14, 7.1; Medical Plan, Doc. 46-2 at §§ 4.10, 4.15, 7.1.

was based on the opinion of a limited number of employees of AonHewitt that the CREF Stock Account's "strategy is too focused on mitigating risk through diversification," and that other funds performed better over certain periods of time.[3] Second, nothing in this document states or implies that this one source determined that it was imprudent to continue to offer the CREF Stock Account. In fact, the document states that it is not "financial advice and [that] action should not be taken as a result of this document alone."[4]

### III. Plaintiffs' Allegations Regarding "Recordkeeping" Fees Do Not Support a Plausible Claim for Breach of the Duty of Prudence (Count III).

Plaintiffs' Opposition focuses only on the gross amount of fees and does not address whether those fees are reasonable in relation to the services rendered. (*See* Doc. 45 at 14 (citing *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 App'x 31 (2d Cir. 2009))).

Although Plaintiffs have identified five other higher-education plans that have a single recordkeeper, they fail to analyze the amount of fees paid by any of them or the level or nature of the services received in exchange. The fact that Plaintiffs can cherry-pick five plans that have apparently consolidated recordkeeping services in the same manner as the NYU Medical Plan does not plausibly support the inference that NYU breached its ERISA fiduciary duties by having one recordkeeper for one of its plans and two for another. Nor does it plausibly support a claim that NYU failed to employ a prudent process in obtaining and evaluating administrative services. In fact, Exhibits 1 and 2 to Plaintiffs' Opposition demonstrate that, since at least 2009, Defendant did have a process of evaluating the multitude of services provided by TIAA and

---

[3] The same analyst rated the CREF Stock Accounts' financial stability as "strong" and fees as "reasonable." *See* AonHewitt, *TIAA-CREF Asset Management*, InBrief, at 3 (July 2012), *available at* http://system.nevada.edu/Nshe/?LinkServID=82B25D1E-9128-6E45-1094320FC2037740.

[4] *Id.* at 3.

Vanguard and that the total fees paid were considered in the context of the level and effectiveness of those services. (Docs. 47-2, 47-3).[5]

Fees are but a single factor to consider when obtaining services, and to state a plausible claim a plaintiff must explain why the fees in question were excessive in light of the services rendered. *Young*, 325 F. App'x at 33. Although Plaintiffs reference consultation with unidentified "experts," they fail to identify a single 403(b) plan with annuity investments that has obtained recordkeeping services at a flat per-participant rate of $35. Plaintiffs' Opposition does not identify any allegation of fact in the Amended Complaint that could support the conclusion that the fees "were excessive to services rendered," and, instead, asks the Court to assume at the pleading stage that fees must have been excessive. (Doc. 47 at 19). The Court should decline Plaintiffs' invitation simply to presume that NYU breached ERISA's fiduciary duties.

Finally, Plaintiffs' Opposition ignores the significant differences between NYU's 403(b) plans and 401(k) plans, and fails to address the impact of those differences on the nature and level of services required and the resulting impact on the cost of those services. (*See* Doc. 45 at 7-8).[6] Although Plaintiffs allege that any fee in excess of $35 per participant is unreasonable, they have not alleged that any service provider would actually administer any 403(b) plan and its annuity contracts for that price. Nor do Plaintiffs plausibly allege that there are vendors other than TIAA that could and would provide these services for both TIAA and CREF annuity contracts. (Doc. 45 at 16). Accordingly, Plaintiffs' 401(k) plan arguments regarding

---

[5] Contrary to Plaintiffs' Opposition, these exhibits (which were not included in Plaintiffs' Amended Complaint) certainly do not contain concessions of imprudence or plan losses. Rather, they merely indicate the obvious; that a fiduciary should consider (and that NYU did consider) the extent to which different arrangements can affect investment alternatives available, services provided and the participants' experience. (Doc. 47-2, 47-3).

[6] Although Plaintiffs' Opposition references Internal Revenue Bulletin 2007-36 and asserts that legislative and regulatory developments have diminished the extent to which rules governing 403(b) and 401(k) plans differ, that bulletin refers to similarities such as plan transfers, contribution limits and loans that are wholly irrelevant to this litigation and which have nothing to do with the historical and continuing differences between these types of plans.

"commodity" services and "competitive bidding" do not plausibly support a claim that NYU failed to give appropriate consideration to the relevant facts with respect to its 403(b) plans and act accordingly.

## IV. Count V Fails to State a Plausible Claim of Imprudence

### A. "Retail" Class Shares Are Not Presumptively Imprudent.

Although Plaintiffs argue that NYU "mischaracterizes" Count V as a claim that offering "retail" shares is a *per se* breach of fiduciary duty, Plaintiffs' Opposition confirms that is exactly what Plaintiffs claim. (Doc. 47 at 22). Plaintiffs repeat their argument that "lower-cost share class" options were available and, claim that, accordingly, NYU must have breached its fiduciary duties. (*Id.* at 23). Plaintiffs ask the Court to ignore *Loomis*, *Tibble*, *Hecker* and *Renfro* because each of those cases supports the conclusion that there is nothing presumptively imprudent about offering "retail" class shares. (*See* Doc. 45 at 18-19). Further, the specific argument made by Plaintiffs in this case was rejected by the courts in *White* and *Tibble*. *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *11 (N.D. Cal. Aug. 29, 2016); *Tibble v. Edison Int'l,* 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated,* 135 S. Ct. 1823 (2015).

### B. Plaintiffs' Investment Fee Allegations Are Inadequate.

Plaintiffs' complaints regarding the alleged "layers" of fees charged for the various investment alternatives fail as a matter of law because Plaintiffs fail to allege that the overall fees were excessive. (Doc. 47 at 24-25). Plaintiffs' Opposition fails to address the fact that the Plans' investment alternatives have expense ratios that are well within (and below) ranges that have been found reasonable as a matter of law. (Doc. 45 at 19). In fact, the AonHewitt study Plaintiffs repeatedly cite in the Amended Complaint states that the average fee on variable

5

annuities held by 403(b) plans is 2.25%. Plaintiffs allege that the CREF variable annuity accounts offered in the Plans have an expense ratio of 0.46%. Am. Compl. ¶ 115.[7]

Plaintiffs' Opposition continues to ignore that annuities are different than mutual funds. The fact that annuities have different fees that are inherent in the nature of those insurance products does not plausibly support the inference that NYU breached its fiduciary duties by allowing participants in the NYU Plans to invest in annuities. (*See* Doc. 45 at 19-20). Plaintiffs' Opposition ignores these points completely, and instead asks the Court to assume that the fees associated with annuities must have been unnecessary and excessive.

**C. Plaintiffs' "Too Many Options" Claims Are Insufficient to State a Claim.**

Plaintiffs provide no authority for their argument that offering too many investment alternatives is a breach of the duty of prudence. (Doc. 47 at 25). Rather, Plaintiffs merely reiterate their "Vanguard and TIAA made-them-do-it" arguments (Doc. 47 at 25), and allege, without any factual basis, that too many choices are "overwhelming and confuse[] participants," although none of the Plaintiffs claims to have been overwhelmed or confused. Moreover, although Plaintiffs continue to complain of allegedly "duplicative" investment alternatives (Doc. 47 at 26), the Amended Complaint does not allege that either of the Plans offered identical funds or different index funds that tracked the same index or had the same results. (*See* Doc. 45 at 21).

Plaintiffs ask the Court to ignore the reasoning and holding in *Taylor v. United Techs. Corp.*, because, according to Plaintiffs, in that case "there was evidence that the fiduciaries analyzed the impact of higher fees on fund returns, which is not the case here." (Doc. 47 at 28, n. 28.) But Exhibits 1 and 2 to Plaintiffs' Opposition demonstrate that, since at least 2009, NYU

---

[7] In fact, the CREF variable annuities offered under the plans have expense ratios between 0.27% and 0.38%. (Doc. 46-5, 46-8).

has in fact maintained a committee that monitors and evaluates the Plans' investment line up, including fees and returns. (Docs. 47-2, 47-3).

### D. Plaintiffs' "Performance" Allegations Are Inherently Flawed and Insufficient to State a Claim of Imprudence.

In support of their argument that NYU breached ERISA's fiduciary duties by retaining underperforming funds, Plaintiffs identify two funds (out of over 100) that Plaintiffs allege underperformed comparable lower-cost alternatives as of year-end 2009. (Doc. 47 at 27). As explained in NYU's motion, Plaintiffs' mischaracterization of the performance of these funds is manufactured by using inappropriate benchmarks and apples-to-oranges comparisons over jury-rigged performance periods. (Doc. 45 at 23). Plaintiffs' Opposition ignores the actual comparison of the CREF Stock Account against its actual composite benchmark because doing so eviscerates Plaintiffs' performance allegations. (*See* Doc. 45 at 23).

Regardless, poor performance of an investment, even if not presented under manufactured standards, "does not alone suffice to state a claim under ERISA." *St. Vincent*, 712 F.3d at 721. To state a claim, Plaintiffs must allege *facts* that suggest the investment decision-making process was deficient and a prudent process would have yielded a different result. *St. Vincent*, 712 F.3d at 718. Moreover, Plaintiffs do not allege that the CREF Stock Account or the TIAA Real Estate Account was too risky or that the inappropriate comparisons identified in the Amended Complaint earned greater returns for the same level of risk. *Id*. at 722-23. Absent such allegations, the mere fact that Plaintiffs can identify investments that outperformed two of the Plans' over 100 investments fails to state a claim of imprudence. *Id.*

### V. Plaintiffs' Opposition Fails to Save the Prohibited Transaction Claims (Counts II, IV and VI).

ERISA's statutory mutual fund exemption makes clear that neither the purchase or sale of a mutual fund nor the payment of revenue sharing by the mutual fund is a prohibited transaction

with a party in interest. (*See* Doc. 45 at 25-26). Plaintiffs' Opposition does not refute this unequivocal point. Plaintiffs cannot state a claim under ERISA § 406(a)(1)(A) or (C) because the mutual funds in question are not parties in interest, and Plaintiffs cannot state a claim under 406(a)(1)(D) because there was no transfer of assets to a party in interest. Citing *Braden*, Plaintiffs argue that a plaintiff need only allege that a recordkeeper received "revenue sharing payments in exchange for services rendered to the Plan." (Doc. 47 at 29). In *Braden*, however, the plaintiffs alleged that the revenue sharing payments were *not* made in exchange for services rendered to the plan, but, rather, were "kickbacks in exchange for inclusion in the Plan." *Braden v. Wal-Mart Stores, Inc.* 588 F.3d 585, 600 (8th Cir. 2009). There are no such allegations here.

Plaintiffs' reliance on *Haddock v. Nationwide Fin. Servs., Inc.*, is similarly misguided, as that case involved claims for violation of ERISA's self-dealing provisions of 406(b), rather than 406(a)(1). 419 F. Supp. 2d 156, 169 (D. Conn. 2006). The court in *Haddock* tethered its reasoning to the allegation that the defendant received revenue sharing payments "as a result of its status as a fiduciary or its exercise of fiduciary discretion or authority," as the defendant in that case had the authority to remove or add its own investment alternatives from which it received revenue sharing payments. *Id.* at 170.[8] There are no such allegations here, and Plaintiffs' theory in this case is directly contrary to the holding in *Hecker* as well as the Secretary of Labor's amicu*s* brief in *Hecker*, which likewise concludes that intra-company revenue sharing payments are not prohibited transactions. *Brief for the Secretary of Labor*, Elaine L. Chao at 22, as Amicus Curiae Supporting Plaintiffs-Appellants, *Hecker v. Deere*, 556 F.3d 575 (7th Cir. 2009) (revenue sharing payments to affiliates "do not constitute plan assets").

---

[8] Moreover, the court in *Haddock* did not hold that the revenue sharing payments were plan assets; it merely held that, because of the defendant's fiduciary status, the receipt of the particular payments in question presented a triable issue of fact. *Id.* at 172.

8

Plaintiffs also misinterpret and misstate Department of Labor Advisory Opinion 2013-03A. Contrary to Plaintiffs' Opposition, that opinion concluded that revenue sharing amounts received by the recordkeeper were *not* plan assets for ERISA purposes. *See* DOL Adv. Op. 2013-03A (July 3, 2013).

Plaintiffs' argument that the application of a statutory exemption cannot be decided at this juncture ignores the fact that numerous courts, including two in this District, have dismissed prohibited transaction claims at the pleading stage based on a relevant exemption.[9] Plaintiffs' Opposition also ignores that Plaintiffs do not allege that NYU had any prior relationship with TIAA or Vanguard, that either of those service providers was a party in interest at the time it was first engaged to provide services, or that NYU knew, or reasonably should have known, that it entered into prohibited transactions. (Doc. 45 at 28).

## VI. Plaintiffs' Claims Are Limited By ERISA's Statute of Limitations

Citing *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001) and *Tibble*, 729 F.3d at 1121, Plaintiffs argue that they did not have "actual knowledge" of their breach of fiduciary duty claims because they did not have knowledge of the "process that NYU used." (Doc. 47 at 30-31). *Caputo* involved claims of fraud and concealment, and has no relevance here. *Tibble* is similarly irrelevant, as the plaintiffs in that case alleged that alternative investments "had not been investigated—not simply that their inclusion had been imprudent." 729 F.3d at 1120. Although Plaintiffs' Opposition attempts to recast Plaintiffs' Amended Complaint otherwise, Plaintiffs allege the latter, not the former. Plaintiffs do not claim that, for example, the retention of two recordkeepers was imprudent because of a failure to investigate. Exhibits 1 and 2 to

---

[9] *See, e.g., Leber v. Citigroup, Inc.*, No. 07 Civ 9329 (SHS), 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (dismissing claim because "even in the light most favorable to plaintiffs, the complaint asserts nothing more than that defendants purchased shares in an affiliated mutual fund, a transaction to which 'the restrictions of section . . . 406 . . shall not apply'"); *Skin Pathology Assocs. Inc. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371, 374-78 (S.D.N.Y. 2014) (dismissing complaint based on 408(b)(2) exemption); *see also Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510-11 (E.D. Pa. 2001).

9

Plaintiffs' Opposition and the fact that NYU consolidated the Medical Plan's recordkeeping with a single vendor confirm that any such argument is untenable. Rather, Plaintiffs allege that the retention of two recordkeepers, in and of itself, is a breach of the duty of prudence. Moreover, Plaintiffs' arguments are undermined by their repeated references and reliance on numerous allegations of fact, and undisputed materials such as fee disclosures, that all occurred or were provided well before the three-year period prior to filing of this case.[10] While NYU does not agree that any of these allegations (alone or in total) are sufficient to state a claim for breach of fiduciary duty, Plaintiffs cannot have it both ways.

Plaintiffs' Opposition argues that this Court should not find Plaintiffs' prohibited transaction claims time-barred because NYU's Memorandum explained that Plaintiffs' claims are barred by ERISA's necessary services exemption. (Doc. 45 at 22). This argument ignores the fact that Plaintiffs' claims are also barred by the statutory mutual fund exemption. (Doc. 45 at 20).[11] Finally, the Court should decline Plaintiffs' invitation to ignore the logic and sound reasoning of the court in *Krueger v. Ameriprise Fin. Inc.*, 2014 WL 1117018, at *14 (D. Minn. Mar. 20, 2014), which, like the Fifth Circuit in *Maher v. Strachan Shipping Co.*, concluded that a plaintiff has "actual knowledge" of the fact necessary to bring a prohibited transaction claim when he is provided with knowledge of the transaction and the parties involved. 68 F.3d 951, 955-56 (5th Cir. 1995).

---

[10] For example, Plaintiffs repeatedly reference a 2012 assessment of the CREF Stock Account and attachment materials made publicly available in 2009, and claim that certain investments should have been removed from the Plans' investment lineups more than seven years ago. By contrast, Plaintiffs do not reference a single fact allegedly learned *within* the three-year period prior to the filing of this case.

[11] Further, Plaintiffs' reliance on *Fish v. GreatBank Tr. Co.*, is misguided, as that opinion was based on the conclusion that the plaintiffs should not have been required to file suit at the time of a transaction "without undertaking any investigation of the affirmative defense *that the defendants themselves were invoking at the time.*" 749 F.3d 671, 687 (7th Cir. 2014) (emphasis added). There are no such allegations in the Amended Complaint here.

10

Respectfully submitted,


/s/ Mark Muedeking
Mark Muedeking (*pro hac vice*)
Ian C. Taylor (*pro hac vice*)
Juliya Ben-Zev (*pro hac vice*)
DLA PIPER LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4000

Brian Kaplan (BK4922)
Evan D. Parness (EP6680)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant*