USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 19, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
DR. ALAN SACERDOTE, et al., :
:
                  Plaintiffs, :
:
           -v- : 16-cv-6284 (KBF)
:
NEW YORK UNIVERSITY, : OPINION & ORDER
:
                  Defendant. :
:
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

    Pending before the Court is plaintiff's motion for reconsideration. (ECF No. 81.) Plaintiffs seek reconsideration of the Court's dismissal of (1) their prudence claim in Count V regarding mutual fund share classes, and (2) their failure to monitor claim in Count VII. For the reasons discussed below, that motion is DENIED.

I.   LEGAL STANDARD

    The standard for granting reconsideration is strict. A motion for reconsideration under Local Rule 6.3 "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "Controlling authority means decisions of the Second Circuit Court of Appeals or the U.S. Supreme Court . . . ." Ivan Visin Shipping, Ltd. v. Onego Shipping &

Chartering B.V., 543 F. Supp. 2d 338, 339 (S.D.N.Y. 2008) (citation omitted). The Court should not revisit a prior order without "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted). A motion for reconsideration should be denied if the moving party "merely offers substantially the same arguments he offered on the original motion . . . ." United States v. Kerik, 615 F. Supp. 2d 256, 276 n.27 (S.D.N.Y. 2009) (quotation omitted). Plaintiffs' first claim is that this Court committed manifest legal error in dismissing an allegation supporting Count V of the Amended Complaint; their second is that they have discovered new evidence supporting Count VII.

## II. RETAIL CLASS SHARES VERSUS INSTITUTIONAL CLASS SHARES

The first question before the Court is whether it manifestly erred when it determined that, as a matter of law and as elaborated by the facts alleged in the Amended Complaint, the inclusion of retail class shares in a plan despite the alleged availability of identical institutional class does not, on its own, support a cognizable prudence claim. Plaintiff asserts that the Court erred in its interpretation of the caselaw on which it relied in deciding this question.

### A. Legal Principles

As an initial matter, the Court notes that the Second Circuit has not addressed this precise question and that no case on which plaintiffs, defendants, or

this Court relied is binding precedent.[1]  However, in assessing the prudence of a particular investment mix, the Second Circuit has held that the "prudence of each investment is not assessed in isolation but, rather, as the investment relates to the portfolio as a whole."  Pension Ben. Guar. Corp. v. Morgan Stanley Investment Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013) (emphasis added).  To comply with ERISA and the duty of prudence, the fiduciary must "give 'appropriate consideration' to whether an investment 'is reasonably designed, as part of the portfolio . . . to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment.'"  Id. (quoting 29 C.F.R. § 2550.404a-1(b)(2)(i)); see also Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009) ("We see nothing in [ERISA] that requires plan fiduciaries to include any particular mix of investment vehicles in their plan.").  Thus, to support a claim that defendant breached its duty of prudence in the Second

---

[1] Additionally, the Court notes that its reliance on Tibble v. Edison Int'l (Tibble I), 729 F.3d 1110 (9th Cir. 2013), rev'd 135 S. Ct. 1823 (2015), was misplaced, though Tibble I was not necessary to support its holding.

3

Circuit, plaintiff must demonstrate that the mix of investments was unreasonable, not just that the inclusion of any specific investment was imprudent.²

Plaintiffs maintain that this Court misread the caselaw on whether offering retail class shares over institutional class shares is prudent. However, none of the cases cited are directly on point; each decision necessarily focuses on the facts a plaintiff alleges, the sufficiency of which differs from complaint to complaint. Various appellate decisions that have addressed this or similar questions indicate a trend supportive of this Court's decision. Where plaintiffs allege that a defendant breached its fiduciary duty by including retail class shares but do not sufficiently allege an alteration of the total mix, the allegation does not survive a motion to dismiss. See, e.g., Renfro v. Unisys Corp., 671 F.3d 314, 319 (3d Cir. 2011) (dismissing an allegation when plaintiffs alleged only that the defendant "could have selected investments having lower fees than mutual funds and/or used the size of its plan as leverage to bargain for lower fee rates on mutual funds," but did not identify specific funds); Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009) (dismissing a claim that the defendant breached its fiduciary duty by including retail mutual funds because "the undisputed facts [left] no room for doubt that the

---

² Certainly, trustees have "a continuing duty to monitor trust investments and remove imprudent ones." Tibble v. Edison Int'l (Tibble II), 135 S. Ct. 1823, 1828 (2015). This standard does not, however, speak to which investments are imprudent, nor does it require trustees to always choose options based on fee structure alone. In fact, the standard may in some cases encourage trustees to pick an option with higher fees, based on the other aspects of the fund in question or the other options available in the plan.

    It is, of course, possible that a single investment option could be so manifestly imprudent as to support a prudence claim simply by virtue of its inclusion. Here, though, the claim is essentially that including a particular share class is ipso facto imprudent. That claim is not sufficiently supported.

4

[plans] offered a sufficient mix of investments for their participants" and no trier of fact could find that the defendant failed to satisfy its alleged duty to "furnish an acceptable array of investment vehicles").

In contrast, cases that maintain such claims, such as Braden v. Wal-Mart Stores, Inc., 588 F.3d 585 (8th Cir. 2009), do not lack allegations supporting a total mix argument. In Braden, the Eighth Circuit denied a motion to dismiss a prudence claim based on an allegation that the defendant could have switched to specific institutional class shares with identical features and lower costs. See 588 F.3d at 590. In that case, the decision focused on the mix as well, but there, the plan offered only thirteen products (not 103 or 84 as here): ten mutual funds, one common/collective trust, common stock in the defendant corporation, and a stable value fund. Id. at 589. In addition, plaintiffs there alleged that all of the included mutual funds were only available as retail class shares. Id. at 595. Here, defendant's Faculty Plan offers 103 options, and the Medical Plan offers 84 options—far more than the defendant in Braden—and there is no allegation that every mutual fund option offered only retail class shares. (See Am. Compl. ¶ 223; see also Faculty Plan Form 5500, ECF No. 47-5, at 13-15; Medical Plan Form 5500, ECF No. 47-6, at 16-17.)

In Renfro, the Third Circuit illuminated the distinction between Hecker and Braden, noting that both courts used a similar methodology in analyzing the investment mix by "look[ing] first to the characteristics of the mix and range of options and then evaluat[ing] the plausibility of claims challenging fund selection

5

against the backdrop of the reasonableness of the mix and range of investment option." Renfro, 671 F.3d at 326. That methodology led to divergent results because of the varied sufficiency of the plaintiffs' allegations.

Plaintiffs' motion also relies heavily on their reading of Loomis v. Exelon Corp., 658 F.3d 667 (7th Cir. 2011), which dismissed a claim for breach of fiduciary duty based on an allegation that defendant offered retail funds rather than "arrang[ing] for access to 'wholesale' or 'institutional' investment vehicles . . . to which the general public does not have access." Id. at 671. Put simply, reliance on Loomis is not necessary for this Court's holding.[3] That said, the Court still finds persuasive the Seventh Circuit's reasoning that the plaintiffs in Loomis were not arguing that their fees were higher, as low-fee plans were available to plaintiffs through the plan, or that the defendant "left participants adrift and apt to blunder into the high-expense funds when they would be better off with the low-expense funds." Loomis, 658 F.3d at 671. Like plaintiffs here, the plaintiffs in Loomis had

---

[3] Upon further reflection, the record on which the Loomis court relied included additional allegations that were not made here. An amicus brief illuminated the difference between the expense ratios of institutional share class and those of retail funds, which undermined the plaintiffs' claim that institutional shares are always more prudent. The record also included not just the point about lower liquidity with which plaintiffs here take issue, but also arguments about the expenses tied to funds with more small investors versus fewer large investors. The Seventh Circuit's holding thus relied on the factual record before it—the decision did not necessarily indicate that as a matter of law, fiduciaries may offer retail class shares instead of institutional class shares consistent with their duty of prudence.

6

access to a mix of options, some of which were retail class shares and some of which were not.

Finally, the Court is aware of Judge Castel's opinion addressing similar claims to those brought by plaintiffs here, in which he disagreed with this Court, noting that Loomis "considered challenges to the overall range of investment options offered by the plans rather than the prudence of including any particular investment options." Cunningham v. Cornell Univ., No. 16-cv-6525, 2017 WL 4358769, at *7 (S.D.N.Y. Sept. 29, 2017). Respectfully, this Court's reading of Second Circuit precedent indicates that it must consider the mix rather than the prudence of any individual option when assessing a prudence claim.

B. Discussion

Against this backdrop, the Court has re-reviewed its decision of August 25, 2017. (ECF No. 79.) Having carefully considered the issue, the Court continues in its view that plaintiffs' Amended Complaint does not allege sufficient facts to support a plausible claim that the inclusion of retail class shares (versus specific institutional class shares) breached the duty of prudence. The allegations in the Amended Complaint fall short of showing the inclusion of such shares rendered the mix of options imprudent.

According to the Amended Complaint, defendant offers two retirement plans: the New York University Retirement Plan for Members of the Faculty, Professional Research Staff, and Administration (the "Faculty Plan") and the New York University School of Medicine Retirement Plan for Members of the Faculty,

Professional Research Staff, and Administration (the "Medical Plan") (collectively, the "Plans").[4] (Am. Compl. ¶ 1.) The Faculty Plan consists of 103 investment options and the Medical Plan offers 84 investment options. (Id. ¶ 18.) As relevant here, plaintiffs claim the Plans offered only retail class shares in certain of the investment options, though cheaper institutional class shares might have been available to defendant because of its size. Plaintiffs allege:

> The fees available to multi-billion dollar retirement plans are orders of magnitude lower than the much higher retail fees available to small investors. . . . Retail share classes are marketed to individuals with small amounts to invest. Institutional share classes are offered to investors with large amounts to invest, such as large retirement plans. The different share classes of a given mutual fund have the identical manager, are managed identically, and invest in the same portfolio of securities. The only difference is that the retail shares charge significantly higher fees, resulting in retail class investors receiving lower returns. The share classes are otherwise identical in all respects.[5]

(Id. ¶¶ 40, 50.) The Court accepts this as an allegation that defendant included higher-cost classes of shares when it could have included lower-cost, "identical" classes. (Id. ¶ 50.) The only other difference alleged is the minimum required investment, which defines whether the class is retail or institutional. Plaintiffs also list a number of funds that had retail class shares included in the Plans but not

---

[4] On a motion to dismiss, the Court assumes the truth of the factual allegations in the Amended Complaint.
[5] For the purpose of this motion, the Court accepts as true that the share classes are identical, but the Court is not currently aware of any situation in which this is truly the case. Plaintiffs admit, for example, that the share classes require different minimum investment amounts; this on its own might suggest that they are not, in fact, identical, as the size—and the corresponding number of investors—may influence other aspects of the classes such their management and returns.

institutional class shares.[6] (Id. ¶ 144-45.) But plaintiffs do not allege that, taken as a whole, the mixes of options in the Plans were imprudent <u>because</u> of the inclusion of these retail class shares. In light of the large number of investment choices in the Plans—including institutional class shares in certain funds—plaintiffs' allegation that lower-cost, allegedly "identical" funds were available is not enough to support a claim that defendants breached their duty of prudence. The retail class shares would have to be so prevalent that an entire Plan was tainted. To hold otherwise would result in an unreasonable level of micromanagement of investment mixes by courts and unduly restrict fiduciaries.

For the foregoing reasons, the Court will not reinstate this claim.

## III. FAILURE TO MONITOR

Additionally, the Court will not reinstate Count VII. Plaintiffs claim that through discovery, they have uncovered evidence of defendant's failure to monitor. However, the facts plaintiffs reference are not "new" as required by <u>Virgin Atl. Airways</u>. 956 F.2d at 1255. Plaintiffs knew about the Retirement Plan Committee and its membership since at least November 28, 2016—well in advance of its briefing on defendant's motion to dismiss, which was filed on January 9, 2017, and the oral argument on the motion on February 16, 2017. (ECF Nos. 47, 55.) The evidence now referenced is not "new" by any stretch of the imagination. In fact, in support of this motion, plaintiffs cite their own memorandum in opposition to the

---

[6] The precise proportion that retail class share funds comprise of the available options is unclear, as the plaintiffs' list includes options that are currently and were previously offered. (<u>Id.</u> ¶¶ 144-45.)

9

motion to dismiss, which the Court considered in deciding that motion. And even if the evidence were new, plaintiffs have not met their burden of demonstrating that it "might reasonably be expected to alter the conclusion reached by the court." Sulton, 2010 WL 1375188, at *1 (quotation omitted). As such, this claim will not be reinstated.

IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motion for reconsideration. The Clerk of Court is directed to close the motion at ECF No. 81.

SO ORDERED.

Dated: New York, New York
October 19, 2017

*K. B. Forrest*

KATHERINE B. FORREST
United States District Judge