USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 13, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
DR. ALAN SACERDOTE, et al.,

                 Plaintiffs,

         -v-                               16-cv-6284 (KBF)

NEW YORK UNIVERSITY,               OPINION & ORDER

                 Defendant.
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      This lawsuit, commenced in 2016, alleges that New York University ("NYU") violated various provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Specifically, plaintiffs allege that NYU breached its fiduciary duty in maintaining its two employee retirement plans, the New York University Retirement Plan for Members of the Faculty, Professional Research Staff, and Administration ("Faculty Plan") and the NYU School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration ("Medical Plan") (collectively, the "Plans"), both of which are defined contribution, individual account, employee pension benefit plans. The instant action is one of a number of cases filed in district courts across the country by the same counsel alleging that university pension plans, known as "403(b) plans," typically with significant assets, have not been managed prudently or for the exclusive purpose of providing benefits to participants and their beneficiaries, in violation of ERISA.

There are seven named plaintiffs in this action: Dr. Alan Sacerdote, Dr. Herbert Samuels, Mark Crispin Miller, Patrick Lamson-Hall, Marie E. Monaco, Dr. Shulamith Lala Straussner, and James B. Brown. Sacerdote is a clinical professor at the NYU School of Medicine. (ECF No. 39, Am. Compl. ¶ 19.) Samuels is a professor of pharmacology and a professor of medicine at the NYU School of medicine. (Id. ¶ 20.) Miller is a professor of media, culture, and communication at NYU. (Id. ¶ 21.) Lamson-Hall is an adjunct instructor and research scholar at NYU Stern Urbanization Project. (Id. ¶ 22.) Monaco is an associate professor in the department of neuroscience and physiology at NYU School of Medicine. (Id. ¶ 23.) Straussner is a professor of social work at NYU. (Id. ¶ 24.) Brown is an associate professor at NYU's Tisch School of Arts. (Id. ¶ 25.) Sacerdote, Samuels, and Monaco are participants in the Medical Plan, while Miller, Lamson-Hall, Strassuner, and Brown are participants in the Faculty Plan. (Id. ¶¶ 19-25.)

These seven named plaintiffs seek to represent a putative class of at least 20,000 individuals, defined as follows:

> All participants and beneficiaries of the NYU School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration and the New York University Retirement Plan for Members of the Faculty, Professional Research Staff and Administration from August 9, 2010, through the date of judgment, excluding the Defendant and any participant who is a fiduciary to the Plans.

(Id. ¶ 192; ECF No. 121, Mem. in Supp. Of Pl.'s Mot. for Class Certification ("Mem. Supp.") at 6.)

Pending before this Court is plaintiffs' motion for class certification. For the reasons set forth below, plaintiffs' motions is GRANTED.

I.  BACKGROUND

NYU's two Plans are qualified under 26 U.S.C. § 403(b)(1)(A). (Am. Compl. ¶¶ 26, 70.) Both are defined contribution, individual account, employee pension benefit plans. (Id. ¶¶ 9, 13.) The Faculty Plan covers substantially all members of NYU's faculty, professional research staff, and administration, other than employees of the School of Medicine, who are covered by the Medical Plan. (Id. ¶¶ 11, 15.) Under the terms of both Plans, participants may contribute a discretionary amount of their annual compensation to the Plans, and NYU makes a matching contribution. (Id. ¶ 17.) In terms of assets, the Faculty Plan is among the largest 0.04% and the Medical Plan is among the largest 0.06% of defined contribution plans in the United States. (Id. ¶¶ 12, 16.) According to plaintiffs, plans of such size are referred to as "jumbo plans," and their large size affords them "enormous bargaining power" to command low investment management and recordkeeping fees for their participants. (Id.) Both TIAA-CREF and Vanguard are recordkeepers for the Faculty Plan, and NYU consolidated the Medical Plan to a single recordkeeper (TIAA-CREF) in late 2012. (Id. ¶ 126.)

As of December 31, 2014, the Faculty Plan offered 103 total investment Options—25 TIAA-CREF investment Options and 78 Vanguard Options. (Id. ¶ 107.) As of that same date, the Medical Plan offered 11 TIAA-CREF investment Options and 73 Vanguard Options, for a total of 84 Options. (Id. ¶ 108.) Both Plans

3

offered the TIAA Traditional Annuity, which is a fixed annuity contract that returns a contractually specified minimum interest rate. (Id. ¶ 112.) TIAA-CREF requires plans that offer the TIAA Traditional Annuity to also offer the CREF Stock and Money Market accounts and to use TIAA as a recordkeeper for its proprietary products. (Id. ¶ 110.) The other TIAA-CREF investment Options in the Plans include variable annuities, an insurance separate account (the TIAA Real Estate Account), and mutual funds. (Id. ¶¶ 114-19.) The remaining investment Options in the Plans are Vanguard mutual funds, which charge investment management, distribution, marketing, and other fees. (Id. ¶ 119.)

The Plans' fiduciaries choose the investment Options for the Plans, but it is the participants themselves who direct their contributions into a particular investment option ("Option"). (Id. ¶ 18.) There is no allegation that any Plan participant was required to invest in any particular investment Option. Rather, plaintiffs alleged that Defendant included expensive or imprudent options among the array of choices, allowed the service providers to mandate inclusion of their own investment products and recordkeeping services, failed to remove poorly performing funds, and engaged in prohibited transactions.

Plaintiffs initially alleged breaches of NYU's fiduciary duties of loyalty and prudence, based on a number of allegations. Two of plaintiffs' initial claims remain, both of which relate to an alleged breach of defendant's duty of prudence: the first is an alleged breach relating to procedural deficiencies with regard to recordkeeping, administrative fees, and revenue-sharing; the second is an alleged breach relating

4

to defendant's decision-making process as to certain plan options. (See generally ECF No. 79, Opinion & Order.)

II. LEGAL STANDARDS FOR CLASS CERTIFICATION

ERISA expressly authorizes a plan participant to sue in a representative capacity on behalf of a plan. 29 U.S.C. §§ 1109(a), 1132(a)(2). A plaintiff seeking certification of a class must prove by a preponderance of the evidence that its proposed class meets the requirements of Rule 23(a) and, if those requirements are met, that the class is maintainable under at least one of the subdivisions of Rule 23(b). See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008). Plaintiff here seeks certification under Rule 23(b)(1).

> Rule 23(a) provides that class certification may be appropriate if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

> Rule 23(b)(1) allows certification if
>
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>   (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>   (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would

substantially impair or impede their ability to protect their interests . . . .

Fed. R. Civ. P. 23(b)(1).

Plaintiff bears the burden of demonstrating affirmative compliance with the requirements of Rule 23. Wal-Mart, 564 U.S. at 366. In making a determination as to whether class certification is appropriate, the district court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." Teamsters Local 445, 546 F.3d at 204 (quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006)).

## III. CLASS CERTIFICATION

### A. Rule 23(a) Requirements

#### 1. Numerosity

The putative class in this action includes at least 19,000 individuals—the Plans had at least 19,000 participants throughout the proposed class periods with over 24,000 participants at the end of 2014. (Am. Compl. ¶ 192; Mem. Supp. Exs. 1-14.) Certainly, this number of potential plaintiffs serves to make joinder impracticable. See Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) ("Consolidating in a class action what could be over 100 individual suits serves judicial economy."); see also Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473,

483 (2d Cir. 1995) (noting that, according to a treatise, "numerosity is presumed at a level of 40 members").

    2. Commonality

Plaintiffs have also demonstrated that there are questions of law and fact that are common to the class. While "a single common question will do," Wal-Mart, 564 U.S. at 359, the common questions here are numerous. In a class action alleging a breach of a fiduciary duty under ERISA, "[i]n general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." In re Glob. Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (citing Banyai v. Mazur, 205 F.R.D. 160, 163 (S.D.N.Y. 2002)).

The core questions in this lawsuit are common to all participants: whether defendant breached its fiduciary duties by taking actions or failing to take actions that resulted in improperly high fees, and whether certain investment options were properly included. In addition, plaintiff has proffered sufficient facts supporting that the discovery at issue in this case will "generate common answers apt to drive the resolution of the litigation." Wal-Mart, 564 U.S. at 350 (emphasis in original). Plaintiffs are bringing suit on behalf of participants in the Plans, the centralized administration of which is common to all class members. For example, the questions upon which all class members' claims depend include, inter alia: whether defendant is a fiduciary; whether defendant breached its fiduciary duties in each respect alleged (e.g., whether it was imprudent to include the CREF Stock and

7

TIAA Real Estate Accounts); whether the Plans suffered losses as a result of those breaches; the method of calculating the Plans' losses; what equitable relief should be imposed to remedy the breaches and prevent future violations. The facts that will prove or disprove the allegations as to the Plans' management are the same for every individual class member. Ultimately, because the fiduciaries allegedly owed and breached duties to the Plans—not to individuals—commonality must be satisfied.

      3. Typicality

Typicality is also satisfied, as the "claims of [the] representative plaintiffs arise from [the] same course of conduct that gives rise to claims of the other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." In Re Oxford Health Plans, Inc., 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (citing In Re Drexel Burnham Lambert Group, 960 F.2d 285, 291 (2d Cir. 1992)). Each class member's claim is subject to the same proof regarding the defendant's actions with regards to the Plans and the alleged harm experienced by each plaintiff is the same. Indeed, because the commonality and typicality requirements "tend to merge," Wal-Mart, 564 U.S. at 349 n.5, the analysis of this factor is similar to the previous analysis. Each named plaintiff is asserting a claim on behalf of the Plans—the evidence as to the Plans' management by defendant will be the same for each class member. The adjudication of the

8

breach of fiduciary duty claims will not turn on any individual class member's circumstance.

4. <u>Adequacy</u>

Finally, the named plaintiffs are adequate representatives of the proposed class members, and class counsel is qualified and experienced. First, there are no "conflicts of interests between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). There is no reason to doubt that the names plaintiffs will "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), as they have identical legal and effectively identical financial interests in this action as do the proposed class members.

Defendant puts forth three arguments in support of their assertion that the named plaintiffs are not adequate representatives. First, NYU argues that plaintiffs' Amended Complaint proposes a flat-fee payment system for the Plans rather than a revenue-sharing system[1]; as a result, the recordkeeper's compensation would not change due to an increase in assets. Defendant contends that a flat-fee structure would create class conflicts, since members of the class with lower salaries than the named plaintiffs might not benefit from this type of payment structure, as $30 (or some other flat fee) might be more than they would pay in a revenue-sharing arrangement. However, the Amended Complaint does not

---

[1] A flat-fee system is one in which each participant pays the same dollar amount or percentage of assets to the recordkeeper. (Am. Compl. ¶¶ 59-62.) In a revenue-sharing system, the payments are paid by the mutual fund and are asset-based, such that "the fees can [allegedly] grow to unreasonable levels if plan assets grow while the number of participants, and thus the services provided, have not increased at a similar rate." (<u>Id.</u> ¶ 64.)

9

simply propose this structure as the preferred outcome. Rather, it alleges that a flat fee structure does "not necessarily mean . . . that every participant in the pan must pay the same $30 fee . . . ." (Am. Compl. ¶ 62.) Instead, the fiduciary could implement a "proportional asset-based charge," for which each participant pays the same percentage of his or her account balance. (Id.) As such, the suggestion of a flat-fee system as one of several ways to bring the Plans into compliance with ERISA does not, in and of itself, create a conflict between the named plaintiffs and other class members, as there are several variations of this system, some of which may not create conflicts. And in any case, this speculation on the part of NYU does not defeat adequacy, as it does not present a "fundamental" conflict. Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006).

NYU further argues that removing the CREF Stock and TIAA Real Estate Accounts from the Plans—two accounts that plaintiff alleges were imprudently included in the Plans—would create class conflicts because some participants would be hurt by the funds' removal. However, defendant here focuses on the merits of the breach of fiduciary duty claim. It argues: (1) that those funds are important for diversification, as they offer some features that other funds do not; and (2) the CREF Stock and TIAA Real Estate Accounts had strong returns at different points in time, and the variance in performance was beneficial for some participants. That may well be the case, but those arguments go to the merits of the funds' inclusion in the Plans and whether or not they were prudent inclusions. If, in fact, plaintiffs are correct that the inclusion of these funds was a breach of the duty of prudence, then

10

no plan participant would have a legal interest in continuing to invest in a plan that was adjudged imprudent.

Finally, NYU claims that the named plaintiffs are inadequate representatives because they are unaware of the facts underlying the dispute. For example, NYU relies on deposition testimony to demonstrate that a number of the named plaintiffs do not know, inter alia, what their investments are or how they have performed; what revenue sharing is; and whether NYU attempted to negotiate fees. (Mem. Opp. at 17.) Instead, the named plaintiffs rely on counsel for information.

"Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000) (citing In re Drexel Burnham Lambert Group, 960 F.2d at 291). Additionally, the Supreme Court has "expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance." Baffa, 222 F.3d at 61 (citing Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 370-374 (1966)). Plaintiffs are entitled to rely on their counsel for advice. Id. As long as the class representatives "fairly and adequately protect the interests of the class," adequacy is satisfied. Id. (noting that adequacy is not met when "the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the

11

possibly competing interests of the attorneys" (quoting Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1077-78 (2d Cir. 1995)).

Defendant has not alleged that class counsel are unqualified or are subject to a conflict of interest. Nor do they claim that the named plaintiffs' interests are antagonistic to those of other class members. They rely merely on an allegation that the named plaintiffs are uninformed. This is not enough to defeat class certification. In Baffa, the Second Circuit reversed a denial of class certification when the district court concluded that the plaintiff "did not have a basic understanding of the litigation and therefore could not be an adequate class representative." 222 F.3d at 61. Instead, the Second Circuit held, if the plaintiff "understood the nature of his proposed role in the litigation and demonstrated his willingness to carry it forward," adequacy was satisfied. Id. at 62. ("The acknowledgment of advice and support from both his father and his attorneys cannot support a conclusion that [plaintiff] is unable to pursue the litigation on behalf of the class. Far from showing [plaintiff's] ignorance of the litigation or his inability to serve as class representative, it demonstrates [plaintiff's] ability to appreciate the limits of his knowledge and rely on those with the relevant expertise."). Plaintiffs here are similarly reliant on their attorneys for advice, but they have shown the necessary comprehension of their role and willingness to pursue litigation vigorously. This is all that Rule 23(a) requires.

B. Rule 23(b)(1) Requirements[2]

"Most ERISA class action cases are certified under Rule 23(b)(1)." Caufield v. Colgate-Palmolive Co., No. 16-cv-4170, 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017) (quoting Kanawi v Bechtel Corp., 254 F.R.D. 102, 111 (N.D. Cal. 2008) (Breyer, J.)). Rule 23(b)(1)(A) covers class action suits in which the defendant is "obliged by law to treat the members of the class alike . . . or where the [defendant] must treat all alike as a matter of practical necessity." Amchem, 521 U.S. at 614. Plaintiffs allege that NYU owed and breached a fiduciary duty in their management of the Plans; if this is the case, that duty was breached as to <u>all</u> plaintiffs. Allowing 20,000 individual cases could result in varying adjudications over defendant's alleged breach and how to measure the damages. Separate adjudications could risk incompatible standards for NYU in administering the Plans going forward; if two courts came to different conclusions as to how the Plans' administration, NYU would face a conflict between various court orders. See Caufield, 2017 WL 3206339 at *6.

Additionally, Rule 23(b)(1)(B) was drafted with an eye toward "situations where lawsuits conducted with individual members of the class would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests." Ortiz v.

---

[2] Because the Court has determined that the class may be certified under Rule 23(b)(1), the Court need not reach 23(b)(3) certification. "[W]hen a class action may be certified under either [Rule 23](b)(1) or (b)(3), the former should be chosen when to do so will avoid the inconsistent adjudication or compromise of class interests that might otherwise occur [under Rule 23(b)(3)]." Robertson v. Nat'l Basketball Ass'n, 556 F.2d 682, 685 (2d Cir. 1977).

13

Fibreboard Corp., 527 U.S. 815, 833 (1999) (internal quotation omitted). A classic case of a Rule 23(b)(1)(B) suit includes one with "actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.'" Id. at 834 (quoting Advisory Committee's Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C. App. at 696). Here, "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members . . . [as] the suit involves the "presence of property which called for . . . management." Id. (internal quotation and alteration omitted).

Defendant claims that Rule 23(b)(1) classes may not seek compensatory damages because the Supreme Court has limited Rules 23(b)(1) classes to those without individual monetary claims. See Larue v. DeWolff, Boberg & Associates, Inc., 552 U.S. 248, 256 (2008); Wal-Mart, 564 U.S at 362. However, defendant mischaracterizes the Supreme Court's holding in Larue. The Court there held that a § 1132(a)(2) claim may be pursued for recovery for fiduciary breaches that impair the value of plan asset's in a participant's individual account. It did not preclude class actions for 20,000 plan participants who were allegedly harmed by the same breach of fiduciary duty. Larue, 552 U.S. at 256.

Moreover, "the monetary benefits to the proposed class are merely incidental to the adjudication of the alleged errors." Caufield, 2017 WL 3206339 at *6. The Amended Complaint seeks judgment against NYU and an order preventing the

14

conduct that led to a breach of fiduciary duty, as well as a "[s]urcharge against Defendant and in favor of the Plans all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA." (Am. Compl. at 115.) See also In re Citigroup Pension Plan, 241 F.R.D. at 179-80 ("The proposed class is well-suited for certification under Rule 23(b)(1). The language of subdivision (b)(1)(A), addressing the risk of inconsistent adjudications, speaks directly to ERISA suits, because the defendant has a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike." (internal quotations omitted)).

As such, this class is properly certified under Rule 23(a), as well as Rule 23(b)(1)(A) or in the alternative, 23(b)(1)(B).

C. Standing

The named plaintiffs, collectively, invested in the challenged funds—the TIAA Real Estate Account and the CREF Stock Account. NYU argues that plaintiffs have not established standing for the individuals in the proposed class because not every member of the class invested in those funds. As such, according to NYU, plaintiffs have not alleged a personal injury for each class member as a result of the alleged breaches of the duty of prudence that remain live.

The class does not have to be limited to only those who invested in these options. As discussed, plaintiffs need not prove individualized damages in an ERISA class action case; rather, an injury to the Plans suffices. See L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc., 710 F.3d

15

57, 67 (2d Cir. 2013) (noting that if plaintiffs have "asserted their claims in a derivative capacity, to recover for injuries to the Plan caused by the Administrators' breach of their fiduciary duties," it qualifies as "injury-in-fact sufficient for constitutional standing"). Plaintiffs allege that the Plans lost millions of dollars due to NYU's alleged breach of its duty of prudence. And while not every member of the class participated in the challenged fund options, the alleged foregone opportunities from funds that were not included and the alleged reduction in choice that resulted is an alleged injury in fact. See Ross v. Bank of Am., N.A., 524 F.3d 217, 223 (2d Cir. 2008) (holding that an allegation that "reduced choice and diminished quality . . . result directly from the [defendants'] illegal collusion to constrict the options available . . . are sufficiently 'actual or imminent,' as well as 'distinct and palpable,' to constitute Article III injury in fact" (quoting Denney, 443 F.3d at 264).

D. Statute of Limitations

NYU further argues that its statute of limitations defense requires "highly individualized inquiries into whether each putative class member had 'actual knowledge' of the facts underlying their claims more than three years before the Complaint was filed." (ECF No. 138, Mem. Opp. at 6 (quoting Novella v. Westchester Cty., 661 F.3d 128, 148 (2d Cir. 2011).) If any plaintiff or putative class member had actual knowledge of the facts giving rise to the alleged breach three years before the complaint was filed, NYU argues, his or her claim is time-barred. The claim rests on the proposition that because quarterly performance summaries disclosed the fees and expenses associated with the investment

16

alternatives, some class members may have had actual knowledge of the underlying facts.

However, this claim is speculative—no evidence is put forth of even one instance of a class member having knowledge three years prior to August 9, 2013. Mere receipt of the quarterly performance summaries does not demonstrate actual knowledge; moreover, these are plan-wide communications required by ERISA, rather than individualized conversations or notifications. A common question to the class is whether the facts in those documents are sufficient to establish actual knowledge of the breach; it will not be an individualized inquiry. As such, this defense is not sufficient to defeat the motion for class certification.

\* \* \*

Accordingly, the Court certifies the following class:

All participants and beneficiaries of the NYU School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration and the New York University Retirement Plan for Members of the Faculty, Professional Research Staff and Administration from August 9, 2010, through the date of judgment, excluding the Defendant and any participant who is a fiduciary to the Plans.

IV. CONCLUSION

For the reasons set forth above, plaintiffs' motion for class certification is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 120.

SO ORDERED.

Dated: New York, New York
February 13, 2018

_____
KATHERINE B. FORREST
United States District Judge

18