# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| DR. ALAN SACERDOTE, et al., | : | Case No.: 1:16-cv-06284 |
|  | : |  |
| Plaintiffs, | : |  |
|  | : | ECF Case |
| v. | : |  |
|  | : |  |
| NEW YORK UNIVERSITY, | : |  |
|  | : |  |
| Defendant. | : |  |

## MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' EXPERT GERALD W. BUETOW

Mark Muedeking (admitted *pro hac vice*)
Ian C. Taylor (admitted *pro hac vice*)
Jennifer Squillario (admitted *pro hac vice*)
Adam J. Pié (admitted *pro hac vice*)
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4000

Brian S. Kaplan (BK4922)
Evan D. Parness (EP6680)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant*

<u>**TABLE OF CONTENTS**</u>

<u>**Page No.**</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.    Dr. Buetow is Not Qualified to Opine on NYU's Due Diligence and
    Monitoring Processes ........................................................................................... 2

    II.    Dr. Buetow's Methodology for Evaluating the CREF Stock and TIAA
    Real Estate Accounts is Unreliable ..................................................................... 7

        A.    Dr. Buetow Evaluated the CREF Stock and TIAA Real Estate
        Funds' Performances Using Inapplicable Benchmarks ............................ 7

        B.    Dr. Buetow's Damages Opinion used Admittedly False
        Assumptions and Cherry-Picked, Non-Analogous Funds ...................... 12

    III.    Dr. Buetow's Supplement Report is an Impermissible Sur-Rebuttal ................. 16

Conclusion ....................................................................................................................... 17

-i-

## TABLE OF AUTHORITIES

**Page No.**

CASES

*Casey v. Merck & Co., Inc.,*
653 F.3d 95 (2d Cir. 2011)............................................................................................6

*Daubert v. Merrell Dow Pharms.,*
509 U.S. 579 (1993).................................................................................1, 10, 12, 15

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,*
263 F. Supp. 3d 446 (S.D.N.Y. 2017)........................................................................16

*In re M/V MSC FLAMINIA,*
No. 12-CV-8892 (KBF), 2017 WL 3208598 (S.D.N.Y. July 28, 2017)...................2, 6, 12, 15

*Lidle v. Cirrus Design Corp.,*
No. 08 Civ. 1253 (BSJ) (HBP) 2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) .......................16

*Lippe v. Bairnco Corp.,*
288 B.R. 678 (S.D.N.Y. 2003)......................................................................................6

*New York v. United Parcel Serv., Inc.,*
No. 15-CV-1136 (KBF), 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) ...................... passim

*Ruggiero v. Warner–Lambert Co.,*
424 F.3d 249 (2d Cir.2005)..........................................................................................15

*Sandata Techs., Inc. v. Infocrossing, Inc.,*
No. 05 Civ. 09546 (LMM) (THK), 2007 WL 4157163 (S.D.N.Y. Nov. 16,
2007) ............................................................................................................................16

*Scentsational Techs., LLC. v. Pepsi, et al.,*
2018 WL 910587 (S.D.N.Y Feb. 14, 2018).......................................................6, 15, 16

*SEC v. Tourre,*
950 F. Supp. 2d 666 (S.D.N.Y. 2013)............................................................................6

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
*Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705 (2d Cir. 2013) ....................................9

*United States v. Tin Yat Chin,*
371 F.3d 31 (2d Cir.2004)..............................................................................................2

STATUTES & OTHER AUTHORITIES

ERISA § 404(a)(1)(B)....................................................................................................9

## TABLE OF AUTHORITIES

**Page No.**

FED. R. CIV. P. 26.................................................................................................1, 16, 17

FED. R. EVID. 702.............................................................................................10, 12, 15

## **INTRODUCTION**

Plaintiffs' purported expert Gerald Buetow is not qualified to opine on the vast majority of the subjects contained in his expert report.  Dr. Buetow admittedly has no experience managing, advising, or overseeing a 403(b) plan, and the fiduciary duties related thereto.  He is not qualified to opine on NYU's processes to review and monitor the Plans at issue in this case.  Despite claiming that his opinion was limited to the performance of the CREF Stock and TIAA Real Estate funds, Dr. Buetow proffers sweeping conclusions about NYU's management of the Faculty and Medical Plans – far outside the bounds of his expertise on "the investment side" of the retirement industry.

Even when Dr. Buetow stays in his self-prescribed lane, his opinions evaluating the CREF Stock and TIAA Real Estate fund performances (and purported damages calculations related to) are unreliable.  Dr. Buetow's opinions are grounded in assumptions that Dr. Buetow admitted at deposition are false, and depart from the undisputed record in this case.  Relying on a flawed assessment of the funds, Dr. Buetow used cherry-picked, non-analogous funds to calculate that NYU purportedly caused hundreds of millions of dollars in damages based on assumptions that Dr. Buetow admitted were false.

Dr. Buetow's Supplemental Report should be excluded as an impermissible sur-rebuttal report because the report does not (i) correct or supplement either of Dr. Buetow's previous two expert reports or (ii) rely on any previously unavailable or unknown information, as is required by FED. R. CIV. P. 26.

Applying this Court's principles in accordance with the *Daubert* standard, Plaintiffs' purported expert Dr. Buetow should be precluded from offering his proffered opinions.

1

## ARGUMENT

**I.     Dr. Buetow is Not Qualified to Opine on NYU's Due Diligence and Monitoring Processes.**

The "evaluation of a proposed expert's qualifications is a threshold inquiry that seeks to determine whether the proposed expert is, in fact, an expert in the area in which he or she intends to testify." *New York v. United Parcel Serv., Inc.*, No. 15-cv-1136 (KBF) 2016 WL 4735368, at *3 (S.D.N.Y. Sept. 10, 2016).[1]

Before the court can rely on an expert's testimony, the expert must demonstrate that he or she possesses "superior knowledge, education, experience, or skill with the subject matter of the proffered testimony."[2] *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir.2004).  If "there is a mismatch between the area of expertise and the proffered opinions, there is a possibility of cloaked unreliability." *In re M/V MSC FLAMINIA*, No. 12-CV-8892 (KBF), 2017 WL 3208598, at *4 (S.D.N.Y. July 28, 2017).  Thus, "[a]n individual with expertise in one field may not offer opinions in another:  the expertise and area of proffered opinions should be closely related." *Id.* (citing *Tin Yat Chin*, 371 F.3d at 40); *see also id.* at *2 ("experts must stay in their lane, and this Court will police inappropriate drifting.").

Here, Dr. Buetow does not "claim to be the expert" in fiduciary duties.[3]  ███████████

███████████████████████████████████████████████████████████

---

[1] "Whether a proposed expert is qualified depends on his or her educational background, training and experience in the field relevant to the opinions that he or she seeks to express." *Id.* (citing *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)).

[2] A bench trial "does not signal a 'free-for-all' vis-à-vis expert witnesses." *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *3 (citing *United Parcel Serv., Inc.*, 2016 WL 4735368, at *1). Thus, even in a bench trial, "[t]here are obvious efficiency gains in precluding testimony from an individual unqualified to take the stand, or one who is providing testimony that is plainly irrelevant or, if relevant, is based on unreliable methods." *United Parcel Serv., Inc.*, 2016 WL 4735368, at *1.

[3] Ex. 1, Buetow Dep. 25:12-26:10.

2

██████████████ [4] ███████████████████████████████████████

███████████████████████████████████████████████████████ [5]

Dr. Buetow has never served as a fiduciary for a 403(b) plan nor can he name a single 403(b)

plan that used one of his funds.[6] ████████████████████████████████████

████████████████ [7] Moreover, Dr. Buetow has not written or taught about the duty of prudence,

fiduciary process, due diligence or monitoring.[8] Dr. Buetow admitted at his deposition that none

of his course work involved fiduciary duties.[9]

Dr. Buetow further conceded that he is not offering any opinions on:

- whether NYU's recordkeeping fees were reasonable;[10]

- whether the mechanism NYU used to pay recordkeeping fees was reasonable;[11]

- ████████████████████████████████ [12]

- ██████████████████████████████████████████████ [13]

- whether the Faculty or Medical Plans were appropriately designed;

- whether the Faculty or Medical Plans offered an adequate portfolio;[14] and

- ███████████████████████████████████████ [15]

---

[4] Ex. 2, Expert Report of Gerald Buetow, ¶ 2 (████████████████████████████████████████████ ██████████████); Ex. 1, Buetow Dep. 9:5-16, 26:3-10, 84:16-17, 85:6-7, 88:5-7.
[5] Ex. 1, Buetow Dep. 85:3-86:2, 87:10-88:19.
[6] Ex. 1, Buetow Dep. 26:12-14, 38:25-39:7.
[7] Ex. 2, Expert Report of Gerald Buetow, at Ex. 1; Ex. 1, Buetow Dep. 51:5-55:18, 59:4-60:5, 61:22-62:3. Dr. Buetow admitted at his deposition that he has not published any materials related to the fiduciary process. Ex. 1, Buetow Dep. 50:9-51:4 ("I don't know about the fiduciary process, but certainly the investment process and the construction of a -- of a plan and the monitoring of the plan, that's a – that's a peripheral part of most of the research that I've done in the multiasset class space.").
[8] Ex. 2, Expert Report of Gerald Buetow, at Ex. 1.
[9] Ex. 1, Buetow Dep. 16:18-25.
[10] Ex. 1, Buetow Dep. 10:11-20.
[11] Ex. 1, Buetow Dep. 159:24-160:3.
[12] Ex. 1, Buetow Dep. 171:24-173:2.
[13] Ex. 1, Buetow Dep. 150:2-11.
[14] Ex. 1, Buetow Dep. 55:22-25.
[15] Despite admitting to having no experience advising fiduciaries on their processes and that he was not offering a "direct" opinion on NYU's IPS statement, Dr. Buetow proceeds to criticize NYU for failing to abide by the

Dr. Buetow stated explicitly that his opinions are limited to the CREF Stock and TIAA Real Estate Accounts.[16]  Despite this limited scope, Dr. Buetow's reports are filled with paragraphs, some of which are virtually identical to paragraphs from the Amended Complaint in *Sacerdote, et al. v. Retirement Plan Committee, et al.* ("*Sacerdote II*") (Case No. 1:17cv8834),[17] which Dr. Buetow admitted had nothing to do with his opinions on the CREF Stock and TIAA Real Estate Accounts, including:



Despite having no experience advising fiduciaries on monitoring process, policies or procedures, and despite repeatedly stating that the scope of his opinions are limited to the CREF Stock and TIAA Real Estate funds, Dr. Buetow seeks to proffer several pages of completely unsupported opinions regarding NYU's management of the Faculty and Medical Plans, including:

- Dr. Buetow's alleged best practices concerning:



---

Retirement Committee's IPS because the Committee did not remove CREF Stock or TIAA Real Estate Account. Ex. 1, Buetow Dep. 173:12-175:9.

[16] Ex. 1, Buetow Dep. 10:21-25, 55:22-56:3.

[17] Curiously, it does not appear that Mr. Buetow read the *Sacerdote II* Amended Complaint, as it was not one of the documents listed in his report or discussed at his deposition.

[18] *Compare* Ex. 2, Expert Report of Gerald Buetow, at ¶ 56 *with* (*Sacerdote II* ECF No. 105, at ¶ 127).  Dr. Buetow admitted that his opinions were "absolutely not" based on the facts in Paragraph 56. Ex. 1, Buetow Dep. 296:4-17.

[19] *Compare* Ex. 2, Expert Report of Gerald Buetow, at ¶ 57 *with* (*Sacerdote II* ECF No. 105, at ¶ 128).  Dr. Buetow admitted that his opinions were not based on any of the points in Paragraph 57. Ex. 1, Buetow Dep. 296:18-24.

[20] Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 37-43, and Ex. 1, Buetow Dep. 173:12-175:9.

[21] Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 21-23.



In addition to being outside of his scope of expertise, several of Dr. Buetow's ███████ ███████████████████ involve claims that this Court has already considered and dismissed, including:

Even if his experience in the industry qualified Dr. Buetow to opine on fiduciary duties and process, Dr. Buetow has no explanation for how his experience supports his conclusions. When an expert relies on his experience, he must explain in detail how his experience supports

---

[22] Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 24-36.
[23] Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 37-43.
[24] Ex. 2, Expert Report of Gerald Buetow, at ¶ 55.
[25] Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 56-58.
[26] Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 60-67.
[27] Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 23, 76; (ECF No. 79, at 27-28).
[28] Ex. 2, Expert Report of Gerald Buetow, at ¶ 55; (ECF No. 79, at 22-23).
[29] Ex. 2, Expert Report of Gerald Buetow, at ¶ 26; (ECF No. 79, at 25-27).
[30] Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 68-72; (*Sacerdote II* ECF Doc. 79, at 7 n. 3).

that conclusion such that the Court can evaluate the reliability of the expert's testimony.  *See Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001) (expert basing his opinion on experience "must do more than aver conclusorily that his experience led to his opinion," and do more than "propound a particular interpretation of [a party's] conduct"), abrogated on other grounds, *Casey v. Merck & Co., Inc.*, 653 F.3d 95 (2d Cir. 2011); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003) (expert who relies solely on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.").

███████████████████████████████████████████

███████████████████████████████████████

███████ [31] *See United Parcel Serv., Inc.*, 2016 WL 4735368, at *3 ("Conclusory opinions are a form of 'ipse dixit', and often provide an insufficient basis upon which to assess reliability.") In fact, most of Dr. Buetow's opinions on appropriate fiduciary practices are devoid of any citations or explanations at all.[32] ████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████

---

[31] *See e.g.* Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 2, 22, 26, 33, 39, 84.
[32] A vast majority of the citations in Dr. Buetow's report is to the factual record of this case.  Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 44-67, 73-76.  These portions of Dr. Buetow's testimony, however, are not opinions but rather factual narratives that are inappropriate for expert testimony.  *See Scentsational Techs., LLC. v. Pepsi, Inc.*, No. 13-cv-8645 (KBF), 2018 WL 910587, at *8 (S.D.N.Y. Feb. 14, 2018) (excluding an expert's testimony which "recounts events that occurred—using deposition testimony and documents for support" and which "purports to assign motives and draw conclusions wholly outside [the expert's] expertise"); *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *2; *SEC v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) ("It is also inappropriate for experts to become a vehicle for factual narrative.").

Accordingly, this Court should preclude Dr. Buetow's proffered opinions concerning due diligence and the monitoring process of a fiduciary because he is not qualified to offer those opinions.

## II. Dr. Buetow's Methodology for Evaluating the CREF Stock and TIAA Real Estate Accounts is Unreliable.

Even in the limited areas where he opines within his self-prescribed "lane," Dr. Buetow's opinions are unreliable. [33] ████████████████████████████████

████████████████████████████████████████████████████

████████ [34] First, Dr. Buetow evaluated performance using inapplicable benchmarks. *Second*, when calculating the alleged damages the Plans purportedly suffered, Dr. Buetow used an admittedly false assumption and cherry-picked non-analogous funds to exacerbate the alleged damages the CREF Stock and TIAA Real Estate funds allegedly caused the Plans.

### A. Dr. Buetow Evaluated the CREF Stock and TIAA Real Estate Funds' Performances Using Inapplicable Benchmarks.

████████████████████████████████████████████████████

████████████████████████████████████████ [35] At his deposition Dr. Buetow admitted that this statement is false. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

---

[33] When asked to clarify the scope of his opinion, Dr. Buetow explained that his opinions are limited to the CREF Stock and TIAA Real Estate funds. Ex. 1, Buetow Dep. 10:21-25, 55:22-56:3.

[34] ████████████████████████████████ . *See* Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 77-107. ████████████████████████████████████ . Ex. 1, Buetow Dep. 96:5-99:21.

[35] Ex. 2, Expert Report of Gerald Buetow, at ¶ 83.



[36] Dr. Buetow readily admits that he did *not* compare the performance of the CREF Stock Account to its benchmark as of December 31, 2009.

[41] Also as a matter of undisputed fact, the CREF Stock Account closely tracked its benchmark for the trailing 5 years and 10 years as of December 31, 2009. *Id.* This is why Dr. Buetow now asks this court to ignore the facts and entertain his complete fiction that the CREF Stock Account underperformed its benchmark as of December 31, 2009 by applying a benchmark that did not even exist until two years later.

---

[36] *See* Ex. 3, Excerpt of College Retirement Equities Fund 2009 Annual Report, December 31, 2009 at 3.
[37] Ex. 2, Expert Report of Gerald Buetow, at ¶ 83; Ex. 1, Buetow Dep. 106:24-107:14.
[38] Ex. 4, Expert Report of Daniel Fischel, at ¶ 13 (citing CREF Semiannual Report, June 30, 2011, at 7).
[39] Ex. 1, Buetow Dep. 106:24-107:14; *see also* ECF No. 134-40, April 1, 2011 Meeting Minutes of the Committee (NYU0004048); ECF No. 134-48, February 22, 2013 Meeting Minutes of the Committee (NYU0002558); ECF No. 134-134, June 30, 2011 CREF Semiannual Report, at 3, 7 (███████████████).
[40] Ex. 1, Buetow Dep. 193:4-194:21.
[41] *See* Ex. 3, Excerpt of CREF 2009 Annual Report, at 7; *see also* Ex. 5, Excerpt of New York University NYU Langone Medical Center Fiduciary Due Diligence Report, March 3, 2010 (CLC0007706) (████████████).

ERISA, however, does not hold fiduciaries to fictional, hindsight standards. Quite the opposite. An ERISA fiduciary is judged "under the *circumstances then prevailing*" and asks whether the fiduciary acted consistent with a "prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B) (emphasis added); *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (citing *Knight v. C.I.R.*, 552 U.S. 181, 193 (2008)). Not only is Dr. Buetow's opinion factually incorrect, it lacks legal footing and is wholly inappropriate under ERISA. *See id.*



---

[42] Ex. 1, Buetow Dep. 244:10-247:15.
[43] Ex. 1, Buetow Dep. 244:17-245:16.
[44] *Compare* Ex. 6, Rebuttal Report of Daniel Fischel, at ¶ 7 n. 22 and Ex. 9; ECF No.134-40, April 1, 2011 Meeting Minutes of the Committee (NYU0004048); ECF No.134-44, February 21, 2012 Meeting Minutes of the Committee (NYU0094960) (noting that "                                                                                                ); *with* Ex. 1, Buetow Dep. 247:20-22.



[45]

Dr. Buetow justified his decision to use the NCREIF-ODCE by claiming he wanted to compare "apples to apples."[46]

[48]

Dr. Buetow's reliance purely on the NCREIF-ODCE is further plagued by Dr. Buetow's lack of awareness of how the fund operates and his unsupported conjecture. *See United Parcel Serv., Inc.*, 2016 WL 4735368, at *4 ("[A]n opinion that is speculative or conjectural does not satisfy Rule 702 and should be excluded") (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("[I]t is critical that an expert's analysis be reliable at every step.").

[49] Further, Dr. Buetow admitted that he did not know how the TIAA Real Estate fund

---

[45] *See* Ex. 6, Rebuttal Report of Daniel Fischel, at Ex. 9; (ECF No. 134-40, April 1, 2011 Meeting Minutes of the Committee (NYU0004048) (███████████████████████); ECF No. 134-127, TIAA Quarterly Analysis of the TIAA Real Estate Account, attached to March 29, 2011 e-mail from J. Rezler (CLC0026034 at 26016) (███████████████████████).
[46] Ex. 1, Buetow Dep. 244:21-245:16.
[47] Ex. 6, Rebuttal Report of Daniel Fischel, at ¶ 7 n. 22.
[48] Ex. 4, Expert Report of Daniel Fischel, at ¶ 14.
[49] Ex. 1, Buetow Dep. 146:25-147:23.

actually obtained valuations for the properties the fund held.[50] Dr. Buetow's failure to understand how the TIAA Real Estate fund operates coupled with his failure to explain why reliance on the NCREIF-ODCE is appropriate in light of the differences between the NCREIF-ODCE's and TIAA Real Estate fund's compositions cripples his performance assessment.

Instead of using the actual benchmark for the TIAA Real Estate Account, Dr. Buetow relies on two "alternative" benchmarks, neither of which were the actual benchmark for the Account as of December 31, 2009.



[51]

[52]

[53] Again, Dr. Buetow once asks this Court

_____

[50] Ex. 1, Buetow Dep. 231:23-232:6.
[51] Ex. 2, Expert Report of Gerald Buetow, at ¶ 99.
[52] Ex. 2, Expert Report of Gerald Buetow, at ¶ 101 (citing to Ex. 7, April 2, 2010 Letter from Lou Ann Fillingham, CPA to the SURS Investment Committee, at 30). (Ex. 7, April 2, 2010 Letter from Lou Ann Fillingham, CPA to the SURS Investment Committee, at 20).
[53] *Compare* Ex. 2, Expert Report of Gerald Buetow, at ¶ 101 (citing to Ex. 7, April 2, 2010 Letter from Lou Ann Fillingham, CPA to the SURS Investment Committee, at 30), *with* Ex. 6, Rebuttal Report of Daniel Fischel, at ¶ 7 n. 22 and Exs. 8-9.

Dr. Buetow's opinions on the alleged imprudence of the CREF Stock Account and the TIAA Real Estate Account as of December 31, 2009, are grounded in false assumptions that depart from the undisputed facts. Therefore, Dr. Buetow's prudence opinions regarding the CREF Stock and TIAA Real Estate funds are unreliable. *See United Parcel Serv., Inc.*, 2016 WL 4735368, at *4 (S.D.N.Y. Sept. 10, 2016) ("[A]n opinion that is speculative or conjectural does not satisfy [Federal Rule of Evidence] 702 and should be excluded") (citing *Daubert*, 509 U.S. at 590).

### B.   Dr. Buetow's Damages Opinion Used Admittedly False Assumptions and Cherry-Picked, Non-Analogous Funds.

Even if his prudence opinions concerning the CREF Stock Account or TIAA Real Estate Account were reliable (which they are not), Dr. Buetow's damage calculations are unreliable because he attempts to subvert the plan participant's choices with his own hindsight selected funds. *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *5 ("Even qualified experts must, however, base their opinions on reliable data and a valid methodology. In the absence of either, the expert's opinions are unreliable and should not be allowed.") (internal citation omitted); *United Parcel Serv., Inc.*, 2016 WL 4735368, at *4.



Dr. Buetow's reliance on Index funds is unreliable because the composition of the CREF Stock and TIAA Real Estate Accounts are not comparable to index funds. For example, the

---

[54] Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 90, 91, 106.

VIIIX "employs an indexing investment approach designed to track the performance of the Standard & Poor's 500 Index, a widely recognized benchmark of U.S. stock market performance that is dominated by the stocks of large U.S. companies."[55]



[58] The VGSNX is not comparable to the TIAA Real Estate Account.

But even if these funds could actually replicate the CREF Stock Account and TIAA Real Estate Account, the appropriate damages could only be calculated based on the contributions made to the Plan *after* the funds became allegedly imprudent.[59]

---

[55] Ex. 8, Excerpt of Vanguard Institutional Index Funds, Summary Prospectus, April 27, 2017, at 2.
[56] Ex. 9, Rebuttal Report of Adel Turki, at ¶ 22.
[57] Ex. 9, Rebuttal Report of Adel Turki, at ¶ 26.
[58] Ex. 9, Rebuttal Report of Adel Turki, at ¶ 25.
[59]

. Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 17, 20, 83, 84, 109-110.



[63] When asked whether NYU, as the plan sponsor, had the authority to retroactively change what the plan participants were invested in, Dr. Buetow responded that NYU "can't go back and change what -- what was."[64] NYU offered Dr. Buetow a chance to clarify his position, and asked whether "NYU can force the individual annuity accounts to take the money out of the CREF stock account and put it in something else?"[65] Dr. Buetow answered "No."[66] Dr. Buetow went further and stated that if NYU were to "eliminate the fund from the plan, then they're effectively forcing the hand of the investor, but -- but they can't force the investor to do anything."[67]

Dr. Buetow's false assumption on NYU's authority to manage individual annuity contracts caused Dr. Buetow to miscalculate damages by hundreds of millions of dollars. ████

████████████████████████████

---

[60] Ex. 2, Expert Report of Gerald Buetow, at ¶ 108.
[61] Ex. 2, Expert Report of Gerald Buetow, at ¶ 108.
[62] Ex. 2, Expert Report of Gerald Buetow, at ¶ 95.
[63] Ex. 1, Buetow Dep. 222:5-225:19.
[64] Ex. 1, Buetow Dep. 223:3-13.
[65] Ex. 1, Buetow Dep. 223:14-224:12.
[66] Ex. 1, Buetow Dep. 224:13.
[67] Ex. 1, Buetow Dep. 224:14-22.

██████████████████████████████████████████████████████████

████████████████████████[68]  Even If NYU had decided to remove both accounts on

December 31, 2009, as Dr. Buetow suggests, that decision would have no effect on the over $700

million in funds already invested because NYU "can't force the investor to do anything."[69] ██

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████[70]

Dr. Buetow cherry-picked non-analogous funds to exacerbate the alleged damages the

CREF Stock and TIAA Real Estate funds allegedly caused.  However, an expert's purported

"damages calculations 'may not be merely speculative, possible or imaginary." *Pepsi, Inc.*, 2018

WL 910587, at *16 (excluding opinions and testimony of purported expert).

Dr. Buetow provides no basis for why those funds, which were already available to Plan

participants, were appropriate replacements for the CREF Stock or TIAA Real Estate funds.   Dr.

Buetow further exacerbated damages by applying these hindsight chosen funds to the full fund

balances in 2009, despite the fact that NYU had no authority to move previously invested funds.

Dr. Buetow's analysis is flawed at every stage of the analysis, and is therefore, unreliable.  *See*

*Amorgianos*, 303 F.3d at 267 ("[I]t is critical that an expert's analysis be reliable at every step.");

*Ruggiero v. Warner–Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005) ("'[W]hen an expert opinion

is based on data, a methodology, or studies that are simply inadequate to support the conclusions

reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.'");

*In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *5; *United Parcel Serv., Inc.*, 2016 WL

4735368, at *4.

---

[68] Ex. 10, Damages Calculations Spreadsheet of Gerald Buetow.
[69] Ex. 1, Buetow Dep. 224:14-22.
[70] Ex. 2, Expert Report of Gerald Buetow, at ¶¶ 110-111.

**III.    Dr. Buetow's Supplement Report is an Impermissible Sur-Rebuttal.**

Finally, the Court should exclude Dr. Buetow's Supplemental Report as an impermissible sur-rebuttal report.  Dr. Buetow's Supplemental Report does not (i) correct or supplement either of Dr. Buetow's previous two expert reports or (ii) rely on any previously unavailable or unknown information, as is required by FED. R. CIV. P. 26.  Rather, it is merely Plaintiffs' impermissible attempt to further bolster Dr. Buetow's earlier expert submissions.

Courts in this jurisdiction routinely exclude expert submissions analogous to Dr. Buetow's Supplemental Report.  *See Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253 (BSJ) (HBP) 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) ("Rule 26(e) is not . . . a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report"); *Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05 Civ. 09546 (LMM) (THK), 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007) (excluding expert submission because experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions.").  In other words, Fed. R. Civ. P. 26(e) "does not grant a license to supplement a previously filed expert report because a party wants to." *Id.* at *7.

Furthermore, "[i]f an expert's report does not rely on any information that was previously unknown or unavailable . . . it is not an appropriate supplemental report under Rule 26." *Pepsi, Inc.*, 2018 WL 910587, at *4 (internal citations and quotations omitted); *see also Mfon v. Cty. of Dutchess*, No. 14-CV-6922 (KMK), 2017 WL 946303, at *5 (S.D.N.Y. Mar. 9, 2017), *aff'd*, No. 17-790-cv, 2018 WL 542586 (2d Cir. Jan. 25, 2018) (excluding supplemental expert affidavit when the information contained therein "goes well beyond the information contained in the [expert report]"); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d

16

446, 452 (S.D.N.Y. 2017) (striking "Revised Report" because, *inter alia*, it was "not 'a supplement' to an expert report under Rule 26(e) of the Federal Rules'").

Dr. Buetow's Supplemental Report suffers from precisely the same infirmities as the excluded expert submissions described above. ████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████[71] ██████████████████████████████████ ████████████████████████████████████████████████████ ██████████████[72] Rather, as stated by Dr. Buetow himself, he submitted his Supplemental Report as an "opportunity" to respond to Defendants' rebuttal expert report authored by Dr. Lassaad "Adel" Turki.[73] But Dr. Buetow's Supplemental Report's attempted refutation of Dr. Turki's rebuttal report is not a required supplementation as contemplated by Fed. R. Civ. P. 26(e). Rather, it is forbidden attempt to "bolster" Dr. Buetow's previously given opinions about damages in the instant action. Dr. Buetow's Supplemental Report should, therefore, be stricken.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court exclude Gerald Buetow's testimony in its entirety.

Respectfully submitted,

/s/     Ian C. Taylor
Mark Muedeking (admitted *pro hac vice*)
Ian C. Taylor (admitted *pro hac vice*)
Jennifer Squillario (admitted *pro hac vice*)
Adam J. Pié (admitted *pro hac vice*)
DLA PIPER LLP (US)

---

[71] Ex. 11, Supplemental Buetow Report at ¶¶ 2, 3, 5, 7.
[72] Ex. 11, Supplemental Buetow Report at ¶ 8.
[73] ████████████████████████████████████████████████████ Ex. 1, Buetow Dep. at 290.

500 8th Street, NW
Washington, DC 20004
(202) 799-4000

Brian Kaplan (BK4922)
Evan D. Parness (EP6680)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant*