# EXHIBIT 91

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. ALAN SACERDOTE, et al.<br><br>Plaintiffs<br><br>vs.<br><br>NEW YORK UNIVERSITY,<br><br>Defendant. | Case No.: 1:16-cv-06284<br><br>ECF Case<br><br>**DECLARATION OF JAN REZLER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

I, Jan Rezler, declare as follows:

1. I am Vice President, Client Consulting, at Cammack Retirement Group, Inc. ("Cammack"). I have personal knowledge of the facts set forth herein and, if called as a witness to testify to their truth, could and would do so competently.

2. Cammack provides retirement benefit plan consulting and investment advisory services across the country to more than 130 major nonprofit organizations, the vast majority of which are in higher education and health care, including to New York University ("NYU"), which acts through the NYU Retirement Committee. Most of Cammack's work is in support of its clients' defined contribution retirement plans, and Cammack specializes in section 403(b) plans like those at issue in this lawsuit. Cammack's defined contribution plan services include helping plan fiduciaries evaluate, select, and manage their plans' recordkeepers and helping them select and monitor plan investments. Cammack has offices in New York City, Wellesley, Massachusetts, and Lexington, Kentucky.

3. I am responsible for overseeing Cammack's seven client consulting teams in New York City. Separately, I have primary responsibility for more than 12 clients, including the NYU Retirement Committee. I have focused primarily on

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

1

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

403(b) plans since joining Cammack in 2005, including helping plan fiduciaries evaluate, select, and manage their plans' recordkeepers and working with our investment services team to help clients select and monitor plan investments. I have been in the ERISA-regulated retirement plan services industry for over 20 years and hold the Qualified Plan Financial Consultant designation from the American Society of Pension Professionals and Actuaries and Series 6, 63, and 65 securities and investment licenses from the Financial Industry Regulatory Authority.

4. NYU became a Cammack client in 2009. I have either been on or led Cammack's consulting team for the NYU Retirement Committee since that time. Cammack's services for the NYU Retirement Committee relate to nine 403(b) plans, four of which cover NYU employees at the Washington Square campus (the "NYU Washington Square Group") and five of which cover workers at the NYU Langone Medical Center (the "NYU Langone Group"). Two of those nine 403(b) plans are at issue in this lawsuit. The first is the New York University Retirement Plan for Members of the Faculty, Professional Research Staff and Administration ("NYU Retirement Plan"), which covers Washington Square campus employees and holds approximately 50% of the $3.9 billion in assets currently within the NYU Washington Square Group. The second is the NYU School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration ("NYU School of Medicine Plan"), which covers Langone Medical Center workers at the NYU School of Medicine and holds approximately 41% of the assets of the $3.7 billion in assets currently within the NYU Langone Group. The services provided by Cammack to the NYU Retirement Committee from 2009 to today have included helping the Committee evaluate, select, and manage the plans' recordkeepers and advising them in the selection and monitoring of plan investments.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

2

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

5.  During the period from 2011 through 2016, Cammack provided retirement plan consulting and investment advisory services to a growing number of higher education and health care defined contribution retirement programs (including NYU's Washington Square Group and Langone Group), which by 2016 numbered 13 programs that included plan assets held on TIAA's recordkeeping platform ranging from approximately $900 million to more than $7 billion, with an average of $2.3 billion (the "Comparison Group").  The 13 defined contribution programs that make up the Comparison Group consist of 37 separate 403(b) and other similar defined contribution plans providing annuity investments.

6.  TIAA charges each 403(b) plan a fee for the recordkeeping services it provides, and receives all or a portion of that fee through a process known as revenue sharing, which is common across the defined contribution retirement plan world, including with 403(b) plans.  Revenue sharing works as follows. Each 403(b) plan offers participants a variety of investments, typically in the form of annuity funds and mutual funds. Those funds typically charge investors a fee to cover costs, expressed as a percentage of a fund's assets. This is known as the fund's expense ratio, which is measured in basis points ("bps").  One basis point is 1/100th of 1%, so that if a fund's fee is .75%, its expense ratio is 75 bps. With revenue sharing, the investment fund agrees with the recordkeeper to transfer to the recordkeeper a portion of the fee received by the fund in order to contribute to the cost of the recordkeeping services. In TIAA's agreements with 403(b) plans, a "required revenue rate" is specified, in the form of a minimum number of basis points that TIAA requires in order to pay for its recordkeeping services.  In TIAA's agreements covering the NYU Retirement Plan and the NYU School of Medicine Plan, revenue sharing amounts received by TIAA in excess of the required revenue rate are returned to participants in those plans.  If

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

revenue sharing amounts fall below the required revenue rate, the plan sponsor is obligated to pay for the difference.

7. TIAA's required revenue rates across the Comparison Group have changed over the period from 2011 to 2016, ranging in 2011 from a high of 18 bps to a low of 9 bps, and in 2016 from a high of ▓▓▓ to a low of ▓▓▓. In 2011, there were five programs in the Comparison Group, three of which employed a multiple-recordkeeper arrangement and two that employed a single-recordkeeper arrangement. In 2016, seven of the 13 programs employed a single-recordkeeper arrangement, and six employed a multiple-recordkeeper arrangement. While the number of recordkeepers used by a program is one factor affecting the pricing of recordkeeping services, other factors also typically affect pricing, including: (a) the level of average account balances across the plan or program's participant base; (b) the breadth of services being provided by the recordkeeper to the program; (c) the actual usage by the plan sponsor and participants of the recordkeeper's services; and (d) the level of competition in the recordkeeping marketplace.

8. Within the Comparison Group in 2011, the NYU Washington Square Group had plan assets in the highest quartile and was in the second-lowest quartile for fees paid to TIAA. In 2016, the NYU Washington Square Group ranked in the ▓▓▓-highest quartile of plan assets, while its fees paid to TIAA ranked in the ▓▓▓-lowest quartile. In 2016, three of the 13 programs in the Comparison Group were within the same plan asset quartile as the NYU Washington Square Group, and two of those three programs employed a multiple-recordkeeper arrangement.

9. Within the Comparison Group in 2011, the NYU Langone Group ranked in the second-highest quartile of plan assets, and in the second-highest quartile of fees paid to TIAA. In 2016, the NYU Langone Group ranked in the ▓▓▓-highest quartile of plan assets, and the ▓▓▓-lowest quartile of fees paid to TIAA.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

In 2012, the NYU Langone Group moved from a multiple-recordkeeper arrangement to a single-recordkeeper arrangement. Prior to making that move, its use of a multiple-recordkeeper arrangement was not unusual.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of January 2018.

New York, NY

_____
Jan Rezler

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER