# SCHLICHTER BOGARD & DENTON, LLP

**ATTORNEYS AT LAW**

JEROME J. SCHLICHTER
jschlichter@uselaws.com

100 SOUTH FOURTH STREET, SUITE 1200
ST. LOUIS, MISSOURI 63102
(314) 621-6115
FAX (314) 621-5934
www.uselaws.com

**VIA ECF**

April 15, 2018

Hon. Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007

      Re:    *Sacerdote, et al. v. New York University*, No. 16-cv-06284-KBF

Dear Judge Forrest:

Plaintiffs respectfully request that the Court deny Defendant's April 13, 2018 objections (Doc. 291) seeking to strike portions of the trial declarations supplied by Plaintiffs' experts, Michael Geist and Gerald Buetow, and fact-witness Marie Monaco.

Defendant's objections are largely thinly disguised motions for reconsideration, which use Plaintiffs' trial declarations as a platform to restate the arguments made and lost in Defendant's Motions to Exclude Plaintiffs' Experts (Docs. 205 and 227) and Motions in Limine (Doc. 237). The Court ruled, these issues are settled, and Defendant provides no reason for the Court to reconsider. Further, contrary to Defendant's claims, Plaintiffs' experts do not offer improper "new opinions." All matters addressed either were previously set forth in their expert reports and depositions or are appropriate responses to arguments made in Defendant's experts' rebuttal reports or deposition testimony.[1]

## I.    Michael Geist Trial Declaration[2]

Defendant highlights a number of passages, claiming them to be "new" opinions. That is inaccurate. For example:

- Comparative Analysis (Geist Decl. at p.12): This merely is a summary of the "basis, facts, and data" compelled by Defendant, and provided by Mr. Geist at his March deposition. Doc. 176 at 1; Geist Mar. Dep. at 413:2–21; Ex. 1 to Geist Mar. Dep. The Court rejected Defendant's prior attempt to exclude this information. Doc. 232 at 7l; Doc. 270.

---

[1] Defendant's reference to *Hogan v. Novartis Pharmaceuticals Corp.*, 494 F. App'x 132, 134 (2d Cir. Aug. 29, 2012), involved a party's last-minute attempt to put forth live testimony from an expert who was scheduled to testify via deposition designation, and therefore is inapposite.

[2] The document numbers for the Geist materials referenced herein are as follows: Geist Corrected Report ("Geist Report"), Doc. 253-7; Geist Rebuttal Report, Doc. 253-38; Geist February Deposition, Doc. 233-2; Geist March Deposition, 233-4; Exhibit 1 to Geist March Deposition, Doc. 233-5.

The Honorable Katherine B. Forrest
April 15, 2018
Page 2

- Conversion of Individual Annuities (Geist Decl. ¶¶99–103[3]): Addressed in Mr. Geist's Rebuttal Report, ¶¶51–53, and previously ruled on by the Court. Defendant attempted to preclude Mr. Geist from testifying regarding Defendant's ability to convert individual, annuities which the Court rejected. Doc. 228 at 1, 13-15 (moving the exclude Geist's "pontificating on the legal interpretation and enforceability of plan documents and annuity contracts"); Doc. 270 (denying said motion).
- 2016 RFP (Geist Decl. ¶¶104[3]–106): Addressed in Mr. Geist's Rebuttal Report, ¶61.
- Alternative Calculation (Geist Decl. ¶227[3]): This calculation was made in response to the report issued by Defendant's expert, Dr. Lassaad Adel Turki, discussed in Mr. Geist's February Deposition, 400:7–401:10, and was addressed and ruled on in the briefing on Defendant's Motion to Exclude Mr. Geist, Doc. 264 at 13.
- Increase in TIAA's Expense Ratio and Revenue Sharing Rates (Geist Decl. ¶133[3]): Mr. Geist discussed the 140% increase caused by TIAA's expense ratio and revenue sharing rates in his Rebuttal Report, ¶61. The Declaration renders the exact same opinion, using the exact same fee disclosures. Listing a different fund as an exemplar does not constitute a new opinion.
- Expert Methodology (Geist Decl. pp.77–114): There is nothing new about Mr. Geist's methodology. These are the same calculations summarized in Mr. Geist's Report, but laid out in more detail. (*Compare* Geist Rep. p.36, *with*, Geist Decl. p.114.) All data and calculations underlying Mr. Geist's findings were produced to Defendant. Mr. Geist has since sat for two depositions. Defendant spent much of that time discussing T. Rowe Price's clients instead of the data and calculations underlying the expert opinion. This is no fault of Mr. Geist.

Defendant makes several objections that claim Mr. Geist's opinions violate the Court's April 5, 2018 Order, Doc. 270, which limits Marcia Wagner's testimony regarding the "ultimate legal conclusion regarding prudence." That order was explicitly directed to Marcia Wagner. Moreover, none of Mr. Geist's statements draw such legal conclusions.

- Geist Decl. ¶¶42–46, 57, 152–54: Describes the requirements for meeting fiduciary duties—as Mr. Geist does and has done for decades in the recordkeeping space—and describes the factual circumstances in this case that bear on those requirements.
- Geist Decl. ¶¶91–94: Describes options available to fiduciaries, and whether or not they availed themselves of those options.

Defendant makes a number of other objections, which Plaintiff will address in summary form:
- Speculation / lack of foundation (*passim*): Defendant previously argued this issue at length in its Motion to Exclude Mr. Geist, claiming his opinions were *ipse dixit* and lacked factual support. Doc. 232 at 2–6. Mr. Geist subsequently provided information, as order by the Court. The Court then denied Defendant's Motion. Doc. 270.
- Misstates Evidence (*passim*): Mr. Geist's Declaration does not misstate evidence. If Defendant believes there are inaccuracies, it may raise such issues on cross-examination.

---

[3] Defendant's letter contains several minor errors regarding the paragraph numbers in Mr. Geist's Declaration. Plaintiffs will cite to the correct paragraph number, as highlighted in Defendant's attachment, and cross-reference this footnote each time such an alteration is made.

The Honorable Katherine B. Forrest
April 15, 2018
Page 3

- Statute of Limitations (Geist Decl. ¶96): The limitations period establishes the period of recovery, not relevance. Moreover, fiduciaries have a "continuing duty to monitor investments and remove imprudent ones." *Tibble v. Edison, Int'l*, 135 S. Ct. 1823, 1829 (2015). Information regarding prior imprudent decisions is relevant to determine whether Defendant satisfied that continuing duty.
- Hearsay (Geist Decl. ¶122): The issue of Ms. Hollnsteiner's deposition testimony is currently pending. *See* Doc. 289. Moreover, it is hornbook law that experts can rely on hearsay in forming their opinions. *United States v. Delligatti*, No. 15-491, 2018 U.S. Dist. LEXIS 29623, *15 (S.D.N.Y. Feb. 23, 2018) (Forrest, J.).
- Improper Opinion (Geist Decl. ¶144): This opinion was set forth, essentially word-for-word, in Mr. Geist's Report, ¶121, which the Court already found to be admissible. Doc. 270.
- Subsequent Remedial Measures (Geist Decl. ¶166): This shows the feasibility of making fee reductions and goes to damages.

## II.     Gerald Buetow Trial Declaration[4]

Defendant's objections to Dr. Buetow's Declaration are similar to those set forth with regard to Mr. Geist's Declaration, and fail for many of the same reasons.

Defendant again attempts to improperly expand the scope of the Court's ruling on Ms. Wagner's opinion testimony, making repeated "improper legal opinion" objections. Dr. Buetow's original expert report provided his opinion on, among other things, the actions a prudent fiduciary should have taken with respect to the Plans. *See, e.g.*, Buetow Rep. at ¶¶14–16, 55–56, 59, 67. Defendant challenged Dr. Buetow's ability to provide these opinions, claiming he lacked expertise. Doc. 206, 2–7. The Court rejected this argument and qualified Dr. Buetow as an expert without limitations. Defendant provides no basis for reconsideration of this order.

Like Mr. Geist, Dr. Buetow's Declaration does not contain "new" opinions. For example:
- Proprietary Funds (Buetow Decl. p.14): While Dr. Buetow did not previously use the phrase "open architecture," Dr. Buetow unquestionably addressed the subject matter in his reports, in which he discussed the failure to streamline to "best in class funds" as per Cammack's advice, Buetow Rep. ¶¶62, 74–75, and the duty of prudence in relation to Defendant's failure to include any non-proprietary funds, Buetow Rebuttal Rep. ¶2. This is exactly what "closed architecture" is, and is the opposite of open architecture.
- Large Number of Investment Choices (Buetow Decl. pp.18–19): Dr. Buetow addressed the difficulty of prudently monitoring a plan with too many options in his Rebuttal Report, ¶29.
- CREF Stock and TIAA Real Estate Accounts (Buetow Decl. pp.20–21, 33–36): Dr. Buetow's opinions on the ways in which NYU reviewed (or failed to review) these funds are discussed in his Report, ¶¶57, 82–84, 102–105, and Rebuttal Report, ¶¶21–26.
- Differing and Shifting Benchmarks (Buetow Decl. pp. 33–34, 48–53): Addressed throughout Buetow's Report, ¶¶80, 83, 99–101, and Deposition, 78–79, 96–102, 187.

---

[4] The exhibit numbers for the Buetow materials referenced herein are as follows: Buetow Report, Doc. 253-1; Buetow Rebuttal Report, Doc. 253-59; Buetow Deposition, Doc. 207-1.

The Honorable Katherine B. Forrest
April 15, 2018
Page 4

- Monitoring of Fees (Buetow Decl. pp. 17–18): Discussed throughout Buetow's Report, ¶¶22, 56, and is listed in his Executive Summary, *id.* at ¶14.
- Consolidation (Buetow Decl. pp.30–32): Addressed in Buetow's Report, ¶¶54, 62.
- Operation of the TIAA Real Estate Fund (Buetow Decl. pp.39–41, 48): Addressed by Buetow's Report, ¶¶57, 95–107, and Rebuttal Report, ¶¶6, 20.
- Characterization of CREF Stock Account in Participant Disclosures (Buetow Decl. p.27): Addressed by Buetow's Report, ¶¶81, 88–89, and Rebuttal Report, ¶¶33–34.[5]

Defendant makes a number of other objections, which Plaintiff will address in summary form:
- Relevance of Cross-Marketing (Buetow Decl. p.16, 54–55): This has been ruled on by the court, and goes to Defendant's failure to take into account all benefits to TIAA, as required.
- Relevance of Use and Disclosure of Improper Benchmarks (Buetow Decl. pp. 16–17): Offered to show imprudence, not to support a non-existent failure to disclose claim.
- Statute of Limitations (Buetow Decl. p.22, 33): See discussion *supra*.
- Evidence of Remedial Measures (Buetow Decl. p.26, 30): See discussion *supra*.

### III. Marie Monaco Trial Declaration

Defendant's objections to Paragraph 4–6 of Ms. Monaco's Trial Declaration are unfounded.
- Relevance (Monaco Decl. ¶¶4–6): The statements provide relevant evidence of the financial value TIAA received from Plan participants through cross-selling and the provision of "educational services," and rebuts Defendant's claim that services provided were strictly educational. *See* Doc. 271, at 2.
- Hearsay (Monaco Decl. ¶¶4, 6): The statements of Ms. Moran are not offered for the truth of the matter asserted, but rather to demonstrate that the statements were made.
- Fee Layers and Cross-Selling (Monaco Decl. ¶¶4, 6): The statements are not offered as evidence of imprudence, but rather for the financial value of cross-selling and educational services. Thus, this is allowed under the Court's Order. *See* Doc. 271, at 2–3.
- Speculation (Monaco Decl. ¶5): Ms. Monaco has personal knowledge of the fees paid and basis-points charged on her investments.

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant's letter motion.

Sincerely,

/s/ Jerome J. Schlichter

---

[5] Defendant's letter references purportedly "new" opinion testimony on marketing value of participant data, but no corresponding material is highlighted in Defendant's exhibit. To the extent Defendant claims this is a new opinion, they are incorrect. Dr. Buetow discussed these issues in his Report, ¶¶68–72.