# SCHLICHTER BOGARD & DENTON, LLP

ATTORNEYS AT LAW

JOEL D. ROHLF
jrohlf@uselaws.com

100 SOUTH FOURTH STREET, SUITE 1200
ST. LOUIS, MISSOURI 63102
(314) 621-6115
FAX (314) 621-5934
www.uselaws.com

**VIA ECF**

April 19, 2018

Hon. Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007

   Re: *Sacerdote, et al. v. New York University*, No. 16-cv-06284-KBF (S.D.N.Y.)

Dear Judge Forrest:

I write in response to your request yesterday for more information on discovery regarding Teachers Insurance and Annuity Association's ("TIAA") top 200 clients.

On August 11, 2017, Plaintiffs issued a subpoena *duces tecum* to TIAA requesting documents relevant to Plaintiffs' claims. Plaintiffs' requests included:

1) Request 14: "All documents relating to the performance of the CREF Stock Account, *including documents relating to its suitability as an investment option in 403(b) retirement plans*" (emphasis added).
2) Request 15: "All documents relating to the performance of the TIAA Real Estate Account, *including documents relating to its suitability as an investment option in 403(b) retirement plans*" (emphasis added).
3) Request 16: "All documents relating to the ability of other firms to provide recordkeeping services for 403(b) retirement plan investment options offered by TIAA-CREF."
4) Request 17: "All documents relating to the ability of 403(b) retirement plan sponsors and/or fiduciaries to remove TIAA-CREF investment options, such as the CREF Stock Account, TIAA Real Estate Account, and the TIAA Traditional Annuity, from their retirement plan lineups."

Ex. 1 (Subpoena). The data Mr. Chittenden claims he relies on is responsive to all these requests. However, TIAA refused to produce any "internal" documents that were not sent to Defendant or Cammack LaRhette Consulting ("CLC"). Specifically, it objected to the subpoena

> to the extent that it seeks *documents* and communications *that are internal to TIAA* and were not shared with NYU or CLC on the grounds that such requests are overbroad and unduly burdensome, seek irrelevant information, and are not

1

proportional to the needs of the case and TIAA's status as a non-party. Such documents and communications are not relevant to any party's claim or defense, as internal TIAA documents and communications not shared with NYU and/or CLC could not have informed NYU's fiduciary process. *See Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 201 1 WL 781 198, at *3 (S.D.N.Y. Mar. 4, 201 1) (holding that the magistrate judge's order requiring production of non-party's internal communications was clearly erroneous where "the burden of collecting, searching reviewing, and producing all internal communications . . . would significantly outweigh any probative value" of documents that might relate to the plaintiffs' conduct and attitude). Pursuant to an agreement with Plaintiffs' counsel, TIAA will not search for internal TIAA *e-mails*.

Ex. 2 (TIAA's Responses and Objections), General Objection No. 12 (emphasis added). TIAA also specifically objected to Requests 14–17 on both burden and relevance grounds. *Id.* at 29–32.

During meet and confer negotiations, Plaintiffs had agreed that TIAA did not have to search any internal TIAA emails in consideration of the burden TIAA would face as a non-party. They did not agree that TIAA would not produce other internal document and data. Plaintiffs also reserved their rights to seek such documents in the future should the need arise. Ex. 3 (Sept. 18, 2017 emails between Plaintiffs' counsel and TIAA's counsel) at 1–2.

The issue of which of TIAA's top 200 institutional clients' retirement plans included the CREF Stock Account and TIAA Real Estate Account arose only after fact discovery closed, when TIAA submitted a declaration in support of Defendant's motion for summary judgment. Doc. 134-132 (under seal) ¶¶4–10. Before then, Plaintiffs had no way of knowing what specific data TIAA had (but did not produce) that would contain information responsive to their subpoena, and therefore could not request the specific data on which Mr. Chittenden's testimony would be based. By that time, of course, discovery had ended and Plaintiffs could not seek documents supporting TIAA's statements.

Throughout the discovery period, TIAA insisted that internal documents about other clients were irrelevant and would be unduly burdensome for it to produce. Now, however, it has voluntarily produced a witness to testify for Defendant about the content of those same documents it refused to turn over. Allowing TIAA to present this evidence on Defendant's behalf after TIAA refused to provide it to Plaintiffs is fundamentally inequitable.

Plaintiffs also require this data to test the veracity of Mr. Chittenden's statements and effectively cross examine him. When Plaintiffs questioned Mr. Chittenden about the data that he "look[s] at in [his] present role all the time," (Ex. 4, Tr. of Trial excerpt at 565:5-6), he conveniently could not recall information about TIAA's top 200 clients that would be favorable to Plaintiffs. While Mr. Chittenden provided specific percentages of clients who are receiving contributions from the CREF Stock Account and the TIAA Real Estate Account (*see* Chittenden Decl. ¶¶54, 64), he could only say for clients subject to ERISA: "their percentages might not be quite as high, but it's – it's, you know – I'd have to look at – I think it is probably directionally accurate." Ex. 4 at 650:12-16; *id.* at 650:24-651:7. When ask how many of TIAA's top 200 client's annuity contracts required inclusion of the CREF Stock Account he testified "I don't know. I'd have to

look, you know – I'm trying to do the mental math and, you know, I'm sorry, I just can't come up with an accurate number for you." *Id.* at 652:20-653:8. When asked about the number of the top 200 clients which had over 100 investment options, Mr. Chittenden could not answer without speculating. *Id.* at 655:17-23.

The testimony Defendant and TIAA wish to introduce through Mr. Chittenden presents a fundamental fairness problem. The Court should strike Mr. Chittenden's testimony relating to TIAA's top 200 clients, or in the alternative order TIAA to produce the information on which Mr. Chittenden testimony is based so that Plaintiffs may supplement the record.

    Respectfully,

    SCHLICHTER BOGARD & DENTON, LLP

    /s/ Joel Rohlf
    Joel Rohlf (admitted *pro hac vice*)
    100 South Fourth Street
    St. Louis, MO 63102
    Telephone: (314) 621-6115
    Facsimile: (314) 621-7151
    jrohlf@uselaws.com