IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DR. ALAN SACERDOTE, et al.,

                *Plaintiffs*,

v.

NEW YORK UNIVERSITY,

                *Defendant*.

No. 16 Civ. 6284 (KBF)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR AMENDED OR ADDITIONAL FINDINGS AND TO ALTER OR
AMEND JUDGMENT TO INCLUDE EQUITABLE RELIEF REMOVING
MARGARET MEAGHER AND NANCY SANCHEZ AS FIDUCIARIES**

After a bench trial, the Court concluded that "Plaintiffs have not proven that [NYU's Retirement Plan] *Committee* acted imprudently or that the Plans suffered losses as a result." Doc. 348 at 3 (emphasis added).[1] For purposes of this motion, Plaintiffs do not challenge any of the Court's factual findings, or conclusions related to the Committee as a whole. But the Court also found that "there were deficiencies in the Committee's processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate[.]" *Id.* The Court's factual findings regarding those individuals—Margaret Meagher and Nancy Sanchez—point to the unmistakable conclusion that they repeatedly failed to exercise the level of "care, skill, prudence, and diligence" that an objectively prudent fiduciary responsible for a $6 billion retirement plan would have used, 29 U.S.C.

---

[1] "Plans" refers to the New York University Retirement Plan for Members of the Faculty, Professional Research Staff and Administration ("Faculty Plan"), and the New York University School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration ("Medical Plan").

§1104(a)(1)(B), and are unfit to serve in that capacity going forward.[2] Thus, to protect the Plans' participants from the significant risk of future losses if imprudent and unqualified fiduciaries remain on the Committee, the Court should supplement its findings to order that Meagher and Sanchez be removed and barred from serving as fiduciaries to the Plans, and amend the judgment accordingly. 29 U.S.C. §1109(a); Fed.R.Civ.P. 52(b), 59(e).

## STANDARD OF REVIEW

"On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed.R.Civ.P. 52(b). District courts have broad discretion to "amend or enlarge the findings" as needed to ensure that the judgment is correct. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1358 (Fed. Cir. 2006) (quoting 9 James Wm. Moore et al., *Moore's Federal Practice* P52.60[2], at 130 (3d ed. 2005)); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986); *accord Sequa Corp. v. Gbj Corp.*, 156 F.3d 136, 143 (2d Cir. 1998).

A Rule 52(b) motion may be granted where the district court's findings and conclusions omit discussion of an issue that was litigated, and the trial record supports the additional findings or conclusions requested by the movant. *United States Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 179–80 (3d Cir. 1981). While Rule 52(b) does not explicitly refer to conclusions of law, "it is clear that the district court has the power under Rules 52(b) and 59(e), read together, to alter or add to its

---

[2] To the extent the Court's findings show that additional members also acted imprudently, removal is unnecessary because those individuals are no longer Committee members. Doc. 348 at 26–27.

conclusions of law where appropriate." *Id.* at 180 n.9.

## ARGUMENT

**I.     ERISA explicitly authorizes removal of fiduciaries who breach their duties.**

ERISA's "duty of prudence requires a fiduciary to act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" Doc. 348 at 9 (quoting ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B)). "Fiduciaries' prudence is measured against an objective standard, and their own 'lack of familiarity with investments is no excuse' for failing to act with the care, skill, prudence and diligence required under the circumstances then prevailing." *Id.* at 9–10 (quoting *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984)). "A fiduciary breaches its duty of prudence when it fails to "employ[] the appropriate methods" in making investment decisions." *Id.* at 10 (quoting *Katsaros*, 744 F.2d at 279). Courts look "not only to [a fiduciary's] investigation procedures, but also to the methods used to carry out those procedures as well as the *thoroughness of their analysis of the data collected* in that investigation." *Id.* at 10–11 (citation omitted, emphasis added). As a matter of law, "no fiduciary may passively rely on information provided by a co-fiduciary." *Id.* at 14 (citing *Donovan v. Bierwirth*, 680 F.2d 263, 272 (2d Cir. 1982)).

If a fiduciary is found to be in breach of its duties, ERISA grants courts "'wide discretion in fashioning equitable relief to protect the rights of pension fund beneficiaries.'" *Novella v. Westchester Cty.*, 661 F.3d 128, 150 n.25 (2d Cir. 2011)

3

(quoting *Katsaros*, 744 F.2d at 281). Thus, "a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed" by ERISA is liable not only for any monetary losses caused by the breach, but also "shall be subject to such other equitable or remedial relief as the court may deem appropriate, *including removal of such fiduciary*." 29 U.S.C. §1109(a) (emphasis added). Removal is appropriate when the fiduciaries have engaged in "repeated or substantial violations of [their] responsibilities." *Katsaros*, 744 F.2d at 281 (quoting S. Rep. No. 383, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 4890, 4989); *Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir. 1978).

A finding of bad faith or disloyal conduct is not required for removal. "The issuance of a permanent injunction is not limited to cases in which the fiduciary has engaged in self-dealing. Section 409(a) is intended to be remedial and protective, and the court must determine the appropriateness of such a remedy in light of all the circumstances of the case." *Chao v. Merino*, 452 F.3d 174, 185 (2d Cir. 2006).

Similarly, a monetary loss to the plan is not a prerequisite to removal—the proper inquiry is merely whether the fiduciary's "conduct has violated the prudence standards of Section 404[.]" *Liss v. Smith*, 991 F. Supp. 278, 312 (S.D.N.Y. 1998). "If the [plaintiffs] can prove to a court that certain trustees have acted imprudently, even if there is no monetary loss as a result of the imprudence, then the interests of ERISA are furthered by entering appropriate injunctive relief such as removing the offending trustees from their positions." *Id.* (quoting *Brock v. Robbins*, 830 F.2d 640, 647 (7th Cir. 1987)). Indeed, "it is irrelevant that the honest but imprudent actions

of the trustees resulted in no loss to the fund. Honest but imprudent trustees can dissipate the assets of a fund with speed comparable to dishonest trustees." *Id.* (quoting *Robbins*, 830 F.2d at 647). "[I]mprudent trustees undermine the purpose of ERISA which is to insure that the assets of a fund will be there when the beneficiaries need them." *Id.* (quoting *Robbins*, 830 F.2d at 647).

## II. The Court's factual findings establish that Meagher and Sanchez repeatedly violated their duty of prudence, and thus should be removed as fiduciaries.

Although the Court ultimately concluded that the *Committee* as a whole did not breach its duties (Doc. 348 at 3, 28–29), the Court's findings specific to Meagher and Sanchez demonstrate that both of them repeatedly failed to exercise the prudence required of a fiduciary of a multi-billion dollar defined contribution plan, and that both of them are unfit to effectively serve on the Committee in the future. An order removing them as fiduciaries as requested in the complaint is therefore warranted to protect the interests of the Plans' participants. *See* Doc. 39 at 115.

### A. Margaret Meagher.

Meagher, an NYU employee since 1989, has been the co-chair of the Committee since its inception and is responsible for the "day to day operation" of the Medical Plan. Doc. 348 at 24 & n.35. The Court's findings show that Meagher should be removed as a fiduciary to the Plans for multiple reasons.

*First*, the Court specifically found "that Meagher *does not have the depth of knowledge appropriate to oversee a plan the size* of the NYU Faculty and Medical Plans." *Id.* at 24 n.36 (emphasis added). The Court found that Meagher "did not demonstrate the depth of knowledge one would expect from a fiduciary" (*id.* at 6

5

n.8), and "displayed a surprising lack of in-depth knowledge concerning the financial aspects of managing a multi-billion-dollar pension portfolio" (*id.* at 24–25). These findings had ample support in the record. As the Court noted, Meagher "was unable to state which Plan was bigger, even though the Faculty Plan has (and always has had) thousands more members, and she was uncertain of whether there was a difference in fees between the Plans." *Id.* at 24 n.36. [3]

*Second*, the Court specifically found that "*[i]n a number of instances*," Meagher "appeared to believe it was sufficient for her to have relied rather blindly on Cammack's expertise," which was "inappropriate" "*[a]s a matter of law*[.]" *Id.* at 25 (emphasis added); *see also id.* at 14–16 (finding that it was improper for Committee members to "defer virtually entirely to Cammack"); Tr. at 1780:5-1781:1 (Court notes that "Meagher seemed to defer almost, it seemed, from my recollection, repeatedly as if she didn't have to do anything other than receive documents."); *id.* at 1884:8–22 (THE COURT: … "[I]f [Meagher's] not capable of asking the questions, or doesn't ask the questions, then I would think that would be a dereliction of

---

[3] The record further shows Meagher's lack of knowledge of a number of additional rudimentary facts about the Plans. Among other things, Meagher: (1) did not know that until recently, the Plans were paying a retail rate for TIAA funds (Tr. at 119:12–20); (2) did not know whether there were share classes for the TIAA Real Estate Fund (*id.* at 122:19–123:3); (3) could not approximate the quantity of assets in the TIAA Real Estate Fund (*id.* at 123:4–17); (4) had no idea where the Plans rank in size in comparison to other defined contribution plans (*id.* at 128:11–15); (5) was not aware that the CREF Stock Account had a mortality and expense fee or what a mortality and expense fee was (*id.* at 132:19–133:5); (6) had no knowledge of the annuity fees or the number of layers of fees for the TIAA Real Estate Account (*id.* at 134:1–8); (7) did not know what the benchmark was for the TIAA Real Estate Account as of her deposition in December 2017 (*id.* at 135:10–18); and (8) had never heard the terms "float" or "securities lending" until her deposition (*id.* at 135:25–136:5, 136:19–25, 137:25–138:1).

6

duty."). Meagher's "lack of true appreciation for the significance of her role as a fiduciary" was shown by her blunt admissions that "she did not do anything to test the reliability of [Cammack's] information" because it was "*not [her] job to determine whether the fees are appropriate*' for the Plans." Doc. 348 at 25 (citing Tr. at 126:3–9,126:13–128:8) (emphasis added).

Those findings support removal of Meagher as a fiduciary. Meagher's ignorance of financial matters shows that she simply lacks the "skill" required by ERISA to oversee a multi-billion dollar defined-contribution portfolio. Doc. 348 at 24–25 & n.36; *see* 29 U.S.C. §1104(a)(1)(B). As the Court noted during closing, the chairperson of a $6 billion retirement plan committee should be highly knowledgeable, because the Plan "deserves the best of the best." Tr. at 1891:17–1892:13. In short, because the Court's findings show that Meagher is "not intellectually or educationally capable of listening to the information, absorbing it, and deciding for herself and applying judgment to that question, she should be off the committee." *Id.* at 1886:7–1887:3.

Moreover, the numerous instances of blind reliance on Cammack show, as a matter of law, that Meagher has failed to exercise the care, prudence, and diligence that an objectively prudent fiduciary of such a plan would have used under similar circumstances. *See* Doc. 348 at 25. Given that Meagher's tenure covers the entirety of the class period since August 9, 2010 (*id.* at 4, 6 n.8), her violations of the duty of prudence have been both "repeated" and "substantial," *Katsaros*, 744 F.2d at 281. Allowing such an imprudent fiduciary to remain on the Committee would

"undermine the purpose of ERISA" by exposing the Plans to an unacceptable risk of loss due to the Committee co-chair's imprudent conduct. *See Liss*, 991 F. Supp. at 312; *Robbins*, 830 F.2d at 647. The Court should thus supplement its findings and order that Meagher be removed as a fiduciary to the Plans.

### B. Nancy Sanchez.

The Court found the testimony of Sanchez similarly "troubling." Doc. 348 at 6 n.9. Even though she has been a member of the Committee since its inception, Sanchez "failed to demonstrate a satisfactory understanding of … her role as a fiduciary" and "did not consider herself a fiduciary." *Id.*; Tr. at 353:4–16. Although Sanchez testified that she does not "review the plan documents" because her staff (Meagher) reviews them, Meagher herself "failed to demonstrate a firm grasp on these documents." Doc. 348 at 26; *id.* at 6 n.9; *see also* Tr. at 1780:10–13 (Court notes that "there's a serious issue with whether or not Sanchez can actually not have read the plan and be a fiduciary. … I think that she can't have other people do her work for her.").

The Court found Sanchez to be "unfamiliar with basic concepts relating to the Plans, such as who fulfilled the role of administrator for the Faculty Plan," that she did not "know enough about variable annuities to be able to comment on whether they should be in these plans," and "could not recall whether there were 'specific underperformance metrics or thresholds that have to be triggered for a fund to be put on the watch list.'" Doc. 348 at 25–26. The Court specifically found that Sanchez's excuse for her inability to remember Plan details—that she has a "big job" in human resources—"suggested that Sanchez does not view herself as having

8

adequate time *to serve effectively on the Committee.*" *Id.* at 25 (emphasis added).

As with Meagher, the Court's findings show that Sanchez should be removed as a fiduciary to the Plans. An objectively prudent fiduciary of a $6 billion retirement plan would, at a minimum, review the plan's governing documents, understand the nature of their fiduciary responsibility, and take the time to become familiar with basic concepts central to the plan's operation. In contrast, Sanchez has demonstrated that she is either unwilling or unable to devote adequate time and effort to "serve effectively on the Committee." Doc. 348 at 25. And like Meagher, given that Sanchez has been a Committee member throughout the class period (Tr. at 353:4-16), she has engaged in "repeated" and "substantial" violations of her duty of prudence, *Katsaros*, 744 F.2d at 281. Removing Sanchez will further ERISA's purposes of protecting the Plans' participants against the risk of loss due to imprudent fiduciary conduct. *See Merino*, 452 F.3d at 185; *Liss*, 991 F. Supp. at 312; *Robbins*, 830 F.2d at 647.

## CONCLUSION

For the foregoing reasons, the Court should issue amended or additional findings to order that Margaret Meagher and Nancy Sanchez be removed and barred from serving as fiduciaries to the Plans, and amend the July 31, 2018 judgment accordingly.

August 14, 2018                                    Respectfully submitted,

/s/ Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON, LLP
Andrew D. Schlichter, Bar No. 4403267
Jerome J. Schlichter (*pro hac vice*)
Heather Lea (*pro hac vice*)
Joel Rohlf (*pro hac vice*)
Ethan Hatch (*pro hac vice*)
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Phone: (314) 621-6115
Fax: (314) 621-5934

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

/s/ Jerome J. Schlichter
Counsel for Plaintiffs