UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. ALAN SACERDOTE, et al., | : |
| Plaintiffs, | : |
| v. | : Case No.: 1:16-cv-06284-RWS |
| NEW YORK UNIVERSITY, | : ECF Case |
| Defendant. | : |

SUR-REPLY IN OPPPOSITION TO
PLAINTIFFS' MOTION TO VACATE AND FOR A NEW TRIAL

Mark Muedeking (admitted *pro hac vice*)
Ian C. Taylor (admitted *pro hac vice*)
Jennifer K. Squillario (admitted *pro hac vice*)
Adam J. Pié (admitted *pro hac vice*)
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4000

Brian Kaplan (BK4922)
Evan D. Parness (EP6680)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant*

## **INTRODUCTION**

Plaintiffs have doubled-down on their impermissible strategy of submitting the legal opinions of lawyers as "expert" opinions, attaching new declarations from *two* retired federal judges to their Reply.  Much like the Declaration of Mark Harrison, the Declarations of retired federal Judges F.A. Little, Jr. and Timothy K. Lewis (the "Declarations") purport to instruct this Court on issues of law and how it should rule on Plaintiffs' Motion to Vacate and For a New Trial ("Motion to Vacate").  The Court should disregard the Declarations entirely.  They are a blatant attempt to convert the factual misstatements, assumptions, and legal arguments in Plaintiffs' Motion to Vacate into issues on which these so-called "experts" render "expert opinions" on matters of law.  Plaintiffs are merely trying to strengthen their arguments using the reputations of a couple of former jurists whom Plaintiffs paid to provide the opinions they were looking for.  Accordingly, these Declarations should be viewed for what they are—pieces of advocacy written by private attorneys whom Plaintiffs compensated for authoring them.

These new Declarations suffer from the same fundamental deficiencies as the Harrison Declaration: they are based on unsubstantiated speculations and misguided conclusions of law fed to them by the Plaintiffs' counsel.  Indeed, Judge Little, Jr. and Judge Lewis both readily concede that their opinions rely on the "assumptions" and conspiracy theories found within Plaintiffs' post-trial submissions.  As a result, the Declarations are not entitled to any greater weight just because their authors were formerly members of the federal bench.

Finally, even if Judge Little, Jr.'s and Judge Lewis's legal opinions and thinly-veiled advocacy were entitled to any weight, they are still not persuasive because they hinge on credibility determinations they allege were made by Judge Forrest.  Judges Little, Jr. and Lewis (and Plaintiffs) completely ignore, however, Judge Forrest's core holdings that Plaintiffs failed to

prove that the recordkeeping fees were *objectively imprudent*, or that either the TIAA Real Estate Fund or the CREF Stock Account were *objectively imprudent* investment options. (ECF No. 348 at 56, 68, 77.) Because Plaintiffs' failed to meet their burden of proving objective imprudence, even if Plaintiffs' could have proven that there was a lack of procedural prudence based on the testimony, Plaintiffs still would have not been entitled to any recovery.

## ARGUMENT

**I.    The Declarations of the Hon. F.A. Little, Jr. and the Hon. Timothy K. Lewis Are Both Improper Legal Opinions.**

**A.    Expert Opinions on Disqualification Are Impermissible Legal Opinions and the Declarations Are Comprised Entirely of Legal Opinions.**

As set forth by Defendant in its memoranda supporting the Motion to Strike, courts have uniformly held that purported expert opinions regarding whether a judge should disqualify herself under 28 U.S.C. § 455(a) are inadmissible legal opinions. (ECF No. 374 at § I; ECF No. 379 at § I.) *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 65 (S.D.N.Y. 2001) (holding that the question of recusal "is solely a question of law"). This is the law across every federal circuit court. (ECF 374 at pp. 2-3.)

Nonetheless, Judge Little, Jr. renders his legal opinion that, in this case the alleged facts "overwhelmingly required Judge Forrest to recuse herself" and that "recusal was required." (ECF No. 382-2 at §§ III(E), (F).) Judge Little, Jr. is unmistakably opining that as *a matter of law*, based on legal authority he believes is controlling, a certain course of action from Judge Forrest *was required*.[1]

---

[1] Judge Little, Jr's opinion that Judge Forrest's recusal was "required" in this action is particularly incredible because Judge Little, Jr. held himself to a different, lower standard. In *Valley v. Rapides Parish Sch. Bd.*, 992 F. Supp. 848, 851 (W.D. La. 1998), Judge Little, Jr. ruled, in conclusory fashion, that just because he was friends with, and formerly a partner to, the counsel for Intervenor in that action "[c]ourts have ruled that, in certain factual circumstances, friendship between a judge and a lawyer appearing before that judge does not compel a recusal." Judge Little, Jr. provided no other explanation why recusal was not required in that case other to say the moving party's allegations were "insufficient." *Id.* It is hard to imagine that the alleged, attenuated relationships among

Similarly, Judge Lewis states, "Judge Forrest *should have disclosed* that she was considering renewing a partnership with a significant leader of NYU and *recused herself*." Judge Lewis also concedes that he "know[s] that it is *solely* within the province of this court" to assess whether Judge Forrest was required to recuse herself "including whether the standard set forth in 28 U.S.C.§ 455(a) has been met." (ECF No. 382-4 at p. 6.)  By conceding that this issue is "solely" for this Court to decide, Judge Lewis concedes that the question of recusal on which he has opined is a question of law.

### B. The Declarations Should Not Be Offered Any Deference or Authority Merely Because They Are Written by Former Federal Judges

Plaintiffs—as well as Judges Little, Jr. and Lewis themselves—suggest that because the Declarations are authored by retired federal judges, they are somehow specially situated to opine on the issue of whether Judge Forrest needed to recuse herself in this action.  But Judges Little, Jr. and Lewis are no better placed to opine on this issue than Mr. Harrison.[2]  Both Judge Little, Jr. and Judge Lewis are no longer active judges but, like Mr. Harrison, attorneys in private practice.  (ECF No. 382-2 at § I, ¶ 7; ECF No. 382-4 at p. 7.)  Both Judges Little, Jr. and Lewis were paid by Plaintiffs on an hourly basis to render their legal opinions—$500.00/hour for Judge Little, Jr. and $1,000.00/hour for Judge Lewis.  (ECF No. 382-2 at § I, ¶ 9; ECF No. 384-4 at p. 7.)  Furthermore, although the Judges claim that receipt of substantial fees had no impact on their opinions, it should be obvious that their opinion would not have been obtained and attached to the Reply had they not reached the conclusions that Plaintiffs required.  While these judges

---

Judge Forrest, a Cravath partner, and NYU in this case created a greater appearance of impropriety than Judge Little, Jr. refusing to disqualify himself in a case in which his friend and former partner was advocating before him.

[2] Plaintiffs' previous citation (ECF No. 377 at pp. 17-18) to *First Nat'l Bank of Louisville v. Lustig*, No. 88-1682, 1993 WL 384974 (E.D. La. Sept. 22, 1993) does not support the introduction of these new declarations, nor does it create an exception for purported expert testimony offered by retired judges.  This non-binding, one-page decision allowed a former District Court Judge to testify on certain issues but only "absent any instruction on the law." *Id.*

purport to be calling balls and strikes in their opinions, it is obvious that Plaintiffs have paid them to swing the bat.

## II. The Declarations of Judge Little, Jr. and Judge Lewis Are Based on the Presumptions, Personal Subjective Beliefs, Speculation, Unreliable Hearsay, and Inaccurate Statements Alleged as Fact.

The Declarations are also patently unreliable because, just as with the Harrison Declaration, they are based on speculative, untrue factual narratives that rely on presumptions, personal subjective beliefs, guesswork, unreliable hearsay, and inaccurate statements of fact to reach their desired, impermissible legal conclusions.  As set forth in Defendant's Motion to Strike, expert testimony based on such speculation and hearsay is inadmissible—as is lengthy factual narrative proffered by such experts.  (ECF No. 374 at pp. 5-8.)

At the outset of his opinion, Judge Little, Jr. states that when Judge Forrest announced she was "leaving the bench . . . *[i]t is assumed* that at that point, [Judge Forrest] was clearly considering employment with her old firm whose Chairman has direct responsibility for the conduct and removal of the fiduciaries appointed by the Board of Trustees." (ECF No. 382-2 at § III (bolded emphasis added).)  To support his opinion, Judge Little, Jr. assumes that there is an "extremely close professional relationship between Judge Forrest, Evan Chesler, and the Cravath firm."  (ECF No. 382-2 at § (III)(A).)  This assumption is supported only on stray citations to snippets of publicly available statements, all of which are inadmissible hearsay.  (*Id*.)  Judge Little, Jr.'s additional assumptions, such as that (i) Mr. Chesler was "responsib[le] for overseeing the Retirement Committee's carrying out their fiduciary duties" (ECF No. 382-2 at § III(C)) and (ii) Mr. Chesler's role as a fundraiser for NYU could induce Judge Forrest to rule corruptly in NYU's favor (ECF No. 382-2 at § III(D)), are likewise unsupported by any evidence in this case, and are based solely on inadmissible speculation and hearsay including YouTube videos, press

releases, and other online content.  (ECF No. 382-2 at nn. 12-29.)  If not created from whole cloth, these allegations would be improper factual narrative to be disregarded by the Court.

Judge Little, Jr. also presumes that Mr. Chesler had "direct responsibilities for the Plans at issue in the case," ostensibly because he was a member of NYU's Board of Trustees ("Board").  (*Id.* at § III(B).)  But Defendant thoroughly debunked this argument in its Motion to Strike and in Opposition to Plaintiffs' Motion to Vacate and For a New Trial; specifically, neither the Board as a governing body, nor any individual Trustees (including Mr. Chesler) were parties to, or even remotely involved, in this action.  Plaintiffs have not asserted any allegations, in any of their numerous complaints against the Board or individual Trustees, such as Mr. Chesler.  (ECF No. 371 at pp. 6-11; ECF No. 374 at § II(B); ECF No. 379 at § II.)  Indeed over the course of this litigation, any references to the Board have been in passing and completely immaterial to the claims asserted by Plaintiffs.  (ECF No. 379 at § II(A).)  Plaintiffs sudden pre-occupation with these non-parties is a clear gambit to overturn Judge Forrest's deliberative and thoughtful opinion by impugning her character, as they know they will be unable to successfully attack the merits of her opinion in this case.  (ECF No. 382-2(III)(F)(8).)

Judge Little, Jr. also bizarrely questions how, during closing arguments, Judge Forrest could purportedly criticize the actions of Retirement Committee Member Margaret Meagher and then ultimately rule that Plaintiffs had failed to prove any of their claims.  (ECF No. 382-2 at ¶¶ 3-4.)  Judge Little, Jr. "assume[s] that something dramatically changed between the end of closing argument . . . and the time Judge Forrest made her decision" inferring that only Judge Forrest's contemplated return to Cravath could have motivated Judge Forrest's decision in favor of Defendant.  (*Id.*)

But, there is no mystery here—Judge Forrest's reasoning on this point is clearly and persuasively set forth in her Opinion and Order dismissing Plaintiffs' remaining claims. Though Judge Forrest described Meagher's testimony as "concerning," (ECF No. 348 at p. 24) she also noted that Meagher was just one member of the Retirement Committee and that between the guidance of third party consultant "Cammack's advice and the guidance of the more well-equipped Committee members (such as Surh), ***the Court is persuaded that the Committee performed its role adequately***." (*Id*. at p. 29 (emphasis added).)  Accordingly, Little, Jr.'s conspiratorial suggestion that Judge Forrest suddenly changed course after closing arguments is unfounded and based on his failure to carefully analyze Judge Forrest's Opinion and Order.

Moreover, even if Plaintiffs' had proven that the Committee in some way failed to meet its duty of prudence—and Plaintiffs failed to prove this point—Plaintiffs' also had to prove that the recordkeeping fees and two investment options at issue in the case were objectively imprudent. Plaintiffs failed to meet this burden, too. The Court held that (i) "Plaintiffs . . . have not met their burden of proof as to damages for excessive recordkeeping fees" and that (ii) Plaintiffs failed to prove that either the TIAA Real Estate Fund or the CREF Stock Account were objectively imprudent investment options included as participant options in the Plans. (*Id.* at 56, 68, 77.) So, what Judge Little, Jr. describes as disparities between Judge Forrest's statements at closing argument and her final decision are, in fact, completely and thoroughly consistent and resolved in in her written opinion. Had Judge Little, Jr. carefully reviewed the opinion he would not have had to "assume[]" an improper motive to Judge Forrest.

Judge Lewis's Declaration is even more deficient on the facts. Indeed, Judge Lewis himself admits that his only knowledge of this case at all is based upon his review of "both parties' post-trial submissions" and/or "everything that is now before this court (I believe)."

(ECF No. 382-4 at pp. 1, 3.) But Judge Lewis does not specify what "submissions" he reviewed, and more importantly, which specific documents he relied upon. Judge Lewis has no support, other than his personal belief, for the supposition that:

> After the case was submitted but before an opinion was issued, Judge Forrest . . . was considering returning to Cravath and thus renewing her partnership with Mr. Chesler, who clearly had an indirect and possibly had a direct interest in the outcome of this litigation given the intensity of his affiliation with NYU . . . .

(*Id*. at ¶ 9.) Accordingly, there is no foundation for Judge Lewis's conclusion that, because of this "professional relationship" and "Mr. Chesler's interest as an active Board member at NYU . . . Judge Forrest should have disclosed that she was renewing a partnership with a significant leader of NYU and ***recused herself***." (*Id.* (emphasis added).) Judge Lewis has simply adopted Plaintiffs' position, without substantiating it himself.

In advance of Defendant filing this memorandum, Plaintiffs protested to the Court that this sur-reply is unnecessary. In doing so, Plaintiffs' counsel has demonstrated precisely why it is necessary: because Defendant is forced again and again to correct Plaintiffs' misrepresentations. Indeed, in his letter to the Court, counsel for Plaintiffs Jerome J. Schlichter, incorrectly stated:

> At most, NYU complains of Plaintiffs presenting declarations from distinguished former federal jurists stating that, ***after reading all the filings and being fully aware of the facts***, a reasonable person would question their impartiality in similar circumstances and would question Judge Forrest's impartiality.

(ECF No. 384 (emphasis added).) But, as set forth in detail above, not even Judges Little, Jr. or Lewis purported to have read "all the filings and being fully aware of the facts." They only "assumed," repeatedly, certain facts to be true, and relied on a combination of inadmissible hearsay and Plaintiffs' own submissions to support them.

In other words, and notwithstanding Mr. Schlichter's misrepresentations to the Court, like Mr. Harrison before them, Judges Little, Jr. and Lewis obviously failed to review independently

- 7 -

all of the available evidence in this case.  Instead, they relied on a blind acceptance of Plaintiffs' arguments as fact.  Indeed, if Judges Little, Jr. and Lewis had thoughtfully and honestly reviewed the record in this case, perhaps they would have noticed and noted that at the outset of this litigation, Judge Forrest disclosed an *actual* potential conflict—that she would be teaching at NYU as an adjunct professor while the action was ongoing.  (ECF No. 5.)  Indeed, though Judge Forrest invited Plaintiffs to state that they were concerned about an appearance of impartiality, Plaintiffs remained silent at the time, apparently unconcerned by this disclosure.  Neither Judge Little, Jr. nor Judge Lewis referenced this incredibly probative fact, one that suggests Judge Forrest's keen attention to issues of perceived impartiality.

Unless they summarily ignored this disclosure—which would undercut the integrity of their opinions in a different way—Judges Little, Jr. and Judge Lewis may have violated their own ethical duties by not undertaking a thorough and impartial review of the record, just like Mr. Harrison before them.  (*See* ECF No. 374 at pp. 13-14.)

                                   Respectfully submitted,

                                   /s/     *Ian C. Taylor*
                                   Mark Muedeking (admitted *pro hac vice*)
                                   Ian C. Taylor (admitted *pro hac vice*)
                                   Jennifer Squillario (admitted *pro hac vice*)
                                   Adam J. Pié (admitted *pro hac vice*)
                                   DLA PIPER LLP (US)
                                   500 8th Street, NW
                                   Washington, DC 20004
                                   (202) 799-4000

                                   Brian Kaplan (BK4922)
                                   Evan D. Parness (EP6680)
                                   DLA Piper LLP (US)
                                   1251 Avenue of the Americas
                                   New York, New York 10020
                                   (212) 335-4500
                                   *Attorneys for Defendant*