**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

DR. ALAN SACERDOTE, et al.,

*Plaintiffs,*

v.                                                            No. 16 Civ. 6284 (RWS)

NEW YORK UNIVERSITY,

*Defendant.*

**PLAINTIFFS' RESPONSE TO DEFENDANT'S SUR-REPLY REGARDING
PLAINTIFFS' MOTION TO VACATE AND FOR A NEW TRIAL[1]**

NYU's sur-reply (Doc. 386) regarding the declarations of former federal judges
Timothy K. Lewis and F.A. Little, Jr. mostly rehashes the same arguments NYU
already made in moving to strike the declaration of Mark I. Harrison. *See* Doc. 374.
NYU's arguments fail for the same reasons set forth in Plaintiffs' opposition to that
motion: the opinions of Judge Lewis and Judge Little are based on reliable facts and
provide appropriate statements on issues of judicial disqualification. *See* Doc. 377.

The Lewis and Little declarations are not offered as legal opinions, but rather to
assist the Court in deciding the *factual* question of whether an objective person
might reasonably have questioned Judge Forrest's impartiality under the
circumstances. Although NYU disputes the factual bases for their opinions—
particularly the incontrovertible fact that the Board of Trustees was responsible for
monitoring and removing the Plans' fiduciaries—NYU's disagreement about the
facts is not a basis for exclusion. Yet, NYU is not content with that. NYU has made

---

[1] The January 16, 2019 order allowed Plaintiffs to respond on the return date. Doc.
385.

*ad hominem* attacks, outrageously accusing highly distinguished former federal jurists of "violat[ing] their own ethical duties." These remarkable attacks are entirely baseless, and NYU should retract them. NYU simply wants the Court to ignore the fact that objective observers—including a preeminent expert in the field of judicial ethics and two others who have distinguished careers serving on the federal bench—have reviewed the record and concluded that Judge Forrest's impartiality might reasonably be questioned under the circumstances. The Court should reject NYU's request to exclude the declarations.

I.    **The declarations will assist the Court in deciding the fact question of whether an objective observer might reasonably have questioned Judge Forrest's impartiality in light of her considering and possibly discussing a law partnership with a prominent member of the Defendant's Board of Trustees while the case was under advisement.**

NYU repeats the same argument it made against Mr. Harrison: that the declarations of Judge Lewis and Judge Little contain improper legal opinions. Doc. 386 at 2–3 (Part I); *see* Doc. 374 at 2–5 (Part I). As set forth in Plaintiffs' opposition to that motion, significant authority supports the use of expert testimony, if it is seen as expert testimony, on issues of judicial conduct and recusal/disqualification. Doc. 377 at 16–18 (Part II.A). That is because the recusal determination presents a mixed question of fact and law. *Id.* at 19; *see Petrov v. Gonzales*, 464 F.3d 800, 804 (7th Cir. 2006). In particular, the question of how an "objective, informed observer" would view certain facts is a factual question. *See United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000) (recusal standard asks whether an "objective observer" with full knowledge of the underlying facts "could reasonably question the judge's impartiality.") (citation omitted).

Judge Lewis emphasizes that the purpose of his declaration is not to provide an opinion on whether the legal standard set forth in 28 U.S.C. §455(a) has been met, but rather "to present the candid and objective view of a former federal judicial colleague who also left the bench to join a law firm for whatever assistance it might provide." Doc. 382-4 at 6–7. Similarly, Judge Little makes clear that his opinion is based on his own experience and practice regarding recusal issues, and presents his objective opinion of how a reasonable person would have viewed the facts that Judge Forrest had a 20-year professional relationship with a prominent member of NYU's Board of Trustees and was considering resuming that relationship while the case against NYU was under advisement. Doc. 382-2 at 2–9. These opinions may be helpful to the Court in deciding the fact question of whether an objective observer might reasonably have questioned Judge Forrest's impartiality.

The case cited by NYU, *In re Initial Public Offering Securities Litigation*, 174 F. Supp. 2d 61 (S.D.N.Y. 2001), is distinguishable because the facts there were undisputed. Doc. 377 at 18. Here, as it did with Mr. Harrison, NYU disputes the factual bases of the opinions of Judge Lewis and Judge Little (Doc. 386 at 4–7 (Part II), and disputes as a factual matter whether an objective, informed observer might reasonably have questioned Judge Forrest's impartiality (Doc. 371 at 1). Thus, the declarations are admissible even under NYU's case. *In re Public Offering*, 174 F. Supp. 2d at 66 (holding expert opinion on judicial conduct admissible "where a fact is in dispute"). If NYU had stipulated to the fact that an objective, informed observer might have questioned Judge Forrest's impartiality, that factual issue

would not be in dispute. NYU has not done so.

NYU brashly suggests that the mere fact that Judge Lewis and Judge Little were paid for their time reviewing pleadings and exhibits and preparing their declarations renders their opinions unreliable. Doc. 386 at 3. If NYU's reasoning were valid, no retained expert would ever be permitted to testify—including one NYU offered in this case, who was compensated at a higher rate than either Judge Lewis or Little.[2] The fact that NYU's position is wholly without legal support is demonstrated by the absence of any citation for this audacious suggestion.

## II.   The opinions of Judge Lewis and Judge Little have a proper factual basis.

NYU repeats another argument from the Harrison motion, asserting that Judge Lewis and Judge Little improperly rely on incorrect facts or inadmissible hearsay. Doc. 386 at 4–8 (Part II); *see* Doc. 374 at 5–14 (Part II). Plaintiffs' arguments in opposition to that motion apply equally here. *See* Doc. 377 at 8–16 (Part I). The opinions of Judge Lewis and Judge Little have a reliable factual basis, supported by the record. Further, even if NYU's disputes about those facts were valid, they go strictly to weight, not admissibility. *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 134 (2d Cir. 2006).

NYU contends it was improper for Judges Lewis and Little to "assume" certain facts and to rely upon purported "inadmissible hearsay and Plaintiffs' own submissions." Doc. 386 at 4–7. Rule 703 expressly allows an expert to "base an opinion on facts or data in the case that the expert *has been made aware of* or

---

[2] *See, e.g.*, Doc. 272-25 ¶6 (Daniel Fischel, $1,500 per hour).

personally observed." Fed. R. Evid. 703 (emphasis added). Moreover, "the facts that form the basis for an expert's opinions or inferences need not be admissible in evidence 'if of a type reasonably relied upon by experts in the particular field.'" *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993) (quoting Fed. R. Evid. 703) (emphasis omitted); *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 491 (S.D.N.Y. 2002). As stated by the Second Circuit, "'it is rare indeed that an expert can give an opinion without relying to some extent upon information furnished him by others.'" *Howard v. Walker*, 406 F.3d 114, 127 (2d Cir. 2005) (quoting *Reardon v. Manson*, 806 F.2d 39, 42 (2d Cir. 1986)). An expert who is qualified under Rule 702 "is assumed 'to have the skill to properly evaluate the hearsay, giving it probative force appropriate to the circumstances.'" *Locascio*, 6 F.3d at 938 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985)). Accordingly, the judges' reliance on purported "hearsay" and Plaintiffs' submissions do not render the opinions inadmissible.

NYU fails to show that either declaration is unreliable. NYU criticizes both Judge Little and Judge Lewis for "assum[ing]" that Judge Forrest was considering a return to Cravath after the New York Law Journal reported on July 18, 2018 that she was leaving the bench, while she was deciding the case. Doc. 386 at 4, 7. The fact that Judge Forrest was "considering" a return to Cravath on July 18 is not just a reasonable inference. It inevitably follows from the fact that Judge Forrest stated that Cravath was the "only firm" she considered, that it was an "easy decision" and that she was "thrilled to be coming home." Doc. 359-1; Doc. 359-2; Doc. 359-41. Any

reasonable person would conclude that Judge Forrest considered where she would go, if not before she announced she was leaving the bench, then certainly upon making the announcement. And any reasonable person would conclude that place was Cravath because the judge stated that is the "only firm" she considered. This reasonable conclusion is further supported in the July 18 article citing a source with knowledge of the situation as stating that "[a] return to Cravath seems like a distinct possibility for Forrest." Doc. 359-38.  Moreover, Judge Forrest was receiving annual payments from Cravath of over $380,000 at the time, and she began her employment at Cravath less than 60 days after the July 18 New York Law Journal report, with no period before that off the bench. Doc. 359-36 at 32–33 (Question 20); Doc. 359-41.

While NYU claims that Judge Little's discussion of the "extremely close professional relationship between Judge Forrest, Evan Chesler, and the Cravath firm" is based on inadmissible hearsay (Doc. 386 at 4), evidence of this extremely close relationship comes directly from Judge Forrest's own words. She described being paired up with Mr. Chesler in a mentor-mentee work relationship during her early years at Cravath, which was "a great compliment" that made her "feel like a star," (Doc. 359-31), and even introduced Mr. Chesler who was in attendance at her 2011 confirmation hearing before Senate Judiciary Committee (Doc. 359-35). Similarly, Mr. Chesler's role as the chief fundraiser for NYU and face of its $1 billion endowment campaign is shown by various publications from *NYU's own website*. Docs. 359-18 through 359-22; *see* Fed. R. Evid. 801(d)(2) (opposing party's

statement is not hearsay).

NYU wrongly asserts that Judge Little's statement that Mr. Chesler was "responsib[le] for overseeing the Retirement Committee's carrying out their fiduciary duties" is "unsupported by any evidence in this case." Doc. 386 at 4–5. This is flat out wrong. In fact, the Committee's Charter states that *the Board of Trustees*, of which Mr. Chesler is a member, is responsible for monitoring the Committee's performance as fiduciaries. Doc. 359-12 (NYU00034912 at 14–15, 18–21); Doc. 359-13 (NYU0094316). The Board of Trustees also had the responsibility to determine whether to remove or replace any member of the Committee (Doc. 359-13 at NYU0094315), the Committee reported to the Board of Trustees annually "on the actions taken by the Committee to discharge its duties under the Plans," and the Board of Trustees' Finance Committee, of which Mr. Chesler is a member, was responsible for approving the investment policy statement used by the Committee (*id*. at NYU0094316). NYU's attempt to distance Mr. Chesler and the Board of Trustees from their role in this action is simply unavailing and inexplicable.

NYU further contends that even if Judge Forrest's credibility determinations could be called into question, that would not change the result in this case because the credibility findings pertained only to "procedural imprudence," not "objective imprudence." Doc. 386 at 1–2, 7. But Judge Forrest's findings regarding objective imprudence also relied heavily on credibility determinations between the parties' respective experts. Doc. 348 at 55 & n.76, pp. 65–66, 76 (crediting NYU's experts over Plaintiffs' experts). Accordingly, Judge Forrest's credibility determinations

applied to both.[3]

NYU accuses Plaintiffs' counsel of "misrepresent[ing]" that Judge Lewis and Judge Little had "read[] all the filings" and were "fully aware of the facts," and similarly criticizes Judge Lewis for stating that to the best of his belief, he had read "everything that is now before this court." *Id.* NYU apparently interprets these statements as a representation that the judges had reviewed all 386 docket entries since August 2016 in their entirety, as well as the nearly 2,000-page trial transcript and hundreds of summary judgment and trial exhibits that have nothing to do with the recusal issue before the Court. But as the context makes clear, "all the filings" and "everything" before the Court refers to the memoranda and documents cited in connection with Plaintiffs' motion to vacate and for new trial. *See* Doc. 382-4 (Judge Lewis stating that opinions "are based upon my review of both parties' *post-trial* submissions") (emphasis added).

The materials reviewed by the judges include Judge Forrest's disclosure "that she would be teaching at NYU as an adjunct professor while the action was ongoing" (Doc. 386 at 8), which Plaintiffs discussed in their opening memorandum, and regarding which Plaintiffs made no request to recuse. *See* Doc. 358 at 9 (citing Doc. 5). Although NYU criticizes Judges Lewis and Little for not citing the

---

[3] Defendant's experts on imprudence and recordkeeping fees were two lawyers with no investment management experience or recordkeeping experience. *See* Doc. 272-25 ¶1; Doc. 272-27 ¶1. In contrast, Plaintiffs' experts on these subjects were a 25-year veteran investment manager, and the national head of recordkeeping pricing for T. Rowe Price for 10 years. Doc. 272-15 at 2–6 (Part I); Doc. 272-16 ¶¶3–10.

purportedly "incredibly probative fact" that Judge Forrest made that disclosure (Doc. 386 at 8), NYU itself *failed to even cite* the disclosure in its opposition to the motion to vacate. *See generally* Doc. 371. If disclosure of an adjunct professorship were "incredibly probative" as NYU now claims, surely NYU would have cited and discussed it extensively. Accordingly, the fact that Judges Lewis and Little did not cite the disclosure neither "undercut[s] their integrity" nor shows that they "violated their own ethical duties" as NYU recklessly and baselessly asserts. Doc. 386 at 7–8. It simply shows that the August 2016 disclosure has little or no relevance to the circumstances prevailing on July 18, 2018 when the situation dramatically changed while the case was under submission, as NYU tacitly concedes by its own failure to cite the August 2016 disclosure.

In sum, the declarations of the Honorable Timothy K. Lewis and the Honorable F.A. Little, Jr. are relevant, reliable and informative. The Court should ignore NYU's inexcusable, disrespectful *ad hominem* attacks on these distinguished jurists and deny NYU's request for exclusion.

January 22, 2019                              Respectfully submitted,

                                              /s/ Jerome J. Schlichter
                                              SCHLICHTER, BOGARD & DENTON, LLP
                                              Andrew D. Schlichter, Bar No. 4403267
                                              Jerome J. Schlichter (*pro hac vice*)
                                              Heather Lea (*pro hac vice*)
                                              Joel Rohlf (*pro hac vice*)
                                              100 South Fourth Street, Suite 1200
                                              St. Louis, MO 63102
                                              Phone: (314) 621-6115
                                              Fax: (314) 621-5934

                                              *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

                                              /s/ Jerome J. Schlichter
                                              *Counsel for Plaintiffs*