USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/1/2019__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
DR. ALAN SACERDOTE, DR. HERBERT
SAMUELS, MARK CRISPIN MILLER,
PATRICK LAMSON-HALL, MARIE E.
MONACO, DR. SHULAMITH LALA
STRAUSSNER, and JAMES B. BROWN,
individually and as representatives of a class of
participants and beneficiaries on behalf of the NYU
School of Medicine Retirement Plan for Members
of the Faculty, Professional Research Staff and
Administration and the New York University
Retirement Plan for Members of the Faculty,
Professional Research Staff and Administration,

Plaintiffs,

-against-

16 Civ. 6284 (AT)

NEW YORK UNIVERSITY,

**ORDER**

Defendant.

ANALISA TORRES, District Judge:

On August 9, 2016, Plaintiffs, a group of employees of New York University ("NYU"), filed this action against Defendant, NYU. ECF No. 1. Defendant's Retirement Plan Committee (the "Committee") oversees two retirement plans: the NYU Retirement Plan for Members of the Faculty, Professional Staff and Administration, and the NYU School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration (together, the "Plans"). *See Sacerdote v. N.Y. Univ.* (the "Opinion"), 328 F. Supp. 3d 273, 280 (S.D.N.Y. 2018). Plaintiffs allege that through the Committee, Defendant breached its fiduciary duty of prudence in violation of the Employee Retirement Income Savings Act. *Id.* at 281. The matter was assigned to the Honorable Katherine B. Forrest.

Judge Forrest held an eight-day bench trial in April 2018. *Id.* Twenty witnesses testified, and the Court admitted over six hundred documents into evidence. *Id.* at 281–83. On July 31,

2018, Judge Forrest issued the Opinion, finding in favor of Defendant on all claims. *Id.* at 317. On August 14, 2018, Plaintiffs filed a motion pursuant to Federal Rules of Civil Procedure 52(b) and 59(e) for amended or additional findings and to alter or amend the judgment. ECF No. 350. On September 11, 2018, Plaintiffs filed an appeal of the judgment for Defendant and of certain other decisions Judge Forrest had rendered throughout the litigation. ECF No. 355.

On September 12, 2018, the law firm Cravath, Swaine & Moore LLP ("Cravath") issued a press release announcing Judge Forrest's resignation from the United States District Court for the Southern District of New York and her return to Cravath, where she had worked for over twenty years prior to her appointment to the Court. ECF No. 359-41. On September 27, 2018, this case was reassigned to the Honorable Robert W. Sweet. On October 1, 2018, Plaintiffs filed a motion to vacate the judgment and for a new trial. ECF No. 357. On October 2, 2018, the Second Circuit held Plaintiffs' appeal in abeyance pending the resolution of their motion for amended or additional findings and to alter or amend the judgment. ECF No. 360.

On November 29, 2018, Defendant filed a motion to strike a declaration submitted by Plaintiffs in support of their motion to vacate the judgment and for a new trial. ECF No. 373.[1] On May 1, 2019, following Judge Sweet's death, the matter was reassigned to this Court.

I.   Plaintiffs' Motion for Amended or Additional Findings

The Court shall first address Plaintiffs' motion for amended or additional findings and to alter or amend the judgment. ECF No. 350.

In the Opinion, the Court found for Defendant on all claims because "plaintiffs have not proven that the Committee acted imprudently or that the Plans suffered losses as a result." Opinion at 280. For the purposes of their motion, Plaintiffs "do not challenge any of the Court's factual

---

[1] Subsequent to Defendant filing its motion to strike, Plaintiffs filed two additional declarations, ECF Nos. 382-2, 382-4, and in a surreply, Defendant expanded the scope of its motion to strike to also apply to those declarations, ECF No. 386.

findings, or conclusions related to the Committee as a whole." ECF No. 351 at 1. Instead, they argue that the Court's factual findings about two members of the Committee—Margaret Meagher and Nancy Sanchez—support the conclusion that those individuals violated their fiduciary duty of prudence, even if the Committee did not as a whole. *Id.* Plaintiffs, therefore, request that the Court "supplement its findings to order that Meagher and Sanchez be removed and barred from serving as fiduciaries to the Plans, and amend the judgment accordingly." *Id.* at 2; *see also* 29 U.S.C. § 1109(a) (upon breach of fiduciary duty, a fiduciary shall be subject to equitable relief, "including removal of such fiduciary").[2] Put differently, Plaintiffs argue that they "do not seek to overturn the Court's judgment, but rather seek a supplemental equitable remedy which flows directly from the findings the Court already has entered." ECF No. 354 at 2.

Plaintiffs state that they bring their motion pursuant to Federal Rules of Civil Procedure 52(b) and 59(e). ECF No. 350 at 1. Pursuant to Rule 52(b), following an entry of judgment, "the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Pursuant to Rule 59(e), a party may file a "motion to alter or amend a judgment."

The parties disagree over the legal standard applicable to Plaintiffs' motion. Defendant argues that the usual standard for a motion for reconsideration applies to both rules, and that therefore, Plaintiffs must present factual matters or controlling decisions that the Court overlooked and which would have altered the Court's original decision. ECF No. 352 at 1–2 & n.1. Plaintiffs effectively concede that they have not met this standard,[3] but argue that Rule 52(b) allows for an additional scenario, where they need not meet that standard: that is, "where a court did not rule on

---

[2] In their amended complaint, Plaintiffs included in their prayer for relief that the Court "[r]emove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations." ECF No. 39 at 115.

[3] *See* ECF No. 354 at 6 ("To be sure, if Plaintiffs had moved under Rule 59(e) only, Plaintiffs would have had to present factual matters or controlling decisions that the Court overlooked and which would have altered the Court's original decision." (internal quotation marks and citation omitted)).

3

an issue, and the existing record supports the additional findings requested by the movant." ECF No. 354 at 6–7 (emphasis omitted).

To be sure, there is caselaw stating that "[t]he identical standard of review governs" Rules 52(b) and 59(e), which supports Defendant's position. *E.g.*, *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518, 2013 WL 2246790, at *1 (S.D.N.Y. May 20, 2013). The Court agrees with Plaintiff that in theory, however, there are situations where Rule 52(b) could provide a means for a party to move to supplement findings and not to move for reconsideration *per se*. Nevertheless, this is not one of those situations—here, Plaintiffs are, in fact, asking for reconsideration. Because Plaintiffs concede that they have not cited factual matters or controlling decisions the Court overlooked, their motion must be denied.

Plaintiffs cite several cases—all from outside this Circuit—in support of their argument that Rule 52(b) can be used to supplement findings. ECF No. 351 at 2–3; ECF No. 354 at 6–7. As a preliminary matter, some of these cases do not support Plaintiffs' argument, because they concern actual motions for reconsideration. For example, Plaintiffs cite *Golden Blount, Inc. v. Robert H. Peterson Co.*, but in that case, a district court issued findings in which it found no patent infringement, realized it made a "mistake," withdrew the findings in their entirety, and entered revised findings of patent infringement. 438 F.3d 1354, 1357–59 (Fed. Cir. 2006). Plaintiffs also cite *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219–20 (5th Cir. 1986), but there, the Fifth Circuit affirmed the denial of a Rule 52(b) motion and noted "the compelling interest in the finality of litigation."

The other cases that Plaintiffs cite—those that do not involve "reconsideration" *per se*—are distinguishable. In *U.S. Gypsum Co v. Schiavo Bros., Inc.*, 668 F.2d 172, 179–80 (3d Cir. 1981), a Rule 52(b) motion was used to address a situation where the district court's factual findings— which were issued two years after trial—wholly failed to mention an issue that had been litigated at

4

trial. In *In re Smith Corona Corp.*, 212 B.R. 59, 60–61 (Bankr. D. Del. 1997), a Rule 52(b) motion was used to amend the court's factual findings in order to make "the court's intent" clear to the appellate court in order to "narrow[] the scope of arguments on appeal." And, in *United States v. Anderson*, 591 F. Supp. 1, 6 (E.D. Wash. 1982), *aff'd in part*, 736 F.2d 1358 (9th Cir. 1984), a Rule 52(b) motion was used to supplement a court's factual finding about the average annual output of a creek's drainage system to include more detail about what then happens to that output.

Here, by contrast, what Plaintiffs actually seek is reconsideration of Judge Forrest's decision. Judge Forrest considered Meagher's and Sanchez's roles and conduct on the Committee, and discussed the matter at length. Opinion at 290–92. Although she was critical of them, she stated that "[w]hile the Court finds the level of involvement and seriousness with which several Committee members treated their fiduciary duty troubling, it does not find that this rose to a level of failure to fulfill fiduciary obligations," and further found that "the Court is persuaded that the Committee performed its role adequately." *Id.* at 293. Therefore, she found "in favor of defendant NYU on all claims." *Id.* at 317. Plaintiffs' requested relief—the removal of two members from the Committee—does not "flow[] directly from the findings the Court already has entered." ECF No. 354 at 2. To be sure, Judge Forrest did not explicitly state that she had decided against removing Meagher and Sanchez from the Committee, but a review of the Opinion makes clear that she had considered the issue and determined that removal was not warranted, and she accordingly found "in favor of defendant NYU on all claims." Opinion at 317.

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal quotation marks and citation omitted). It is well-settled that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at

5

the apple." *Zargary v. City of New York*, No. 00 Civ. 897, 2010 WL 329959, at *1 (S.D.N.Y. Jan. 26, 2010), *aff'd*, 412 F. App'x 339 (2d Cir. 2011). As discussed, Plaintiffs have effectively conceded that they have not met the standard for a motion for reconsideration—i.e., that they can point to no factual matters or controlling decisions that the Court overlooked. ECF No. 354 at 6. In light of this, Plaintiffs' motion for amended or additional findings and to alter or amend the judgment is DENIED.

II. Defendant's Motion to Strike

The Court shall next address Defendant's motion to strike certain declarations submitted by Plaintiffs. ECF No. 373. In support of their motion to vacate the judgment and for a new trial on the ground that Judge Forrest should have recused herself, discussed *infra*, Plaintiffs attach three declarations from purported experts in the field of legal ethics. *See* Harrison Decl., ECF No. 358-1; Little Decl., ECF No. 382-2; Lewis Decl., ECF No. 382-4. Defendant moves to strike the declarations on the ground that they impermissibly seek to offer expert testimony on a legal conclusion. ECF Nos. 373, 386.

"This Court has repeatedly held that the testimony of an expert on matters of domestic law is inadmissible for any purpose." *In re Pub. Offering Sec. Litig. (In re IPO)*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (emphasis, internal quotation marks and citation omitted). "The rule prohibiting experts from providing their legal opinions or conclusions is so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle." *Id.* (internal quotation marks and citation omitted).

All three experts opine that the Court should grant Plaintiffs' § 455 motion. *See* Harrison Decl. at 2 ("I was retained by plaintiffs' counsel to express opinions about whether Judge Katherine B. Forrest . . . should have disqualified herself from deciding the case pursuant to 28 U.S.C. § 455(a) and the caselaw which has construed that statutory provision." (footnote omitted));

6

*id.* at 13 ("28 U.S.C. § 455(a) required Judge Forrest to timely disclose these facts to all counsel and parties and to recuse herself before rendering her decision in the case."); Little Decl. at 9 ("Judge Forrest should have recused herself while the NYU case was under advisement at least by the time of her announcement that she would be leaving the bench."); Lewis Decl. at 1 ("The question I was asked to address is whether Judge Katherine Forrest should have recused herself from presiding as the trial judge in this matter once she decided to leave the bench and return to her former firm.").

Plaintiffs have cited no cases, from any district, in which a court relies on or finds admissible an expert opinion about the outcome of a § 455 motion. Conversely, Defendants have cited two cases in which courts in this district (and multiple cases in other districts) rejected reliance on expert opinions in § 455 motions on the ground that they impermissibly seek to offer legal opinions. ECF No. 374 at 2–3.

The first case is *In re IPO*. There, defendants brought a § 455 motion, and submitted two expert declarations in support by "experts in judicial ethics." *In re IPO*, 174 F. Supp. 2d at 62. The court noted that the declarations "only purport to offer[]legal opinions and analyses on the question of whether [§ 455] requires recusal." *Id.* at 66. Noting that "there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court," the court found that the declarations "only advocate a particular interpretation of a statute and the ultimate outcome of the motion," and declined to consider the affidavits. *Id.* at 69–70.

Plaintiffs attempt to distinguish *In re IPO* on the ground that there, the court noted that the underlying facts were undisputed, and here, the parties contest the facts upon which the purported experts rely. ECF No. 377 at 18–19 (citing *In re IPO*, 174 F. Supp. 2d at 66). *In re IPO*, however, has not been applied in such a limited fashion. *See, e.g.*, *Melendres v. Arpaio*, No. 07 Civ. 2513, 2015 WL 13173306, at *9 (D. Ariz. July 10, 2015) (citing *In re IPO* for the proposition that

7

declarations that "only purport to offer interpretations and analyses of § 455 and express the professors' opinions on whether the Court must withdraw from this case" are "not appropriate for the Court to consider"). In any event, Plaintiffs misunderstand the relevance of the court's discussion of the undisputed facts in *In re IPO*. There, the court noted the well-settled principle that "[e]xperts may also give limited testimony on mixed questions of law and fact, but the testimony must remain focused on helping the jury or judge understand particular facts in issue and not opine on the ultimate legal conclusion." *In re IPO*, 174 F. Supp. 2d at 65. The declarations here do not help the Court understand any particular fact—rather, they assume facts (albeit ones in dispute), and then opine on the legal conclusion. *See* Harrison Decl. at 9 ("[T]o the extent that my opinions are based on facts, it is my understanding that those facts are or can and will be supported by competent evidence."); Little Decl. at 6 ("The facts, which I assume are true, overwhelmingly required Judge Forrest to recuse herself."); Lewis Decl. at 6 ("I am offering this declaration based on the facts as they have been presented and as I understand them.")

A similar result was reached in *United States v. Eyerman*, 660 F. Supp. 775, 781 (S.D.N.Y. 1987). In *Eyerman*, a defendant requested that the court recuse itself pursuant to § 455 and submitted purported expert affidavits in support. *Id.* The court declined to consider the affidavits, stating that supplying them was "presumptuous" because "the affiants have not been asked by the Court for their views on the law and how the motion should be decided," and stated that the issue "is hardly an occasion for which credible experts supply legal opinions." *Id.* Plaintiffs argue that *Eyerman* is distinguishable because there, the facts upon which the purported experts relied were not supported by the record. ECF No. 377 at 18. Whether or not the facts upon which the experts rely are unsupported by the record, *see* ECF No. 379 at 9–10 & 10 n.5, is immaterial. The *Eyerman* court considered the lack of support for the factual assertions to be an independent ground for not considering the experts' opinions. 660 F. Supp. at 781 ("What makes their

8

gratuitous sworn legal opinions *even more inappropriate* is their apparent obliviousness to the self-evident utter absence of any factual basis in the record for a cognizable opinion from them." (emphasis added)). Moreover, other courts have not read this limitation into *Eyerman*. *E.g.*, *GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000) (citing *Eyerman* for the proposition that "testimony of legal experts on ethics in the profession is hardly an occasion for which credible experts supply legal opinions" (internal quotation marks and citation omitted)).

Like in *In re IPO* and *Eyerman*, Plaintiffs here impermissibly seek to introduce expert declarations on a question of law. For this reason, Defendant's motion to strike the declarations is GRANTED.

### III. Motion to Vacate Judgment and for a New Trial

Finally, the Court shall address Plaintiffs' motion to vacate the judgment and for a new trial. ECF No. 357. Plaintiffs argue that once Judge Forrest began considering a return to Cravath, she should have recused herself from this case pursuant to 28 U.S.C. § 455(a), and that the failure to do so created an objective appearance of bias. Their extraordinarily attenuated chain of connections is this: one of over eighty partners at Cravath—who is not alleged to have played any role in hiring Judge Forrest—is, on his own time, one of over sixty members of NYU's Board of Trustees (the "Board"), an entity that, at best, played a minor role in this litigation. The Court concludes that this chain of connections did not create an objective appearance of bias, and Plaintiffs' motion is DENIED.

Pursuant to 28 U.S.C. § 455(a), a federal judge must recuse herself "in any proceeding in which [her] impartiality might reasonably be questioned." The test for recusal is objective—that is, "[w]ould a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent

9

recusal?" *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992) (citations omitted). Therefore, there does not need to be actual bias in order for recusal to be required pursuant to § 455(a). However, "where an interest is not direct, but is remote, contingent, or speculative, it is not the kind of interest which reasonably brings into question a judge's impartiality." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988). "There exists a strong presumption of a judge's impartiality which may only be overcome by adequate proof to the contrary." *Bailey v. Broder*, No. 94 Civ. 2394, 1997 WL 73717, at *2 (S.D.N.Y. Feb. 20, 1997). When the grounds for recusal are discovered after judgment, one permissible remedy is vacatur of the judgment pursuant to Federal Rule of Civil Procedure 60(b). *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862–63 (1988).

The Court will first discuss some disputes over the facts relevant to Plaintiffs' motion. As a preliminary matter, the parties disagree about the relevance of the Board to this action and the degree of its oversight of the Committee. Plaintiffs argue that the Board plays a "direct" role in this case. ECF No. 358 at 5–6, 9–14 (Plaintiffs arguing, *inter alia*, that the Board created the Committee in 2009, has oversight of the Committee, and is responsible for removing or replacing members of the Committee). For the purposes of this motion, the Court need not make precise findings about the Board's connection to the conduct underlying this action. Having reviewed the parties' arguments and the record, the Court agrees with Defendant that the Board does not play a significant role in this case. *See* ECF No. 371 at 10 ("Not one member of the [Board] was deposed or called as a witness at any stage in this case. The trial record contains no references to any member of the [Board]. . . . Although supposedly 'central' to this case, the [Board] was mentioned just twice during live witness testimony, [in ways not important here.] . . . Because the focus of the trial was always about the actions of the [Committee], and not the [Board,] not once in the Court's

findings of fact and conclusions of law did Judge Forrest mention or discuss the actions of the [Board.]").

The parties also disagree over whether the record supports the inference that Judge Forrest was considering a return to Cravath before or after she issued the Opinion on July 31, 2018. ECF No. 358 at 14–16; ECF No. 371 at 17–18; *see also* ECF No. 359-41 (Cravath announcing Judge Forrest rejoining the firm on September 12, 2018); ECF No. 359-38 at 3 (anonymous source quoted in July 18, 2018 New York Law Journal article as stating that "[a] return to Cravath seems like a distinct possibility for Forrest," although "[a] spokesman for the firm declined to comment"); ECF No. 359-1 (Judge Forrest quoted in September 12, 2018 Wall Street Journal article as stating that Cravath "is the only firm she said she considered joining"); ECF No. 359-2 (Judge Forrest quoted in September 12, 2018 Law360 article as stating that "[i]t was a hard decision to leave [the bench,] but it was an easy decision where to go"). However, there is no indication that Judge Forrest was engaged in talks with Cravath to return before she issued the Opinion on July 31, 2018. Because it does not affect the outcome of this order, the Court assumes that Judge Forrest was considering a return to Cravath before she issued the Opinion.

Plaintiffs' motion turns, in its entirety, on Judge Forrest's connection to Evan Chesler, a partner at Cravath.[4] Chesler is one of over eighty partners at the firm. ECF No. 372-10. Chesler stepped down as presiding partner in 2013. ECF No. 372-11. Plaintiffs make much of Chesler's title as "Chairman," but the position is described as "largely honorary." *Id.* On his own time, Chesler is one of sixty-one voting trustees on NYU's Board. ECF Nos. 359-3, 372-3. He is also a member of the Board's Executive Committee, *see* ECF No. 359-3, some other NYU committees, *see* ECF Nos. 359-10 and 359-11, and has other connections to NYU, *see generally* ECF No. 358

---

[4] Plaintiffs note that a retired partner and a senior counsel at Cravath are also on the Board, although their motion does not rely on this fact. ECF No. 358 at 7.

11

at 6–7.[5] Plaintiffs state that they "wish to make clear that they are not accusing [Cravath] of impropriety," but instead focus on Chesler's own connections to NYU. ECF No. 358 at 2. During Judge Forrest's twenty years at Cravath before joining the bench, she had a "close working relationship" with Chesler, including in her first years at the firm. *See id.* at 8. Plaintiffs do not allege, however, that Chesler had any role in the decision to rehire Judge Forrest upon her resignation from the bench.

Based on the above, Plaintiffs argue that there is an "exceptionally close relationship between NYU and [Cravath]." *Id.* at 2. However, the fact that one of the many extracurriculars of one of over eighty partners at Cravath is membership on a large Board of Trustees that, at best, plays a minor role in the dispute underlying this case does not give rise to an "exceptionally close relationship."

Plaintiffs argue that at the time Judge Forrest issued the Opinion, she had a prospective financial relationship with Cravath, and they cite several cases for the proposition that a judge's prospective financial relationship with a firm can require recusal. ECF No. 358 at 19–21. However, the conflicts in those cases were far less attenuated than they are here. For example, Plaintiffs cite *PepsiCo, Inc. v. McMillen*, 764 F.2d 458, 461 (7th Cir. 1985), for the proposition that a "judge cannot have a prospective financial relationship with one side yet persuade the other that he can judge fairly in the case." ECF No. 358 at 19 (internal quotation marks omitted). But in that case, a judge who was considering retiring from the bench hired a recruiter to contact local law firms, and the recruiter accidentally contacted firms representing both sides in a matter before the

---

[5] According to Chesler's biography on the Cravath website, he engages in many other activities aside from those connected with NYU. *See* ECF No. 359-3 (describing Chesler as, *inter alia*, a fellow of the American College of Trial Lawyers, the International Academy of Trial Lawyers, the American Bar Foundation, and the New York Bar Foundation; President of the Institute of Judicial Administration; Chairman of the Board of Trustees of the New York Public Library and Chairman of the Lawyers for the Library Committee; member of the Leaders Council of The Legal Services Corporation; member of the Council of The American Law Institute; Trustee of the Federal Bar Council; and Trustee of the Supreme Court Historical Society).

judge. *PepsiCo*, 764 F.2d at 459–60. Neither law firm wished to hire the judge, and the judge eventually decided to work at a different firm—therefore, he had had "no realistic prospect of ever working for either law firm" in the matter before him. *Id.* at 460. However, the Seventh Circuit held that recusal is required where a judge is "in negotiation—albeit preliminary, tentative, indirect, unintentional, and ultimately unsuccessful—with a lawyer or law firm or party in the case over his future employment." *Id.* at 460–61.[6]

Similarly, Plaintiffs cite *In re Continental Airlines Corp.*, 901 F.2d 1259 (5th Cir. 1990), in support of their argument. ECF No. 358 at 19–20. But in that case, shortly after a judge granted summary judgment for a party and approved a fee request for that party's law firm, the law firm contacted the judge about prospective employment, and the judge joined the firm a few months later. *Continental*, 901 F.2d at 1261–62. The Fifth Circuit held that "[t]he close coupling of [the judge's] rulings with the employment offer and his acceptance of it . . . create[s] the appearance that he may have been pursuing employment with [the firm] while he was presiding over the case." *Id.* at 1262.

Of course, what these two cases have in common is that they involved judges with prospective financial relationships with firms that represented parties in matters pending before them.[7] The situation here is significantly more attenuated—Cravath was not representing a party in this case, or involved in any way. Rather, one of over eighty partners at Cravath, on his own time, was one of over sixty members of NYU's Board—an entity which, at best, has a minor

---

[6] The Seventh Circuit's decision was also motivated by the fact that one of the law firms may have given a more "definitive" rejection of the judge than the other, and "[a]n objective observer might wonder whether [the judge] might not at some unconscious level favor the firm [] that had not as definitively rejected him." *PepsiCo*, 764 F.2d at 461.

[7] The Judicial Conference of the United States's Committee on Codes of Conduct similarly advises that a judge who has a prospective financial relationship with a firm should recuse herself from matters in which that firm represents a party. "After the initiation of any discussions with a law firm, no matter how preliminary or tentative the exploration may be, the judge must recuse, subject to remittal, on any matter in which the firm appears." *Guide to Judiciary Policy*, Vol. 2 (Ethics and Judicial Conduct), Part B (Ethics Advisory Opinions), ch. 2 (Published Advisory Opinions), No. 84 (Apr. 2016).

connection to the litigation. The Court agrees with Defendant that "no well-informed observer would have any reason to believe that Judge Forrest had any incentive to rule for NYU in this case in order to advance her legal career or ingratiate herself with Cravath to allow her to return to Cravath as a partner." ECF No. 371 at 13–14.

Accordingly, Plaintiffs' motion to vacate the judgment and for a new trial is DENIED.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for amended or additional findings and to alter or amend the judgment is DENIED, Defendant's motion to strike the purported expert affidavits is GRANTED, and Plaintiffs' motion to vacate the judgment and for a new trial is DENIED.[8] The Clerk of Court is directed to terminate the motions at ECF Nos. 350, 357, 373, and 391.

SO ORDERED.

Dated: July 1, 2019
New York, New York

_____
ANALISA TORRES
United States District Judge

---

[8] On May 23, 2019, Plaintiffs sought leave to "file additional evidence" in support of their motion to vacate the judgment and for a new trial. ECF No. 391. Specifically, Plaintiffs argue that pursuant to Section 17(a) of the Stock Act, 112 Pub. L. 112-105 § 17(a), Judge Forrest was required to file a report concerning her negotiations with Cravath with the Judicial Conference of the United States, and they seek to submit a declaration stating that they requested a copy of such report but did not receive one. ECF No. 392. Plaintiffs conclude, therefore, that Judge Forrest did not file this report. ECF No. 391. Defendant contests whether the Judicial Conference was obligated to respond to Plaintiffs' request, and accordingly argues that the failure to provide it to Plaintiffs is meaningless. ECF No. 393. Having reviewed the parties' submissions, the Court concludes that the additional documents Plaintiffs seek to file would not alter the Court's conclusion that Judge Forrest's recusal was not required pursuant to 28 U.S.C. § 455(a). Accordingly, their request is DENIED.